UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>        Plaintiff,<br><br>    v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Defendant. | Case No: _____<br><br>**COMPLAINT** |

## PRELIMINARY STATEMENT

1. This is an insurance coverage action brought by Plaintiff President and Fellows of Harvard College ("Harvard" or "Plaintiff") against its excess insurance company Defendant Zurich American Insurance Company ("Zurich" or "Defendant"), seeking recovery of defense costs (including attorneys' fees, costs, and expenses) incurred by Harvard in connection with an underlying lawsuit filed against Harvard.

2. The underlying lawsuit was filed in this Court on November 17, 2014 and is captioned *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), et al.*, No. 1:14-cv-14176-ADB (the "SFFA Action").

3. The SFFA Action alleges that Harvard College administers its student admissions plan and process in violation of Title VI.

4. In September 2017, the Department of Justice (the "DOJ") informed Harvard that it was opening an investigation of Harvard College's admissions process (the "DOJ Investigation"). The SFFA Action and the DOJ Investigation collectively are referred to herein as the "SFFA Claim."

5. Harvard has denied the allegations in the SFFA Action and has incurred defense costs responding to it.

6. Likewise, Harvard has defended its admissions practices in connection with the DOJ Investigation and Harvard has incurred costs responding to the DOJ Investigation.

7. The defense costs incurred for the SFFA Claim are covered under a primary Educational Institution Risk Protector liability insurance policy that National Union Fire Insurance Company of Pittsburgh, Pa. ("AIG") sold to Harvard for the policy period of November 1, 2014 to November 1, 2015 with policy number 01-817-25-28 (the "AIG Policy").

8. The AIG Policy has a policy limit of $25 million and a retention/deductible of $2.5 million.

9. Defense costs in excess of the AIG Policy's limits and retention/deductible are covered under a Zurich Excess Select Insurance Policy that Zurich sold to Harvard for the policy period of November 1, 2014 to November 1, 2015 with policy number IPR 3792308-03 (the "Zurich Policy").

10. The Zurich Policy has an aggregate limit of liability of $15 million.

11. The Zurich Policy is excess to and follows the form of the AIG Policy.

12. Harvard's defense costs associated with the SFFA Claim consist of legal fees and expenses, costs associated with electronic discovery vendors, expert witness fees and court costs. Harvard has incurred defense costs in excess of the AIG Policy limits and retention/deductible. It has and will continue to accrue defense costs for these matters because the SFFA Action is now the subject of a writ of *certiorari* in the Supreme Court of the United States and the DOJ Investigation remains pending.

13. Zurich has denied coverage and refused to pay Harvard for covered defense costs under the Zurich Policy on the grounds that Zurich purportedly did not receive timely notice of the SFFA Claim.

14. As such, Harvard seeks damages from Zurich for breach of contract and a declaration that Zurich must reimburse Harvard for all reasonable defense costs incurred and which will be incurred in excess of the AIG Policy and retention/deductible.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity among the parties and the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

16. An actual controversy exists between Harvard and Zurich as to insurance coverage Zurich owes Harvard under an insurance policy that Zurich sold to Harvard.  Thus, this Court has jurisdiction over Harvard's claims for declaratory relief under 28 U.S.C. § 2201 because an actual controversy ripe for judicial determination exists between Harvard and Zurich.

17. Venue is proper within this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, because Harvard is located in this judicial district and because Zurich generally transacts business in this district and within the Commonwealth of Massachusetts.

## PARTIES

18. Plaintiff President and Fellows of Harvard College governs Harvard University, the nation's oldest institute of higher learning, with its main undergraduate campus in Cambridge, Massachusetts.  Plaintiff is a Massachusetts not-for-profit corporation.  Harvard College is the undergraduate college of Harvard University.

19. Upon information and belief, Defendant Zurich American Insurance Company is a New York Corporation with its principal place of business in the State of Illinois.

## FACTUAL BACKGROUND

**A.     The SFFA Claim**

20. Upon information and belief, non-party Students for Fair Admissions, Inc. ("SFFA") is a not-for-profit organization with a stated mission to support and participate in litigation concerning the use of race in college admissions programs.

21. On November 17, 2014, SFFA filed a complaint against Harvard in the United States District Court for the District of Massachusetts.

22. SFFA's complaint generally alleges that Harvard College administers its student admissions plan and process in violation of Title VI.

23. The SFFA complaint asserts the following causes of action: (1) Violation of 42 U.S.C. § 2000 (Intentional Discrimination Against Asian Americans); (2) Violation of 42 U.S.C. § 2000 (Racial Balancing); (3) Violation of 42 U.S.C. § 2000 (Failure To Use Race Merely as a "Plus" Factor in Admissions Decisions; (4) Violation of 42 U.S.C. § 2000 (Failure to Use Race to Merely Fill the Last "Few Places" in the Incoming Freshman Class); (5) Violation of 42 U.S.C. § 2000 (Race-Neutral Alternatives); and (6) Violation of 42 U.S.C. § 2000 (Any Use of Race as a Factor in Admissions).

