# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>        Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Defendant. | Case No. 1:21-cv-11530-ADB |

**PLAINTIFF PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 33 and Rule 33.1 of the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff President and Fellows of Harvard College ("Harvard"), by and through its undersigned counsel, hereby sets forth its responses and objections to the First Set of Interrogatories (the "Interrogatories" or, in the singular, "Interrogatory") by Defendant Zurich American Insurance Company ("Zurich" or "Defendant"):

**GENERAL OBJECTIONS AND RESPONSES**

1. Harvard objects to the Interrogatories insofar as they purport to impose obligations upon Harvard beyond the requirements of the Federal Rules of Civil Procedure, the Local Rules for the District of Massachusetts, and applicable case law. Harvard will respond to the Requests as required by law.

2. Harvard objects to the Interrogatories to the extent that they call for the disclosure of information covered by any applicable privilege, protection, or immunity from discovery,

including, *inter alia*, attorney-client communications, the attorney work product doctrine, materials prepared in anticipation of litigation, and trial preparation materials.

3. Harvard objects to the use of the term "all" throughout the Interrogatories insofar as it renders the Requests overly broad and unduly burdensome.

4. Harvard objects to the Interrogatories to the extent that they are unduly vague, overbroad, indefinite, and lacking in reasonable particularity.

5. Harvard objects to the Interrogatories to the extent they are not confined to any particular timeframe. Where applicable, Harvard's responses will confine themselves to a timeframe that Harvard is able to infer from the Interrogatories.

6. Harvard objects to the Interrogatories to the extent that they seek information that is not relevant.

7. Harvard objects to the Interrogatories to the extent that they seek information in Defendant's possession, custody, or control.

8. Harvard objects to the Interrogatories insofar as they seek information that is in the public domain and, thus, equally available to Defendant by more convenient means.

9. Harvard objects to the Interrogatories insofar as they are unreasonably cumulative or duplicative or request information that can be obtained from some other source that is more convenient, less burdensome, or less expensive.

10. Harvard objects to the Interrogatories to the extent that they seek information not in Harvard's possession, custody or control.

11. Harvard objects to the extent it has not had time to adequately discover all of the factual information upon which to answer the Interrogatories, and fact discovery is not yet complete.

12. Neither an indication that documents will be produced nor an objection to a particular Interrogatory indicates that any such particular document exists.

13. Harvard, in responding to the Interrogatories, does not waive any objection based on relevance, materiality, competence, privilege, immunity from disclosure, admissibility or other grounds. Nor does Harvard waive the attorney-client privilege, work product protection, or any other privilege, immunity, or other protection against disclosure with respect to the materials called for in the Interrogatories.

14. Harvard will respond to the Interrogatories, subject to the specific objections as set forth below, as well as these general objections, which are expressly incorporated into the responses to each of the Interrogatories.

15. Inadvertent production of any privileged information is not intended to be and shall not operate as a waiver of any applicable privilege, immunity or other protection against disclosure, in whole or in part.

16. Where applicable, Harvard's responses will be designated "Confidential" in accordance with the Protective Order in this matter.

17. Harvard reserves the right to supplement or amend Harvard's responses at such time as any additional information sought by the Interrogatories is located or becomes known to Harvard. Harvard further reserves the right to assert any applicable privilege or objection to the disclosure of such additional information.

**RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify all Persons who possess knowledge or information regarding Harvard's decision to provide notice to Zurich of the SFFA Action.

**RESPONSE TO INTERROGATORY NO. 1:** Harvard objects to this Interrogatory to the extent that it seeks privileged information including attorney-client communications, attorney work product, materials prepared in anticipation of litigation, and trial preparation materials. Harvard objects to this Interrogatory to the extent that it seeks information already in Defendant's possession, custody or control or that is not in Harvard's possession, custody or control.  Harvard objects to this Interrogatory insofar as it is unduly vague and lacking in reasonable particularity, in particular the terms "notice" and "decision."  In responding, Harvard construes "notice" to mean the formal notice of the SFFA Action provided by Harvard to Zurich.

