UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>   Plaintiff,<br><br> v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>   Defendant. | Civil Action No. 21-CV-11530-ADB |

**DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**I.
PRELIMINARY STATEMENT**

Plaintiff President And Fellows Of Harvard College ("Harvard") seeks coverage from Zurich under a claims-made-and-reported insurance policy for an underlying lawsuit against Harvard challenging its admission policies. That underlying suit was filed in November 2014. Harvard gave notice to its primary insurer, AIG, within days after that lawsuit was filed. By its own admission, however, Harvard did not give notice to Zurich until May 2017, nearly three years after the suit was filed and nearly two years after the policy had expired. Harvard's failure to comply with the reporting requirements of its claims-made-and-reported policy are fatal to its claim for coverage as a matter of law and Zurich is entitled to summary judgment dismissing the complaint.

## II.
## FACTUAL BACKGROUND

### A. The SFFA Action

On or about November 17, 2014, an action was commenced entitled *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), et al.*, Case No. 1:14-cv-14176 in the United States District Court for the District of Massachusetts (the "SFFA Action"). (SUMF ¶ 1 and Ex. A.)[1] The SFFA Action alleged that Harvard utilized racially and ethnically discriminatory policies and procedures in administering the undergraduate admissions program at Harvard College in violation of Title VI of the Civil Rights Act of 1964. (Ex. A.)

### B. The Insurance Policies

#### 1. The AIG Policy

National Union Fire Insurance Company of Pittsburgh, Pa. ("AIG") issued a primary Educational Institution Risk Protector policy to Harvard bearing policy number 01-817-25-28 for the Policy Period of November 1, 2014 to November 1, 2015 (the "AIG Policy"). (SUMF ¶ 2 and Dkt. 1-2.) The Insuring Agreements of the AIG Policy provided coverage to Harvard in connection with any Claim that is both first made against Harvard during the policy period and reported in accordance with the terms of the AIG Policy.

Section 3, Notice, of the AIG Policy stated that as a condition precedent to coverage under the policy, Harvard was required to provide written notice to AIG of any Claim as soon as

---

[1] References to "SUMF" are references to Zurich's LR 56.1 Statement of Undisputed Material Facts in support of its motion for summary judgment. All exhibits referenced are exhibits attached to the Declaration of Andrew L. Margulis in support of Zurich's motion for summary judgment ("Margulis Dec.")

practical but in no event later than ninety (90) days after the end of the policy period. (SUMF ¶ 3 and Dkt. 1-2 at p. 68 of 149.)

### 2. The Zurich Policy

Zurich issued to Harvard a Zurich Excess Select Insurance Policy bearing policy number IPR 3792308-03 for the Policy Period of November 1, 2014 to November 1, 2015 (the "Zurich Policy"). (SUMF ¶ 4.) The Zurich Policy was a "follow form" policy and, except as otherwise specifically stated to the contrary in the Zurich Policy, incorporated the terms, conditions and limitations of the AIG Policy, including the Insuring Agreement and notice provision. (SUMF ¶¶ 5, 6 and Dkt. 1-1 at p. 10 of 15.)

The Zurich Policy thus required as a condition precedent to coverage that Harvard provide written notice of any claim to Zurich just as it was required to provide notice to AIG. (SUMF ¶ 7; Dkt. 1-1 at p. 11-12 of 15.) Moreover, the Zurich Policy specifically stated that any such notice to Zurich must be sent to a specified address stated in the Zurich Policy and that notice to AIG did not constitute notice to Zurich. (SUMF ¶¶ 7-9; Dkt. 1-1 at p. 8, 11 of 15.)

## C. Notice to AIG

On November 19, 2014, Harvard gave notice to AIG of the SFFA Action. (SUMF ¶ 10; Dkt. 1 at ¶ 41; Ex. B at Z 002055; Ex. F, Response to Interrogatory No. 4 at p. 6.) AIG sent Harvard its coverage position letter for the SFFA Action on August 4, 2015. (SUMF ¶ 11; Ex. B.)

## D. Notice to Zurich

On May 23, 2017, Harvard first provided notice to Zurich of the SFFA Action. (SUMF ¶ 12; Ex. C.) As part of its first notice to Zurich, Harvard also provided Zurich with a copy of AIG's reservation of rights letter. (SUMF ¶ 13; Ex. C; Ex. F, Response to Interrogatory No. 4 at p. 6.)