24. The SFFA Action required Harvard to engage in extensive pre-trial discovery and motion practice. The trial was conducted over a three-week period in the District Court before Judge Burroughs. Judgment was entered in favor of Harvard on all counts, and SFFA appealed the judgment to the United States Court of Appeals for the First Circuit. On November 12, 2020, the First Circuit ruled in favor of Harvard and upheld the District Court's decision.

25. On February 25, 2021, SFFA filed a petition for *certiorari* to the Supreme Court of the United States, which is pending.

26. In September 2017, the Department of Justice informed Harvard that it was opening an investigation of Harvard College's admissions practices.

27. In connection with that investigation, Harvard collected and produced thousands of business records to the DOJ. That investigation is still pending.

28. Harvard has spent more in defense costs than the coverage afforded to it under the AIG Policy and its deductible/retention in connection with the SFFA Claim.

    **B.**    **The Insurance Policies**

29. Zurich sold Harvard an Excess Select Insurance Policy, Policy Number IPR 3792308-03, with the policy period of November 1, 2014 to November 1, 2015 (the "Zurich Policy"). A true and correct copy of the Zurich Policy is annexed hereto as **Exhibit A**.

30. The Zurich Policy includes an aggregate limit of liability of $15,000,000 and provides coverage for defense costs within the Zurich Policy's aggregate limits, which means that the payment of defense costs erodes the aggregate limits of the Zurich Policy.

31. The Zurich Policy is a follow form insurance policy to the AIG Policy, meaning that except where specifically excluded by the Zurich Policy, the Zurich Policy has the same terms and coverages as the AIG Policy.

32. The primary insurance policy AIG sold Harvard was an Educational Institution Risk Protector liability insurance policy, Policy No. 01-817-25-28, with the policy period of November 1, 2014 to November 1, 2015. A true and correct copy of the AIG Policy is annexed hereto as **Exhibit B.**

33. The AIG Policy includes a $25 million aggregate Limit of Liability and a $2.5 million self-insured retention.  The AIG Policy also provides coverage for Defense Costs within the Policy's aggregate limits, which means that the payment of Defense Costs erodes the aggregate limits of the AIG Policy.

34. The Zurich Policy attaches once Harvard or AIG has paid more than $25 million on a covered claim, after satisfaction of the $2.5 million deductible/retention.

35. Specifically, the Zurich Policy's Insuring Clause states:

Coverage under this policy shall attach only after:

A. all the Limits of Liability of the **Underlying Insurance** have been exhausted solely as a result of the actual payment of covered loss(es); or

B. the **Policyholder** and/or any other insurer(s), entity, or individual on behalf of the **Policyholder** has paid up to the full limits of liability for such loss, and satisfied any deductible(s) or retention amount(s) of the **Underlying Insurance** on behalf of the insurer(s) of any **Underlying Insurance**, including coverage provided pursuant to a difference in conditions policy.

Ex. A, Form U-FLXS-100-A CW, at ¶ I.

36. AIG has agreed that the AIG Policy covers the SFFA Claim and has been covering defense costs incurred in connection with the SFFA Claim.

37. Harvard has incurred legal fees and expenses, costs paid to electronic discovery vendors, expert witness fees and court costs in excess of the policy limits under the AIG Policy and retention/deductible.

38. Because Harvard has incurred defense costs greater than the $25 million limit of liability of the AIG Policy, and also satisfied the AIG Policy's $2.5 million deductible/retention, the Zurich Policy's attachment point has been triggered.

### C. Zurich's Improper Denial of Coverage for the SFFA Claim

39. The SFFA Action was the topic of contemporaneous reports and written pieces in numerous national news media, including CNN and Fox News, as well as publications such as *The New York Times*, *The Wall Street Journal*, *The Boston Globe*, *Bloomberg*, *USA Today*, *The Associated Press* and *The Washington Post*. Attached as **Exhibit C** are true and correct copies of examples of this widespread media coverage.

40. Upon information and belief, Zurich had knowledge of the SFFA Action by late 2014 or early 2015, and no later than January 30, 2016.

41. Harvard provided prompt notice to AIG of the SFFA Action.

42. AIG agreed that the claim was covered under the AIG Policy.

43. AIG has treated the SFFA Action and the DOJ Investigation as a single claim under the AIG Policy and covered the defense costs incurred in the SFFA Claim subject to a single retention/deductible.

44. Harvard provided Zurich formal notice of the SFFA Action in or around May 2017.

45. At the time Harvard provided formal notice to Zurich, the AIG Policy limit amount was far from being exhausted, and Harvard's defense costs therefore were not even close to the attachment point of the Zurich Policy. Moreover, AIG as the primary insurance company was actively participating in the defense of the underlying claim.