Subject to and without waiving the foregoing objections, Harvard currently identifies the following Persons:

(1) Mark Frazier, Manager of Claims and Loss Prevention at Harvard.

(2) Walter Pizzano, Former Director, Risk Strategy and Insurance at Harvard.

(3) Victor Greene, Former (Interim) Associate Director, Insurance and Risk Program at Harvard.

(4) Douglas J. Willis, Former Marsh USA, Inc.


**INTERROGATORY NO. 2:** Identify all persons responsible for providing notice of claims, including but not limited to the SFFA Action, to Harvard's insurance carriers under any insurance policies under which Harvard was an insured or believes it was otherwise entitled to coverage at the time the SFFA Action was commenced.

**RESPONSE TO INTERROGATORY NO. 2:** Harvard objects to this Interrogatory to the extent that it seeks privileged information including attorney-client communications, attorney

4

work product, materials prepared in anticipation of litigation, and trial preparation materials. Harvard further objects to this Interrogatory as vague, indefinite and lacking in particularity, in particular the terms "responsible" and "notice." In responding, Harvard construes "notice" to mean formal notice provided by Harvard.

Subject to and without waiving the foregoing objections, Harvard directs Zurich to the response to Interrogatory No. 1. Pursuant to Federal Rule of Civil Procedure 33(d), Harvard also refers Zurich to claim notification correspondence that will be produced in response to Zurich's Request for Production of Documents.

**INTERROGATORY NO. 3:** State whether Harvard provided notice of the SFFA Action to any insurance company other than Zurich.

**RESPONSE TO INTERROGATORY NO. 3:** Harvard objects to this Interrogatory to the extent it seeks information already in Defendant's possession, custody or control. Harvard objects to this Interrogatory insofar as it is unduly vague and lacking in reasonable particularity, in particular the term "notice." In responding, Harvard construes "notice" to mean formal notice of the SFFA Action provided by Harvard.

Subject to and without waiving the foregoing objections, Harvard responses that it provided notice of the SFFA Action to an insurance company other than Zurich. Pursuant to Federal Rule of Civil Procedure 33(d), Harvard also refers Zurich to claim notification correspondence that will be produced in response to Zurich's Request for Production of Documents.

**INTERROGATORY NO. 4:** Identify every insurance company to which Harvard gave notice of the SFFA Action and the date(s) on which such notice was given.

**RESPONSE TO INTERROGATORY NO. 4:** Harvard objects to this Interrogatory to the extent that it is overbroad and concerns matters not relevant to or at issue in this action. Harvard objects to this Interrogatory insofar as it is unduly vague and lacking in reasonable particularity, in particular the term "notice." In responding, Harvard construes "notice" to mean formal notice of the SFFA Action provided by Harvard.

Subject to and without waiving the foregoing objections, Harvard currently identifies:

(1) National Union Fire Insurance Company of Pittsburgh, PA, November 19, 2014 and May 23, 2017;

(2) Zurich American Insurance Company, May 23, 2017;

(3) XL Specialty Insurance Company, May 23, 2017;

(4) Federal Insurance Company, May 23, 2017;

(5) Ace American Insurance Company, May 23, 2017.

Pursuant to Federal Rule of Civil Procedure 33(d), Harvard also refers Zurich to claim notification correspondence that will be produced in response to Zurich's Request for Production of Documents.

**INTERROGATORY NO. 5:** State all facts supporting the allegations in paragraph 45 of the Complaint that "[a]t the time Harvard provided formal notice to Zurich, the AIG Policy limit amount was far from being exhausted."

**RESPONSE TO INTERROGATORY NO. 5:** Harvard objects to this Interrogatory to the extent that it seeks privileged information including attorney-client communications, attorney work product, materials prepared in anticipation of litigation, and trial preparation materials. Harvard further objects to this Interrogatory to the extent it seeks confidential information.