In response to Harvard's notice, Zurich asked Harvard to confirm that Harvard's May 23, 2017 notice letter was Harvard's first notice to Zurich. (SUMF ¶ 14 and Ex. D.) Harvard confirmed that its first notice to Zurich was in fact the May 23, 2017 letter and there had been no prior notification sent to Zurich. (SUMF ¶ 15 and Ex. D.)

By letter dated October 25, 2017, Zurich advised Harvard that no coverage was available under the Zurich Policy for the SFFA Action as a result of Harvard's failure to comply with the notice requirements of the Zurich Policy. (SUMF ¶ 16; Dkt. 1 at ¶ 46; Ex. E.)

## III.
## ARGUMENT

**A.    SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute will not preclude summary judgment unless it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id*.

When there are no disputed issues of material fact, an insurance coverage dispute is a matter of law appropriate for resolution by summary judgment. *See Vermont Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 42 (1st Cir.2013) ("[T]he interpretation of an insurance policy typically embodies a question of law for the court"); *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146, 439 N.E.2d 234 (1982). Moreover, interpretation of unambiguous terms is appropriate

for summary judgment. *Sullivan v. Southland Life Ins. Co.*, 67 Mass.App.Ct. 439, 442, 854 N.E.2d 138 (2006).

B.     **PRINCIPLES OF CONTRACT INTERPRETATION**

Under Massachusetts law, an insurance policy is ordinarily construed according to general principles of contract interpretation. *See Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000). The court begins with "the actual language of the polic[y], given its plain and ordinary meaning." *Id.* Where the provisions of an insurance policy are plainly expressed, the Court must enforce the policy in accordance with its terms. *Cody*, 387 Mass. at 146. Only when the policy's terms leave room for interpretation should the Court interpret the policy in a manner consistent with the expectations of an objectively reasonable insured. *McGregor v. Allamerica Ins. Co.*, 449 Mass. 400, 402, 868 N.E.2d 1225 (2007).

Here, the relevant terms of the Zurich and AIG Policies are clear and unambiguous, and there are no genuine issues of material fact, and the Court should grant Zurich's motion for summary judgment.

C.     **NO COVERAGE EXISTS FOR THE SFFA ACTION BECAUSE HARVARD FAILED TO TIMELY REPORT THAT MATTER TO ZURICH**

1.     **Strict Compliance With The Policy's Reporting Provision Is Required**

The Zurich Policy is a "claims-made and reported" policy, meaning that the Insuring Agreement only applies to claims that are both first made during the policy period and reported within the specific time period set forth in the policy.

In this regard, the Zurich Policy, on its first page, states in part:

> **THIS POLICY FOLLOWS TO THE TERMS, CONDITIONS, AND LIMITATIONS OF THE FOLLOWED POLICY. COVERAGE IS LIMITED TO LOSS FROM CLAIMS AGAINST THE POLICYHOLDER DURING THE POLICY**

5

> **PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD, IF EXERCISED, AND REPORTED TO THE UNDERWRITER PURSUANT TO SUBSECTION III.A. …**

Dkt. 1-1 at p. 8 of 15 (emphasis in original).  Moreover, the Insuring Clause of the Zurich Policy provides in part:

> Coverage under this policy shall then apply in conformance with and subject to the warranties, if permitted, limitations, conditions, provisions, and other terms of the Followed Policy, together with the warranties, if permitted, and limitations of any other Underlying Insurance.

*Id.* at p. 10 of 15. The Zurich Policy defines "Followed Policy" as the AIG Policy.

The AIG Policy's Notice provision states in part as follows:

> a)  The Insureds shall, <u>as a condition precedent to the obligations of the Insurer under this policy</u>, give written notice to the Insurer of any Claim made against an Insured, a Crisis Management Event or Privacy Event or Security Failure or Security Threat as soon as practicable after: (i) the Named Entity's Risk Manager or General Counsel (or equivalent position) first receives notice of the Claim; . . . Notwithstanding the foregoing, the Insured shall not be required to give written notice of a Claim until the earliest occurrence of the following:
>
> > (i)  the Claim is or is sought to be certified as a class action; or
> >
> > (ii)  total Loss (including Defense Costs) of the Claim is reasonably estimated by the Organization's General Counsel or Risk Manager (or equivalent position) to exceed 50% of the applicable retention amount for such Claim;
>
> *provided, however,* that <u>in all events, all Claims, including Claims described in (i) - (ii) above, must be reported to the Insurer no later than ninety (90) days after the end of the Policy Period</u> or the Discovery Period (if applicable).