46. By letter dated October 25, 2017, Zurich denied Harvard's claim on the basis of purported late notice.

47. Zurich has stated in its coverage letters that the SFFA Action would be a covered claim but for the purported late notice.

48. The Zurich Policy provides that "the **Policyholder** shall give [Zurich] written notice of any claim or any potential claim under this policy or any **Underlying Insurance** in the same manner required by the terms and conditions of the **Followed Policy**." Ex. A, Form U-FLXS-100-A CW at ¶III.A.

49. The Zurich Policy specifies that both the "Underlying Insurance" and the "Followed Policy" are the AIG Policy.

50. The AIG Policy requires written notice "as soon as practicable." Ex. B at p. 58.

51. Formal notice of the SFFA Action was given to Zurich as soon as practicable, given the attachment point of the Zurich Policy and the state of the SFFA Action and its defense at or about the time that formal notice was provided.

52. Upon information and belief, the personnel at Zurich assigned to the Harvard account were knowledgeable and up to date about current events and developments concerning Harvard.

53. Zurich personnel frequently attended meetings with Harvard already aware of such events and developments affecting Harvard.

54. Upon information and belief, Zurich had actual or constructive knowledge of the SFFA Action in late 2014 or early 2015, and in any event no later than January 30, 2016.

55. Harvard and Zurich entered into a tolling agreement regarding the time for Harvard to bring suit based on its right to insurance coverage for the SFFA Claim.

## COUNT I
## BREACH OF CONTRACT

56. Harvard repeats and realleges paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57. Harvard has paid all premiums under the Zurich Policy, satisfied all obligations owing under the Zurich Policy, and complied with all conditions necessary for coverage under the Zurich Policy.

58. Harvard has incurred and continues to incur defense costs for the SFFA Claim in excess of the underlying policy limits and the attachment point of the Zurich Policy in an amount greater than $75,000.

59. Pursuant to the Policies' terms, Zurich is obligated to compensate Harvard for all of the defense costs incurred in defending against the SFFA Claim in excess of the $25 million attachment point.

60. Zurich has breached its obligations under the Policies by failing and refusing to pay the full amount of Harvard's losses in excess of the $25 million attachment point.

61. By reason of Zurich's breach, Harvard has been deprived of the benefits due and owed under the Zurich Policy.

62. By reason of Zurich's breach, Harvard has suffered damages in an amount to be determined at trial.

## COUNT II
## DECLARATORY JUDGMENT
### (Coverage and Payment of Defense Costs Under the Zurich Policy)

63. Harvard repeats and realleges paragraphs 1 through 62 of the Complaint as if fully set forth herein.

64. Harvard seeks a declaratory judgment to determine a question of actual controversy between the parties regarding the Zurich Policy.

65. Zurich has denied coverage and refused to pay Harvard under the Zurich Policy for the defense costs incurred and paid by Harvard in connection with the SFFA Claim.

66. Zurich has an obligation under the Zurich Policy to pay for the full amount of defense costs Harvard paid to defend against the SFFA Claim in excess of the $25 million attachment point.

67. Zurich has admitted that the Zurich Policy covers the defense of the SFFA Claim.

68. Zurich has however denied coverage and refused to pay Harvard's defense costs on the asserted basis of late notice.

69. Upon information and belief, Zurich had constructive notice of the SFFA Claim prior to receiving formal notice, and no later than January 30, 2016.

70. By reason of the foregoing, an actual and justiciable controversy exists between Harvard and Zurich regarding Zurich's obligation to cover the claims and pay the full amount of Harvard's defense costs for the SFFA Claim in excess of the $25 million attachment point of the Zurich Policy.

71. Harvard is entitled to a judicial determination by this Court that Zurich is obligated to cover and pay the full amount of Harvard's reasonable defense costs for the SFFA Claim in excess of $25 million attachment point of the Zurich Policy. Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

### Prayer for Relief

WHEREFORE, Harvard respectfully requests:

A. Judgment in an amount equivalent to all defense costs, fees, and expenses paid by Harvard in defending against the SFFA Claim in excess of the $25 million attachment point;

B. A declaration that Zurich must provide coverage and pay the full amount of Harvard's reasonable defense costs, fees, and expenses for the SFFA Claim in excess of the $25 million attachment point;

    C.    Costs, attorneys' fees, costs, and expenses incurred by Harvard for this action;

    D.    Pre-judgment and post-judgment interest, as provided by law; and

    E.    Such other and further relief as the Court may deem just and proper.

Dated: September 17, 2021

**ANDERSON KILL P.C.**

By: /s/ Marshall Gilinsky
Marshall Gilinsky, Esq. (BBO # 569181)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
             (617) 221-5445
E-mail: mgilinsky@andersonkill.com

*Attorneys for Plaintiff President and Fellows of Harvard College*