Subject to and without waiving the foregoing objections, AIG sold Harvard an Education Institution Risk Protector liability insurance policy, Policy No. 01-817-25-28, for the policy period November 1, 2014 to November 1, 2015. The Zurich Policy is excess to that AIG Policy. The AIG Policy includes a $25 million aggregate limit of liability and a $2.5 million self-insured retention. The AIG Policy also provides coverage for defense costs within its aggregate limits. Pursuant to Federal Rule of Civil Procedure 33(d), Harvard refers Zurich to defense invoices Harvard will be producing documents in accordance with the anticipated Protective Order in this matter in response to Zurich's Request for Production of Documents showing that as of May 2017 the defense costs incurred in connection with the SFFA Action were far less than the $25 million aggregate limit of liability for the AIG Policy and the $2.5 million self-insured retention. In addition, Harvard refers Zurich to a November 28, 2017 litigation status report that will be produced and which may already be in Zurich's possession.

**INTERROGATORY NO. 6:** State all facts supporting the allegation in paragraph 40 of the Complaint that "Zurich had knowledge of the SFFA Action by late 2014 or early 2015, and no later than January 30, 2016."

**RESPONSE TO INTERROGATORY NO. 6:** Harvard objects to this Interrogatory insofar as it seeks information that is in the public domain and, thus, equally available to Zurich.

Harvard also objects to this Interrogatory as it seeks information already within Zurich's possession, custody or control.  Harvard objects to this Interrogatory insofar as it can be obtained from some other source that is more convenient, less burdensome, or less expensive. Harvard objects to the Interrogatory to the extent that it seeks documents not in Harvard's possession, custody or control.  Harvard further objects to the extent it has not had time to adequately discover all of the factual information upon which to answer the Interrogatories, and fact discovery is not yet complete.

Subject to and without waiving the foregoing objections, the SFFA Action was the topic of numerous reports and written pieces published by multiple national news media outlets, including CNN, Fox News, *The New York Times*, *The Wall Street Journal*, *The Boston Globe*, *USA Today, The Associated Press* and *The Washington Post* – all of which (and others) were and are available in the public domain.  In Harvard's experience, the Zurich employees working on Harvard's account consistently were knowledgeable and up to date about such newsworthy developments concerning Harvard, and the SFFA Action surely was no exception.  Further discovery is expected to reveal additional facts, and discovery is ongoing.

**INTERROGATORY NO. 7:** State all facts supporting the allegation in paragraph 54 of the Complaint that "Zurich had actual or constructive knowledge of the SFFA Action in late 2014 or early 2015, and in any event no later than January 30, 2016."

**RESPONSE TO INTERROGATORY NO. 7:** Harvard objects to this Interrogatory insofar as it seeks information that is in the public domain and, thus, equally available to Zurich. Harvard objects to the Interrogatory insofar as it can be obtained from some other source that is

8

more convenient, less burdensome, or less expensive. Harvard also objects to this Interrogatory as it seeks information already within Zurich's possession, custody or control. Harvard objects to this Interrogatory to the extent that it seeks documents not in Harvard's possession, custody or control. Harvard further objects to the extent it has not had time to adequately discover all of the factual information upon which to answer the Interrogatories, and fact discovery is not yet complete.

Subject to and without waiving the foregoing objections, the SFFA Action was the topic of numerous reports and written pieces published by multiple national news media outlets, including CNN and Fox News, and *The New York Times*, *The Wall Street Journal*, *The Boston Globe*, *USA Today, The Associated Press* and *The Washington Post* – all of which (and others) were and are available in the public domain. In Harvard's experience, the Zurich employees working on Harvard's account consistently were knowledgeable and up to date about such newsworthy developments concerning Harvard, and the SFFA Action surely was no exception. Further discovery is expected to reveal additional facts, and discovery is ongoing.

**INTERROGATORY NO. 8:** State all facts supporting the allegation in paragraph 52 of the Complaint that "the personnel at Zurich assigned to the Harvard account were knowledgeable and up to date about current events and developments concerning Harvard" including an explanation of Harvard's understanding of such "current events and developments."