Dkt. 1-2 at p. 68 of 149 (emphasis added).

6

4877-5066-2697.5

The AIG Policy thus makes clear that regardless of the type of Claim, the amount spent or any other contingency, in all events notice of any Claim must be given no later than ninety (90) days after expiration of the policy period.

As noted above, the Zurich Policy incorporates the terms and conditions of the AIG Policy, including the Notice provision. Section III.A of the Zurich Policy, as noted in the bolded statement on the first page of the policy as quoted above, states in relevant part:

> A.  Reporting and Notice—**As a condition precedent to exercising any rights under this policy**, the Policyholder shall give the Underwriter written notice of any claim or any potential claim under this policy or any Underlying Insurance in the same manner required by the terms and conditions of the Followed Policy. Notwithstanding the foregoing, **notice to the insurer(s) of the Followed Policy** or other Underlying Insurance **does not constitute notice to the Underwriter**. Written notice of any claim or potential claim shall be provided to the Underwriter at the address set forth in Item 5.A. of the Declarations.

Dkt. 1-1 at p. 11-12 of 15. (emphasis added). The term "Underwriter" is specifically defined in the Zurich Policy as Zurich. Dkt. 1-1 at p. 8 of 15.

Thus, the Zurich Policy makes clear that notice must be given within the same time period as set forth in the AIG Policy (i.e. no later than ninety (90) days after the end of the policy period) and that separate notice must be given to Zurich; notice to AIG does not constitute notice to Zurich.

This Court has noted the distinction under Massachusetts law between claims made policies and occurrence policies as follows:

> Although both policies aim to insure a policyholder during a specified period of time, an occurrence policy focuses on when the conduct occurs and provides coverage if the covered act or omission occurs within the policy period, regardless of the date of discovery." [internal citation omitted]. "By contrast, **a claims made and reported policy covers the insured for claims made**

7

> **during the policy year and reported within that period or a specified period thereafter** regardless of when the covered act or omission occurred.

*Biochemics, Inc. v. Axis Reinsurance Co.*, 83 F. Supp. 3d 405, 407 (D. Mass. 2015), aff'd 924 F.3d 633 (1st Cir. 2019), citing *Financial Res. Network, Inc. v. Brown & Brown, Inc.*, 867 F. Supp. 2d 153, 178 (D. Mass. 2012) (emphasis added).

Massachusetts law is clear that such reporting requirements in claims-made-and-reported policies are enforceable and must be strictly complied with, and the insurer is not required to demonstrate that it was prejudiced by the insured's failure to comply. *See, e.g.*, *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 49 (1st Cir.2009); *National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168 (1st Cir.1991); *Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678, 681 (1997); *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 864–65 (1990); *Catlin Specialty Ins. Co. v. American Superconductor Corp.*, 32 Mass.L.Rptr. 93 (Mass. Super. 2014); *Flynn v. New England Ins. Co., Inc.*, 96–1193D, 1998 WL 150384 at *9 (Mass. Super. 1998) ("In the case of a claims made policy, an insured's failure to comply with notice and reporting provisions bars coverage, regardless of any prejudice to the insurer.").

In *Chas. T. Main*, the Supreme Judicial Court of Massachusetts held:

> The purpose of a claims-made policy is to minimize the time between the insured event and the payment. For that reason, the insured event is the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period or a slightly extended, and specified, period. If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated. Accordingly, the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy is of the essence in determining whether coverage exists. Prejudice for an untimely report in this instance is not an appropriate inquiry.

406 Mass. at 864-65; see also *Tenovsky*, 424 Mass. at 681 (quoting *Chas. T. Main*).

Likewise, in *Catlin*, the court held:

> That the notice requirements in a claims made and reported policy is to be strictly enforced, without exception for lack of prejudice, is the general consensus of courts here and elsewhere . . . Under the common law of Massachusetts, therefore, AMSC's failure to notify Catlin of the claim during the policy period in which it was received is fatal to its claims for indemnity and defense.

32 Mass.L.Rptr. at *5.

In *Gargano*, the First Circuit, applying Massachusetts law, held:

> It is clear under Massachusetts law that for a 'claims made and reported' policy, 'the insured event' " is the combination of both requirements: (1) the claim must be first made against the insured during the policy period, and (2) the claim must be reported to the insurer within the policy period"

572 F.3d at 49. Similarly, *Talcott*, the First Circuit held that the "policy was of the 'claims made' variety, <u>requiring strict compliance with the notice requirement</u>." 931 F.2d at 168 (emphasis added).