**RESPONSE TO INTERROGATORY NO. 8:** Harvard objects to this Interrogatory as it seeks information within Zurich's possession, custody or control. Harvard objects to this Interrogatory insofar as it or can be obtained from some other source that is more convenient,

less burdensome, or less expensive. Harvard further objects to the extent it has not had time to adequately discover all of the factual information upon which to answer the Interrogatories, and fact discovery is not yet complete.

Subject to and without waiving the foregoing objections, Harvard is currently aware of the following facts: Events involving Harvard, its students and faculty are often reported and commented upon in various news outlets. In Harvard's experience, and as noted in response to Interrogatory No. 9, the Zurich employees working on Harvard's account consistently were knowledgeable and up to date about such newsworthy developments. For example, Zurich personnel including Susan Fortin often discussed reports about current events concerning Harvard without prompting from Harvard at annual meetings, renewal meetings and on phone calls. Such Zurich personnel knew of these events in advance of such meetings and calls. Zurich's detailed knowledge about recent news and events concerning Harvard was consistent with Zurich's ongoing effort during the 2014-2016 timeframe to replace AIG as the underwriter of the primary layer of Harvard's insurance program. Further discovery is expected to reveal additional facts, and discovery is ongoing.

**INTERROGATORY NO. 9:** State all facts supporting the allegation in paragraph 53 of the Complaint that "Zurich personnel frequently attended meetings with Harvard already aware [sic] of such events and developments affecting Harvard," and indicate in detail the date, location, identity of attendees, and agenda of any such meetings.

**RESPONSE TO INTERROGATORY NO. 9:** Harvard objects this Interrogatory to the extent that it is overbroad and seeks information that is not proportional to the needs of this case.

Harvard also objects to this Interrogatory as unduly vague, indefinite, and lacking in reasonable particularity, in particular the term "such meetings." Harvard additionally objects to this Interrogatory insofar as it seeks information in Zurich's possession, custody, or control. Harvard objects to this Interrogatory insofar as the information it seeks can be obtained from some other source that is more convenient, less burdensome, or less expensive. Harvard objects to the Requests to the extent that it seeks information not in Harvard's possession, custody or control. Harvard further objects to the extent it has not had time to adequately discover all of the factual information upon which to answer the Interrogatories, and fact discovery is not yet complete.

Subject to and without waiving the foregoing objections, Harvard is currently aware of the following facts: Events involving Harvard, its students and faculty are often reported and commented upon in various news outlets. In Harvard's experience, the Zurich employees working on Harvard's account consistently were knowledgeable and up to date about such newsworthy developments. For example, Zurich personnel including Susan Fortin often discussed reports about current events concerning Harvard without prompting from Harvard at annual meetings, renewal meetings and on phone calls. Such Zurich personnel knew of these events in advance of such meetings and calls. Zurich's detailed knowledge about recent news and events concerning Harvard was consistent with Zurich's ongoing effort during the 2014-2016 timeframe to replace AIG as the underwriter of the primary layer of Harvard's insurance program. The annual meetings with Harvard and Zurich typically were attended by Walter Pizzano and Susan Fortin, and sometimes might have included Victor Greene. Renewal meetings typically were attended by Walter Pizzano, Susan Fortin, possibly an underwriter from Zurich such as Amauri Taveras, plus Jill Berube and sometimes others from Marsh. Further discovery is likely to reveal additional facts, and discovery is ongoing.

**INTERROGATORY NO. 10:** State whether there were any meetings between Harvard and Zurich at which the SFFA Action was discussed before Harvard gave formal notice of the SFFA Action to Zurich in May 2017.

**RESPONSE TO INTERROGATORY NO. 10:** Harvard objects this Interrogatory to the extent that it seeks information in Zurich's possession, custody, or control. Harvard further objects to the extent it has not had time to adequately discover all of the factual information upon which to answer the Interrogatories, and fact discovery is not yet complete.

Subject to and without waiving the foregoing objections, Harvard does not have specific details about particular meetings with Zurich before May 2017 where the SFFA Action was discussed, but as set forth in response to Interrogatory Nos. 8 and 9, there were several meetings and calls during the 2014-2016 timeframe when the SFFA Action may have been discussed, given the fact that Zurich employees working on Harvard's account consistently were knowledgeable and up to date about newsworthy developments like the filing and litigation of the SFFA Action. Further discovery is likely to reveal additional facts, and discovery is ongoing.