Since the Zurich Policy, including the provisions that policy incorporated from the AIG Policy, makes clear that it is a claims-made and reported policy with a specific time frame in which claims must be reported, strict compliance with those provisions is required. There is no dispute here that the Zurich Policy expired on November 1, 2015. (SMUF ¶ 4; Dkt. 1-1 at p. 8 of 15.) There is likewise no dispute, and Harvard has admitted, that it first gave notice to Zurich on May 23, 2017, approximately eighteen (18) months after the policy had expired. (SUMF ¶ 12; Dkt. 1 at ¶ 44; Ex. C; Ex. F, Response to Interrogatory No. 4 at p. 6.) Harvard's admitted failure to comply with the notice provision is fatal to its claim for coverage.

    **2.    Neither "Constructive Notice" Nor "Actual Knowledge" Is Sufficient To Satisfy Harvard's Reporting Obligation**

Realizing that its failure to comply with the notice provision dooms its chance of obtaining coverage under the Zurich Policy, Harvard has presented a creative yet specious

9

argument—that Zurich somehow had "constructive notice" or actual knowledge of the SFFA Action and Harvard should thus be relieved of its contractual obligation to provide notice to Zurich. Harvard suggests that the SFFA Action was newsworthy and was reported in the press, meaning someone at Zurich must have read about the case and knew of its existence. (Dkt. 1 at ¶¶ 39, 53-54.) This argument is legally deficient and must be rejected, as it has been repeatedly by the Massachusetts courts and this Court.

In *Fanaras Enterprises Inc. v. Law Offices of Roger Allen Doane*, 1 Mass.L.Rptr. 145 (Mass. Super. 1993), the plaintiff, Fanaras, sued his attorney, Doane, asserting various claims. Doane was insured under a professional liability policy, which was a claims-made policy requiring that a claim against the insured attorney to be made and reported during the policy period. During the policy period, Fanaras notified both the broker and the insurer of its lawsuit against the insured, Doane. At no time did Doane notify the insurer or request that the insurer provide a defense. Several years after the claim was made, Doane wrote to the insurer asking it to assist in his defense by retaining counsel. The insurer refused and denied coverage. The court noted that the nature of a claims-made policy required the claim to be made and reported during the policy period. The insured argued that the plaintiff had notified the insurer of the lawsuit during the policy period and the insurer thus had knowledge of the suit, thus satisfying the notice requirement. The court rejected that argument, holding:

> the fact that plaintiff's counsel notified [the insurer] does not satisfy the notice requirement. "Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired ... An insurance company is not required to intermeddle officiously where its services have not been requested." *Hartford Accident and Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir.1985).

1 Mass.L.Rptr. 145 at *3; see also *Flynn*, 1998 WL 150384 at *11, citing *Hartford Accident and Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir.1985) (no duty to defend, despite knowledge of suit, where only request was from "rival insurance company" ten months after litigation began, because "[a]n insurance company is not required to intermeddle officiously where its services have not been requested").

*Boyle v. Zurich American Ins. Co.*, 32 Mass.L.Rptr. 352 (Mass. Super. 2014), vacated on other grounds, 472 Mass. 649 (2015), involved an issue of notice under an occurrence policy. The plaintiff was injured as a result of an explosion on the insured's premises. Plaintiff obtained a default judgment and sued the insurer, claiming that it failed to settle once the insured's liability became reasonably clear. The accident occurred in 2006 and the insured notified the insurer of the accident and that someone had been injured. Though no suit had yet been filed, the injured party's attorneys contacted the insurer, but the insurer never responded. Suit was filed in November 2008 and the insured never notified the insurer of the suit or requested a defense, leading to the default. The insurer did not learn of the suit until September 2009 when plaintiff's attorney notified it that a damages hearing was scheduled. The insurer did not respond. In arguing that it had no obligation to defend the lawsuit, the insurer relied on the decisions in *Fanaras* and *Flynn*, and argued its duty to defend was not triggered becuae the insured never notified it of the lawsuit and requested a defense. The court rejected this argument, holding that *Fanaras* and *Flynn* were distinguishable because they "both involved claims-made policies, and thus were applying legal rules that have no relevance here." 32 Mass.L.Rptr. 352 at *12. Since