**INTERROGATORY NO. 11:** If the answer to Interrogatory No. 10 is yes, identify: (a) the dates of all such meetings; (b) all attendees at all such meetings; and (c) the substance of any discussions concerning the SFFA Action at such meetings.

**RESPONSE TO INTERROGATORY NO. 11:** See Response to Interrogatory Nos. 9 and 10.

**INTERROGATORY NO. 12:** State all facts supporting the allegation in paragraph 47 of the Complaint that "Zurich has stated in its coverage letters that the SFFA Action would be a covered claim but for the purported late notice."

**RESPONSE TO INTERROGATORY NO. 12:** Harvard objects to this Interrogatory to the extent it seeks privileged documents including attorney-client communications, attorney work product, materials prepared in anticipation of litigation, and trial preparation materials. Harvard objects to this Interrogatory to the extent that it seeks information already in Defendant's possession, custody, or control.

Subject to and without waiving the foregoing objections, pursuant to Federal Rule of Civil Procedure 33(d), Harvard refers Zurich to the August 30, 2017 Letter from Zurich to Harvard, wherein Zurich acknowledged the comments of AIG claims adjuster Talis Knets in determining that the SFFA Claim is covered under the primary AIG Policy, and Zurich, with regard to the follow form Zurich Policy, stated: "[w]hile we generally agree with Ms. Knets' comments, we would be remiss if we failed to note that although the complaint in this matter was filed in November 2014, Zurich did not receive notice of it until May 2017." Harvard also refers Zurich to letters from Zurich dated October 25, 2017, and an undated letter from Zurich to Walter Pizzano in response to a March 10, 2021 letter from Harvard to Paul Lavelle, in which Zurich raised no defenses to coverage of the SFFA Claim aside from the defense of late notice.

**INTERROGATORY NO. 13:** Identify with specificity the category and amount of all damages allegedly suffered by Harvard as alleged in the Complaint.

13

**RESPONSE TO INTERROGATORY NO. 13:** Harvard objects to this Request to the extent it seeks privileged documents including attorney-client communications, attorney work product, materials prepared in anticipation of litigation, and trial preparation materials. Harvard further objects to this Request to the extent it seeks confidential information. Harvard's answer to this Interrogatory below is **CONFIDENTIAL** under the Stipulated FRE 502(d) and Protective Order anticipated to be entered in this action.

Subject to and without waiving the foregoing objections, Harvard currently identifies that it has incurred more than $7.5 million in defense costs in connection with the SFFA Action that are in excess of the $2.5 million retention and $25 million limits of liability of the primary AIG Policy to which the Zurich Policy is excess. Harvard is continuing to incur defense costs. Pursuant to Federal Rule of Civil Procedure 33(d), Harvard also refers Zurich to defense counsel invoices and other documents evidencing amounts incurred and paid that will be produced, in accordance with the anticipated Protective Order in this matter, in response to Zurich's Request for Production of Documents.

Dated:  July 15, 2022

By:   /s/ Ethan W. Middlebrooks
Marshall Gilinsky, Esq. (BBO # 569181)
Ethan W. Middlebrooks, Esq. (*Pro Hac Vice*)
Jade W. Sobh, Esq. (*Pro Hac Vice*)
ANDERSON KILL P.C.
1251 Avenues of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
E-mail: mgilinsky@andersonkill.com
E-mail: emiddlebrooks@anersonkill.com
E-mail: jsobh@andersonkill.com

*Attorneys for Plaintiff President and Fellows of Harvard College*

## **VERIFICATION**

I, Bradley E. Abruzzi, declare under penalty of perjury that I am employed at Harvard University's Office of the General Counsel, that the foregoing Responses are true to the best of my knowledge, and as to matters about which I lack personal information, I believe such matters to be true.

Dated: July 15, 2022

_____
Bradley E. Abruzzi