11

the policy involved in *Boyle* was an occurrence policy, the insurer would only be relieved of its defense obligation if it was prejudiced by the delay.[2]

Massachusetts law is thus clear that Harvard's failure to strictly comply with the obligation of its claims-made-and-reported policy to give notice of a claim within ninety (90) days after the policy period relieves Zurich from any coverage obligation as a matter of law, without consideration to whether Zurich was prejudiced or, as Harvard argues, had "knowledge" of the SFFA Lawsuit because of media reports. As such, any facts relating to whether Zurich had such knowledge are not material and cannot defeat Zurich's motion for summary judgment.

This Court has also considered and rejected the very argument made by Harvard. *See Northbrook Excess & Surplus Ins. Co. v. Medical Malpractice Joint Underwriting Ass'n*, 1988 U.S. Dist. LEXIS 17954 (D. Mass. March 9, 1988). In *Northbrook*, this Court recognized the holding in a prior decision between the same parties that concluded that constructive notice is insufficient to satisfy the insured's reporting obligation under a claims-made policy. *Id.* at 32. In so holding, the Court relied on C*ity of Harrisburg v. International Surplus Lines Insurance Company*, 596 F. Supp., 954 (M.D. Pa. 1984), *aff'd* 770 F.2d 1067 (3rd Cir. 1985). In *City of Harrisburg*, the court addressed the essence of the argument put forward by Harvard—that a newspaper article satisfied the insured's obligation to give notice within the time required by the claims-made policy issued by the insurer. In rejecting that argument, the court held:

> First, we reject plaintiffs' contention that the newspaper articles of November 5, 1982, gave the insurer, through its Pennsylvania agent, Woolf/Strite, constructive notice of the claim within the

---

[2] While the Supreme Judicial Court vacated the decision on other grounds relating to damages, it did not disturb and in fact reiterated the principles of notice as distinguished between occurrence and claims-made policies. In this regard, the SJC held that the approach set forth in cases concerning occurrence policies are not applicable to claims-made policies. 472 Mass. 649 at 655 n.8, citing *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 863–864, 551 N.E.2d 28 (1990).

> policy period. We think the notice contemplated by the contract is notice from an insured to the insurer that a claim allegedly covered under the policy has been made. A newspaper article written and published by strangers to the insurance contract, intended to be read by the general public, does not meet that requirement. Without some action by an insured, and especially in light of the policy language discussed above, the insurer would have no way of knowing that a claim for coverage was being made under its policy.

596 F. Supp. at 959-60. Similarly, here, the "widespread media coverage" cited by Harvard in its complaint (Complaint, Dkt. 1 at ¶ 39) was insufficient to satisfy Harvard's obligation to report the SFFA Action to Zurich within ninety (90) days after the expiration of the Zurich Policy. Having failed to do so, Harvard cannot now seek to relieve itself of its dereliction by pointing to news articles "written and published by strangers to the insurance contract." Having admitted that it did not affirmatively give notice to Zurich of the SFFA Action until May 2017 (Dkt. 1 at ¶ 44), Harvard's argument regarding constructive notice or actual knowledge by Zurich must be rejected.

## IV.
## CONCLUSION

Based on the foregoing, Zurich respectfully requests that its motion for summary judgment be granted in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: August 17, 2022

                                            Respectfully submitted,

                                            ROPERS MAJESKI PC

                                            By: /s/ *Andrew L. Margulis*
                                            Andrew L. Margulis *Pro Hac Vice*
                                            Andres Avila *Pro Hac Vice*
                                            750 Third Avenue, Floor 25
                                            New York, New York 10017
                                            Telephone: (212) 668-5297

Facsimile: (212) 668-5929
E-mail: Andrew.Margulis@ropers.com
Andres.avila@ropers.com

Paul T. Muniz (BBO No. 564786)
Donovan Hatem LLP
53 State Street, 8th Floor
Boston, MA 02109
Telephone:  (617) 406-4500
Facsimile:   (617) 406-4501
Email:  pmuniz@donovanhatem.com

*Attorneys for Defendant Zurich American Insurance Company*

## Certificate of Service

I hereby certify that the foregoing document will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 17, 2022, and courtesy electronic copies will be sent to counsel for parties who have not yet appeared in this action.

/s/ *Andrew L. Margulis*
Andrew L. Margulis