UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>                              Plaintiff,<br><br>      v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>                              Defendant. | Case No. 1:21-cv-11530-ADB |

**PLAINTIFF PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
DISCOVERY AND IN OPPOSITION TO ZURICH AMERICAN
<u>INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER</u>**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 3

DISCOVERY REQUESTS AT ISSUE .................................................................... 9

ARGUMENT ........................................................................................................... 10

   A.   The Facts At Issue Are Relevant ............................................................... 10

   B.   Zurich's Discovery Responses Are Inadequate ......................................... 14

   C.   Zurich Should Be Compelled To Search for and Produce Relevant Evidence ............. 15

   D.   Zurich's Motion for Protective Order is a Red Herring ............................. 17

CONCLUSION ........................................................................................................ 19

ADDENDUM ........................................................................................................ A-1

   Interrogatory Requests and Responses ..................................................... A-1

   Document Requests and Responses ........................................................... A-2

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anstead v. Virginia Mason Med. Ctr.*,
    No. 2:21-cv-00447, 2022 WL 1641425 (W.D. Wash. May 24, 2022) ...................................17

*Baker v. Liggett Group, Inc.*,
    132 F.R.D. 123 (D. Mass. 1990) ...........................................................................................10

*Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*,
    406 Mass. 862 (1990) ......................................................................................................10, 11

*Com. v. Olivo*,
    369 Mass. 62 (1975) ...........................................................................................................1, 12

*Crocs, Inc. v. Effervescent, Inc.*,
    No. 06-cv-605, 2017 WL 1325344 (D. Colo. Jan. 3, 2017) ..................................................17

*Fanara Enterprises Inc. v. Law Offices of Roger Allen Doane*,
    1 Mass. L. Rptr. 145 (Mass. Super. 1993). ...........................................................................12

*Flynn v. New England Ins. Co., Inc.*,
    No. 96–1193D, 1998 WL 150384 (Mass. Super. 1998) ...................................................12, 13

*Haroun v. ThoughtWorks, Inc.*,
    No. 20-cv-100, 2020 WL 6828490 (S.D.N.Y. Oct. 7, 2020)..................................................17

*In re John J. Sullivan, Inc.*,
    128 B.R. 7 (D. Mass. 1990) ..................................................................................................11

*Lexington Ins. Co. v. Newell Health Care Sys., Inc.*,
    10 Mass. L. Rptr. 406, 1999 WL 753487 (Mass. Super. Ct. July 6, 1999). ...........................8

*Martley v. City of Basehor, Kansas*,
    No. 19-cv-2138, 2021 WL 4134307 (D. Kan. Sept. 10, 2021)...............................................18

*New England Env'tl Tech. v. Am. Safety Risk Retention Grp., Inc.*,
    738 F. Supp. 2d 249 (D. Mass. 2010) ....................................................................................11

*Northbrook Excess & Surplus Ins. Co. v. Med. Malpractice Joint Underwriting*
    *Ass'n*,
    No. 85-751-Y, 1988 U.S. Dist. LEXIS 17954 (D. Mass. March 9, 1988)........................12, 13

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)................................................................................................................10

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*Ruiz-Bueno v. Scott,*
    No. 2:12–cv–0809, 2013 WL 6055402 (S.D. Ohio Nov. 15, 2013)........................................17

*Tenovsky v. Alliance Syndicate, Inc.,*
    424 Mass. 678 (1997) .....................................................................................................10, 11

*Winfield v. City of New York,*
    No. 15-cv-05236, 2018 WL 840085 (S.D.N.Y. Feb. 12, 2018) ...............................................17

**Other Authorities**

Federal Rule of Civil Procedure 26 ...............................................................................................10

Federal Rule of Civil Procedure 37 .............................................................................................1, 6

Jeffrey P. Griffin, *The Inapplicability of the Notice-Prejudice Rule To Pure*
    *Claims-Made Insurance Policies*, 42 Conn. L. Rev. 244 (Nov. 2009)...................................11

Local Rule 37.1 ...............................................................................................................................6

NOW COMES Plaintiff President and Fellows of Harvard College ("Harvard") which hereby moves pursuant to Federal Rule of Civil Procedure 37 and Local Rule of the United States District Court for the District of Massachusetts 37.1 to compel Defendant Zurich American Insurance Company ("Zurich") to produce documents and information Zurich wrongfully has withheld from discovery.  Harvard also opposes Zurich's Motion for Protective Order (Dkt. # 26) regarding a Notice of Deposition served by Harvard.

## PRELIMINARY STATEMENT

> "A party may not shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received."

*Com. v. Olivo*, 369 Mass. 62, 69 (1975).

This case is about Zurich's actual notice of the underlying litigation *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, No. 1:14-cv-14176-ADB (the "SFFA Action") and Zurich's improper attempt to avoid its obligations for the resulting insurance claim (the "SFFA Claim") solely on the grounds that Zurich purportedly did not have timely notice of the SFFA Action.

The discovery Harvard seeks is vital to Zurich's late notice defense.  Zurich has gone to great lengths to hide the evidence that it knew of the SFFA Action during the period provided for notice – from the filing of the SFFA Action on November 17, 2014, until the expiration of the notice period on January 30, 2016.  As this Court is well aware, the SFFA Action is a very prominent dispute aimed at prohibiting colleges and universities from considering race in the college admissions process.  The action received widespread media attention from the time it was filed – with coverage by most major national print, television and radio news outlets – and is now pending before the U.S. Supreme Court.  Surely Zurich personnel and their supervisors involved in selling insurance to Harvard knew about the SFFA Action.  However, Zurich has

1

refused to produce the most basic information Harvard seeks through discovery, including: (i) the names of personnel involved on Harvard's account; (ii) emails from all but two employees (except for those placed in a "claim file" created in 2017, which is after the most important time period from November 2014 to January 2016 for assessing Zurich's notice of the SFFA Action); and (iii) underwriting files from 2014 to 2018 showing how Zurich set rates for Harvard's insurance after the SFFA Action was filed.

Zurich is trying to hide this critical evidence because that evidence will prove the inapplicability of its late notice defense in two important ways: (1) it will show that Zurich did have notice of the SFFA Action between November 2014 and January 2016; and (2) it will show what Zurich did with that knowledge when it set the rates and premiums for Harvard's insurance thereafter. These facts are central to Zurich's late notice defense and are an essential subject for discovery before the Court can evaluate the merits of Zurich's attempt to escape its obligations to Harvard.

As the cases cited by Zurich make clear, the purpose of the notice requirement under "claims made" insurance policies is to ensure that the insurance company knows about claims at the end of the policy period and can set rates accordingly going forward. That purpose was met here. Zurich surely knew about the SFFA Action in the year after it was filed, especially given the significant, ongoing attention that the suit received in national and local news. And Harvard is entitled to discover that Zurich set rates and premiums for Harvard's insurance with knowledge of the SFFA Action – which Harvard has paid since. These are the facts that Zurich wrongfully attempts to hide from Harvard and this Court as it attempts to have Harvard's valid claim thrown out of court.

The notice requirement is not meant to be a tool used to punish policyholders for technical noncompliance.  Where an insurance company knows about a claim and sets rates and premiums with that knowledge, then the purpose of the notice requirement is met.  Under such circumstances – like those here – allowing the insurance company to avoid coverage on "late notice" grounds serves only to punish the policyholder for no valid reason, while delivering an unfair windfall to the insurance company that had notice of the claim all along.  Zurich's attempt to do just that here – including through stonewalling proper discovery requests – must not be allowed.

## **FACTUAL BACKGROUND**

Harvard brought this insurance coverage action against its excess insurance company, Zurich, to recover defense costs incurred beyond the limits of the primary insurance provided by AIG in connection with the SFFA Action.  The SFFA Action generally alleges that Harvard administers its student admissions process in violation of Title VI.  Complaint (Dkt. # 1) at ¶¶ 3, 22-23.  Harvard has denied the allegations in the SFFA Action and incurred substantial defense costs responding to it.  *Id.* at ¶ 5.  The SFFA Action progressed through extensive pre-trial discovery and motion practice, resulting in a three-week trial with judgment entered by this Court in favor of Harvard on all counts. SFFA appealed to the United States Court of Appeals for the First Circuit, and on November 12, 2020, the First Circuit affirmed this Court's decision. *Id.* at ¶ 24.  Thereafter, SFFA filed a petition for *certiorari* to the Supreme Court of the United States, which was granted, and that appeal is now pending before the Supreme Court.  *See id.* at ¶ 25.

In addition, the Department of Justice ("DOJ") opened an investigation into Harvard's admissions practices in September 2017, which investigation is still pending.  *Id.* at ¶¶ 4, 12.

Harvard has incurred defense costs in connection with the DOJ investigation, including for the collection and production of thousands of business records.  *Id.* at ¶¶ 6, 12, 26-27.

The SFFA Action involves a constitutional attack at Harvard's admissions process -- something that was, and still is, widely reported in national news media.  *See, e.g.*, *id.* at ¶ 39, and Ex. C (Dkt. # 3) (eight news articles); *see also, e.g.*, Nick Anderson, *Lawsuits allege unlawful racial bias in admissions at Harvard, UNC-Chapel Hill*, THE WASHINGTON POST (Nov. 17, 2014);  Sam Sanders, *New Affirmative Action Cases Say Policies Hurt Asian-Americans*, NPR (Nov. 20, 2014), *available at* https://www.npr.org/sections/codeswitch/2014/11/20/365547463/new-affirmative-action-cases-say-policies-hurt-asian-americans; *Harvard under fire; Affirmative Action.*, THE ECONOMIST, at p. 26 (Nov. 29, 2014), *available at* link.gale.com/apps/doc/A391709758/EAIM?u=mlin_b_bpublic&sid=bookmark-EAIM&xid=ca048071; Douglas Belkin, *Harvard Accused of Bias Against Asian-Americans*, WALL STREET JOURNAL (May 15, 2015), *available at* https://www.wsj.com/articles/asian-american-organizations-seek-federal-probe-of-harvard-admission-policies-1431719348; Ellen Rosen, *Asian-American Groups Target Harvard, UNC for Alleged Racial Bias in Admissions*, INSURANCE JOURNAL (May 18, 2015), *available at* https://www.insurancejournal.com/news/national/2015/05/18/368570.htm.

Zurich sold Harvard an Excess Select Insurance Policy, Policy Number IPR 379230803, with the policy period of November 1, 2014 to November 1, 2015 (the "Zurich Policy"). Complaint (Dkt. # 1) at ¶ 29. The Zurich Policy covers defense costs up to an aggregate limit of liability of $15,000,000.  *Id.* at ¶ 30.  The Zurich Policy is a follow form insurance policy excess to the Educational Institution Risk Protected liability insurance policy that AIG sold to Harvard

(the "AIG Policy").  *Id.* at ¶ 31.  The AIG policy has a $25,000,000 aggregate limit of liability, with a $2,500,000 self-insured-retention.  *Id.* at ¶ 33.

AIG covered the defense of the SFFA Action as well as the cost of responding to the DOJ investigation, treating both as a single claim subject to one retention and limit of liability.  *Id.* at ¶¶ 36, 42-43.  The defense costs Harvard has incurred exceed the AIG Policy's aggregate limits and are within the limits of the Zurich Policy.  *Id.* at ¶¶ 37-38.

There is no dispute that AIG was fully aware of the SFFA Action and the SFFA Claim shortly after the suit was filed in November 2014.  Accordingly, AIG had knowledge of the SFFA Claim when it set the rates and premiums for Harvard's insurance going forward, starting with the 2015-16 renewal in November 2015.  Zurich also had actual knowledge of the SFFA Action prior to January 2016, and Harvard should be able to discover what Zurich did with that knowledge when setting the rates and premiums for the excess insurance sold to Harvard

In the spring of 2017, even though the defense costs incurred were still tens of millions of dollars shy of reaching Zurich's excess layer, it appeared possible that the cost of defending the SFFA Action might grow significantly, so Harvard gave formal notice of the suit to Zurich.  *See* Complaint (Dkt. 1) at ¶ 44-45.  In response, Zurich denied coverage of the SFFA Action by letter dated October 25, 2017, based solely on its late notice defense.  *Id.* at ¶ 46. Zurich acknowledged that the SFFA Action would be a covered claim but for the purported late notice, and asserted no defenses to coverage other than for late notice.  *Id.* at ¶ 47.

In response to that denial, Harvard observed that Zurich surely had actual notice of the SFFA Action through media reports and its own underwriting efforts, and Harvard warned Zurich to preserve all evidence of such knowledge.  *See id.* at ¶¶ 39-40, 52-54; Middlebrooks

Dec. at Ex. K (March 10, 2021 Letter).  Zurich refused to withdraw is late notice defense and so Harvard initiated this coverage action on September 17, 2021.

Harvard served Requests for Admission, Requests for Production of Documents, and Interrogatories on Zurich.  Declaration of Ethan W. Middlebrooks ("Middlebrooks Dec.") at ⁋ 3. Following Zurich's service of deficient responses to Harvard's discovery requests, Harvard initiated the meet and confer process pursuant to Federal Rule 37 and Local Rule 37.1.  *Id.* at ⁋ 6.

The discovery Harvard seeks to compel through this motion is fourfold:  (1) identify Zurich personnel with substantive knowledge related to the Harvard account since November 2014, and their direct and indirect supervisors; (2) run a targeted search for, and produce copies of, documents and communications from November 17, 2014 to January 30, 2016 regarding the SFFA Action; (3)  produce copies of Zurich underwriting files for policy years 2014 to 2018; and (4) provide a response to the interrogatory asking Zurich to describe what it did in response to Harvard's March 10, 2021 letter, including whether Zurich instituted a litigation hold as requested in that letter.

Over nearly two months, counsel for Harvard and Zurich met and conferred through correspondence and over the phone regarding the requests for this discovery, which Zurich still has refused to provide.[1]  The details regarding Harvard's efforts to confer with Zurich toward obtaining the requested discovery and narrowing the scope of a motion to compel are set forth in the accompanying Declaration of Ethan W. Middlebrooks.  In short, that process involved the exchange of multiple letters dated June 3, 2022, June 29, 2022, July 7, 2022, July 11, 2022 and July 15, 2022, copies of which are attached to the Middlebrooks Dec. at Exs. C-G.  In addition,

---

[1]The parties narrowed minor discovery issues relating to *after* Harvard gave formal notice of the SFFA Action; Zurich's discovery deficiencies generally concern the period *before*, and relate to Zurich's knowledge of the SFFA Action and setting of premiums with knowledge of that matter.

counsel for the parties held a discovery conference call via Microsoft Teams on June 14, 2022, at 1:00 pm EST, for approximately thirty-five minutes, with Ethan Middlebrooks and Jade Sobh participating for Harvard and Andrew Margulis participating for Zurich.  Middlebrooks Dec. at ¶ 13.

Zurich's discovery responses and the positions it maintained during the meet and confer process, improperly limit Harvard's access to discovery under the Federal Rules.  Relevant to this motion are the following details:

- In its discovery responses and at the June 14 conference, counsel for Zurich stated that, apart from certain emails of Client Relationship Leader Susan Fortin, Zurich generally only would produce documents that had been placed in Zurich's "claim file" regarding the SFFA Claim, which was not created until 2017 and did not exist during the most important time period from November 2014 to January 2016.  Middlebrooks Dec. at ¶ 14 & Ex. A.

- In its July 7 letter, Zurich stated that it would search beyond the claim file it produced, but only for emails of one custodian – client relationship manager Susan Fortin (which have not yet been produced).  Middlebrooks Dec. at Ex. E.

- Also in that July 7 letter, Zurich stated that the Harvard account is a "prominent" one, and many Zurich employees may be aware of details regarding Zurich's work on it, "*including senior officers at the company.*" *Id.* at p. 2 (emphasis added).  Zurich would not identify those individuals.

- Zurich stated in its July 15 letter that performing electronic searches beyond the claim file and the emails of Susan Fortin and, now, adjuster Henry Chun would be too burdensome because "Zurich maintains separate claim files for each claim that is noticed to Zurich." Middlebrooks Dec. at Ex. G, p. 1.  Zurich did not explain how its electronic records are stored, or why it would be burdensome to conduct the search beyond those two witnesses, and it refused Harvard's request to run targeted electronic searches for files maintained *outside* Zurich's "claim file."

- Zurich continually objected to producing its underwriting files (Middlebrooks Decl., ¶ 15, and Ex. A (Response No. 5)), but it did produce a handful of underwriting documents that apparently were included within the "claim file." Middlebrooks Decl., ¶ 15, and Exs. E, & G.

That Zurich was withholding important evidence is apparent from the few documents that Zurich did produce.  For example, a handful of "Deal Memos" summarizing Zurich's annual renewal of Harvard's insurance, created by the Zurich underwriter responsible for evaluating the risk and setting the price for Harvard's insurance, reveal the following:

- The annual Deal Memos include a section entitled "Recent Developments / Articles" that refers to "attached articles and recent press" (Middlebrooks Dec. Ex. H at Z001533, Z001622), yet no articles or press clippings were produced.

- The annual Deal Memos refer to "litigation summaries" (*Id.* at Z001533, Z001622), and the Zurich claims handler working on the SFFA Claim even asked about them (Middlebrooks Dec. Ex. H, at Z001546; *see also Id.* at Z001624 (note of "monitoring" of "notable" litigation)), yet no "litigation summaries" were produced.

- The annual Deal Memos refer to loss runs[2] that were reviewed by the underwriter each year (*Id.* at Z001516, Z001548, Z001575, Z001605, Z001634), yet no loss runs were produced.  Further, an email in the "claim file" also refers to loss runs (*Id.* at Z001546) but those loss runs were not produced either.

- The annual Deal Memos similarly refer to "loss data in eFile" (*Id.* at Z001535, Z001624), but no documents or data from any "eFile" system were produced.

- Moreover, an email produced from the "claim file" provides a link to a shared drive with underwriting materials, showing that all of the Harvard underwriting files over numerous years are accessible in one place (*Id.* at Z001663), yet Zurich has refused to produce its underwriting files. Moreover, an October 1, 2018 email from the Zurich claims handler was produced stating that documents from the 2015 underwriting file are attached, but those attachments were not included in Zurich's production. *Id.* at Z001547.

---

[2] Loss runs are insurance records summarizing the claims made by a given policyholder over the years.  They typically are prepared by the broker or primary insurance company and made available to excess insurance companies even if the referenced claims do not reach the excess insurance layers.  *See, e.g., Lexington Ins. Co. v. Newell Health Care Sys., Inc.*, 10 Mass. L. Rptr. 406, 1999 WL 753487, at *3 n.9 (Mass. Super. Ct. July 6, 1999) (describing loss run report as prepared by primary insurance company and listing claims against policyholder with brief descriptions).

Given the shortcomings and gaps in Zurich's discovery responses and document production, Harvard noticed a Rule 30(b)(6) deposition that called for a Zurich witness to testify about the ways in which electronic documents are stored at Zurich and what Zurich did to search for documents responsive to Harvard's requests.  *Id.* at Ex. I.  Zurich objected to the deposition notice by letter dated August 4, 2022 (*Id.* at Ex. J) and then immediately filed a Motion for Protective Order at 8:00 AM seven days later.  Dkt. # 26-27.

## DISCOVERY REQUESTS AT ISSUE

The full terms of the discovery requests and responses at issue are set forth in the Addendum to this memorandum.  *See also* Middlebrooks Dec. at Exs. A & B.  A summary of those Requests is as follows:

- Interrogatory Nos. 3-4 call for Zurich to identify Zurich officers, representatives and employees involved with underwriting the policies sold to Harvard and its officers, representatives and employees with substantive knowledge of the Harvard account;

- Interrogatory No. 5 asks Zurich to state what it did in response to Harvard's March 10, 2021 letter to Zurich,[3] which letter requested that Zurich institute a litigation hold;

- Document Request Nos. 5 and 7 request the entire underwriting files from 2010 to 2015, expanded through the meet and confer process to 2016;

- Document Request Nos. 6, 15, 17 and 18 request documents and communications concerning the SFFA Action;

- Document Request No. 19 requests files containing or discussing news media regarding the SFFA Action by any Zurich employee involved with the Harvard account.

---

[3] The Interrogatory misstated the date of the letter, which Harvard clarified during the meet and confer process was a typo with the proper date obvious to Zurich, and which Zurich still refused to answer following meet and confers.

# ARGUMENT

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information*, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Federal Rule of Civil Procedure 26(b)(1) (emphases added). Relevance has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("discovery itself is designed to help define and clarify the issues").  To that end, Rule 26 has long permitted liberal discovery of relevant information. *See Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990).  For the reasons discussed below, Harvard is entitled to the discovery sought here.

## A.    The Facts At Issue Are Relevant

Zurich relies on several Supreme Judicial Court decisions to argue that the only thing relevant to a late notice defense under a "claims made" insurance policy is the notice provided by the policyholder, not the actual notice already possessed by the insurance company.  But none of those cases involved allegations or proof that the insurance company had actual notice of the claim.  *See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862 (1990) (involving a dispute between a contractor and subcontractor at a power generation facility where insurer was unaware of any dispute until notified by its policyholder); *Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678 (1997) (involving a personal injury lawsuit against a steel company where the insurance company only found out about a lawsuit two and half years after the policy expired).

Zurich's own cases make clear that the purpose of the notice requirement under "claims made" insurance policies is to ensure that the insurance company knows about claims at the end of the policy period and can set rates accordingly going forward.  *Tenovsky*, 424 Mass. at 680; *Chas T. Main*, 406 Mass. at 865; *New England Env'tl Tech. v. Am. Safety Risk Retention Grp., Inc.*, 738 F. Supp. 2d 249, 256 (D. Mass. 2010).  The notice requirement for "claims made" insurance policies is not a trap used to punish policyholders for technical noncompliance; it is a means to allow insurance companies to appropriately set rates.  Jeffrey P. Griffin, *The Inapplicability of the Notice-Prejudice Rule To Pure Claims-Made Insurance Policies*, 42 CONN. L. REV. 244 (Nov. 2009) (discussing that claims-made policies developed to allow insurance companies to "be able to calculate premium on future policies with increased precision and confidence").

The facts here – which Zurich is trying to hide – will show that Zurich had actual notice of the SFFA Action and what Zurich did with that knowledge when it set the rates for Harvard's insurance going forward.  Under Zurich's own cases, these important facts are relevant and discoverable.

Massachusetts courts have long recognized that notice cannot be dodged by ignoring facts or circumstances already known.  A "party to a transaction, whose rights are liable to be injuriously affected by notice, cannot willfully shut [its] eyes to the means of acquiring knowledge which [it] knows are at hand, and thus escape the consequences which would flow from the notice" if it had been given by other means.  *In re John J. Sullivan, Inc.*, 128 B.R. 7, 12 (D. Mass. 1990) (*quoting Conte v. School Committee of Methuen*, 4 Mass. App. 600, 605 (Mass. App. Ct. 1978) (*citing The Lulu*, 77 U.S. 192, 202 (1869)).  "It is equally well settled that '(n)otice of facts which would incite a person of reasonable prudence to an inquiry under similar

11

circumstances is notice of all the facts which a reasonably diligent inquiry would develop.'" *Com. v. Olivo*, 369 Mass. 62, 69 (1975) (citations omitted).

Zurich cites to three other cases for the proposition that Zurich's actual knowledge of the SFFA Action is irrelevant, but those cases are either distinguishable or actually support Harvard's position here.  *See* Zurich Motion for Protective Order (Dkt. # 27) at pp. 13-14 (citing *Fanara Enterprises Inc. v. Law Offices of Roger Allen Doane*, 1 Mass. L. Rptr. 145 (Mass. Super. 1993); *Flynn v. New England Ins. Co., Inc.*, No. 96–1193D, 1998 WL 150384 at *9 (Mass. Super. 1998); *Northbrook Excess & Surplus Ins. Co. v. Med. Malpractice Joint Underwriting Ass'n*, No. 85-751-Y, 1988 U.S. Dist. LEXIS 17954 (D. Mass. March 9, 1988).

In *Fanara*, the policyholder affirmatively told the insurance company that "no claim will be made" under the claims-made policy at issue so that the loss would not affect the policyholder's premiums, and as a result, the court held that "it would *be patently unfair* to allow an insured to disclaim coverage, thereby securing a favorable premium for the next policy year, and then require the insurer to provide coverage, because the insurer had knowledge . . . of the claim pending against the insured."  1 Mass. L. Rptr. at *4 (emphasis added).  Here, the opposite is true.  Zurich did have notice of the SFFA Action, and had that knowledge when it set the rates and premiums charged to Harvard.  Accordingly, what would be "patently unfair" here would be for Zurich to avoid its contractual obligations where it got exactly what it bargained for under the terms of the contract, and deny Harvard the benefit of its bargain.

In *Flynn*, an unreported decision, the insurance company had learned of an allegation of negligence against the policyholder prior to formal notice being given, and the Court specifically held it was *unreasonable* that the insurance company failed to contact the policyholder to obtain more information. 1998 WL 150384, at *9.  Here, in contrast, Zurich never contacted Harvard to

inquire about the SFFA Action after learning about that suit in the news or from loss runs but before Harvard gave formal notice.  Ultimately, in *Flynn*, it was the policyholder that failed to provide information in response to the insurance company's questions, and by the time the information was provided, the judgment against the policyholder had become final and non-appealable, leading the court to rule that coverage should not be allowed, notwithstanding the insurer's "unreasonable" failure to make inquiries.  1998 WL 150384, at *10-11.  Here, Zurich had notice of the SFFA Action, had that knowledge when it set rates going forward, and received "formal" notice years before the AIG primary policy's limits were exhausted.  *Flynn* does not justify letting Zurich escape its coverage obligations under the facts here – let alone justify Zurich's attempt to hide discovery of the facts relevant to its late notice defense.

It is doubtful that the bench ruling in *Northbrook Excess & Surplus Ins. Co.*, 1988 U.S. Dist. LEXIS 17954 has any precedential value at all, as it was vacated by the First Circuit (873 F.3d 1434 (1st Cir. 1989) (Table)), and subsequently dismissed on remand for lack of subject matter jurisdiction (128 F.R.D. 10 (D. Mass. 1989), *aff'd* 900 F.2d 476 (1st Cir. 1990)).  Even so, the issue in that case was *which* of two insurance companies had to pay a claim, not whether the policyholder would get zero coverage, as Zurich seeks here.  *Northbrook*, 1988 U.S. Dist. LEXIS 17954, at *2.  Moreover, the court held in *Northbrook* that the insurance company defendant had actual notice, even if there were some technical imperfections in how it obtained that notice, and the court required the defendant to cover the claim.  *See id.* at *32-38.  That is exactly what Harvard argues for here. Accordingly, *Northbrook* does not justify Zurich's attempt to escape its coverage obligations or hide discovery of the facts relevant to its late notice defense here.

Allowing Zurich to obscure key evidence about its knowledge about the SFFA Action and the premiums charged with such knowledge would be patently unfair and result in a windfall

to Zurich.  Zurich knew about the SFFA Action, *see* Complaint (Dkt. # 1) at ¶¶ 36-38, and

Harvard is entitled to learn how it charged premiums with knowledge of that claim. Evidence of

these important facts is relevant and discoverable and cannot be kept from Harvard and the Court

as Zurich is trying to do here.

### B.    Zurich's Discovery Responses Are Inadequate

Zurich is refusing to provide discovery as basic as identifying the underwriters of the

policies Zurich sold to Harvard, or searching the emails of Zurich employees involved on

Harvard's account for documents regarding the SFFA Action.  To date, Zurich has produced a

limited set of discovery almost exclusively from its "claim file."  *See* Middlebrooks Dec. at Ex.

G (identifying claim file as "pages Z000015-2075").  That "claim file" was not created until

2017, and, therefore, obviously does not include evidence of Zurich's notice of the SFFA Action

during the critical period from November 2014 until January 30, 2016.

Even the limited claim file Zurich produced (which mainly consists of voluminous

pleadings in the SFFA Action) shows that other files exist that have discoverable, relevant

information that Zurich has failed or refused to produce.  For example:

- The annual Deal Memos include a section entitled "Recent Developments / Articles" that refers to "attached articles and recent press" (Middlebrooks Decl. Ex. H at Z001533, Z001622), yet no articles or press clippings were produced.

- The annual Deal Memos refer to "litigation summaries" (*Id.* at Z001533, Z001622), and the Zurich claims handler working on the SFFA Claim even asked about them (*Id.* at Z001546; *see also id.* at Z001624 (note of "monitoring" of "notable" litigation)), yet no "litigation summaries" were produced.

- The annual Deal Memos refer to loss runs that were reviewed by the underwriter each year (*Id.* at Z001516, Z001548, Z001575, Z001605, Z001634), yet no loss runs were produced.  Further, an email in the claim file also refers to loss runs (*Id.* at Z001546) but those loss runs were not produced either.

14

- The annual Deal Memos similarly refer to "loss data in eFile" (*Id.* at Z001535, Z001624), but no documents or data from any "eFile" system were produced.

- Moreover, an email produced from the "claim file" provides a link to a shared drive with underwriting materials, showing that all of the Harvard underwriting files over numerous years are accessible in one place (*Id.* at Z001663), yet Zurich has refused to produce its underwriting files. Moreover, an October 1, 2018 email from the Zurich claims handler was produced stating that documents from the 2015 underwriting file are attached, but those attachments were not included in Zurich's production. *Id.* at Z001547.

Clearly, Zurich is withholding important evidence.

**C.     Zurich Should Be Compelled To Search for and Produce Relevant Evidence**

Zurich has never disputed the existence of the evidence Harvard seeks--*i.e.*, evidence that Zurich had timely notice of the SFFA Action, and that documents show how it set rates with such knowledge of the SFFA Claim.  In an attempt to withhold these critical facts, Zurich argues that whether it knew of the SFFA Action without formal notice is irrelevant, and that its discovery obligations end with the production of the "claims file" and emails of two employees that worked on the Harvard file (but not the underwriter of the policies Zurich sold to Harvard). Zurich cannot truncate its production in this way.  The Court should compel Zurich to comply with its discovery obligations in four important respects.

First, Zurich should be compelled to respond to Interrogatory Nos. 3 and 4 and identify all individuals who worked on the Harvard account at Zurich and their direct and indirect supervisors for the time period from November 14, 2014 to January 30, 2016.  Zurich has refused to name even the underwriter that sold Harvard insurance in 2014 to 2016 – certainly an important witness.  Providing the identity of such individuals is basic discovery that should have been produced months ago.

Second, the Court should compel Zurich to produce emails regarding the SFFA Action

from those witnesses in response to Document Request Nos. 6, 15 and 17-19.  Counsel for

Zurich has argued that it is overly burdensome to search for such information but to date it has

not offered any evidence to support this position.  Now, it has become apparent from Zurich's

motion for protective order that its burden is self-created, by choosing to retain a vendor to

manually review four years of a witnesses' emails.  Zurich Brief (Dkt. # 27), at p. 10.  Rather

than asking Zurich to undertake such an inefficient and burdensome process, Harvard would be

satisfied for Zurich to run the following targeted search of the emails of all individuals at Zurich

who worked on Harvard's account, including their direct and indirect supervisors, for the time

period from November 14, 2014 to January 30, 2016:

- "students for fair admissions" or SFFA

- Harvard /25 (Asian or discriminat!)

Accordingly, Harvard requests the Court compel Zurich to run such searches and produce the

non-privileged documents identified.[4]

Third, Zurich should be compelled to produce all of its underwriting files for Harvard's

policies for the 2014 to2018 time period, in accordance with Request Nos. 5 and 7.  That

information is relevant because the limited underwriting materials contained in the produced

claim file indicates the underwriters referred to press releases when underwriting policies.  In

addition, Zurich's limited production indicates that loss runs and loss data were available to

employees and included in underwriting files and likely would have referenced the SFFA Action

during the relevant timeframe.  Underwriting materials also concern the setting of the premiums

---

[4] To the extent that the documents identified from this targeted search reveal additional search
terms that would be useful in locating additional responsive documents through similarly
targeted and non-burdensome searches, then Harvard reserves its right to request that such
additional searches be performed.

for the policies Zurich sold to Harvard after the SFFA Action arose, a matter highly relevant here, as noted in the Massachusetts cases on which Zurich itself relies.  Zurich cannot claim that it is burdensome to produce these materials, as its own documents already produced show that the underwriting files are all available in one place via a shared drive folder.  Middlebrooks Dec. Ex. H, at Z001663.  Accordingly, the Court should compel Zurich to produce its underwriting files.

Fourth, Zurich should be compelled to respond to Interrogatory No. 5 and summarize what it did in response to Harvard's March 10, 2021 letter which, *inter alia*, instructed Zurich to put a litigation hold in place.  *See* Middlebrooks Aff. Ex. K.

### D.      Zurich's Motion for Protective Order is a Red Herring

Zurich's labeling of Harvard's Deposition Notice as improper "discovery on discovery" is another attempt to hide relevant information.  "Discovery on discovery" is appropriate where a party's discovery production has been insufficient or deficient.  *See Haroun v. ThoughtWorks, Inc.*, No. 20-cv-100, 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020); *Anstead v. Virginia Mason Med. Ctr.*, No. 2:21-cv-00447, 2022 WL 1641425, at *5 (W.D. Wash. May 24, 2022) (court found "discovery on discovery" not prohibited where "there is some indication that a party's discovery has been insufficient or deficient," and allowed plaintiff to depose defendants on "scope, nature, and methods of search" they conducted).  It should be permitted where "the case would benefit by some guidance from [the withholding party] as to its efforts to fully respond to the discovery requests."  *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-605, 2017 WL 1325344, at *8 (D. Colo. Jan. 3, 2017); *see also Winfield v. City of New York*, No. 15-cv-05236, 2018 WL 840085, at *6 (S.D.N.Y. Feb. 12, 2018) (Court allowed a deposition on "discovery on discovery" where dispute existed as to whether depositions may be taken regarding searching of data files); *Ruiz-Bueno v. Scott*, No. 2:12–cv–0809, 2013 WL 6055402, at *1 (S.D. Ohio Nov.

15, 2013) (Court compelled production of documents characterized as "discovery on discovery" based on scope of discovery including "the existence, description, nature, custody, condition, and location of documents or other tangible things and the identity and location of persons who know of any discoverable matter").

Courts also have held that "discovery on discovery" is appropriate where, like here, the requesting party has reason to believe that documents were being withheld.  *E.g.*, *Martley v. City of Basehor, Kansas*, No. 19-cv-2138, 2021 WL 4134307, at *3 (D. Kan. Sept. 10, 2021) (where there had been continuing questions about documents withheld from discovery the Court found appropriate full discovery, "even if characterized as discovery on discovery").

Unlike the cases relied on by Zurich, Harvard has shown that Zurich is improperly withholding discovery here and has not searched for or produced key evidence that is readily available.  *See supra* at pp. 8, 14-15; Middlebrooks Decl. Ex. H at Z001516, Z001533, Z001535, Z001546-48, Z001575, Z001605, Z001622, Z001624, Z001634, Z001663 (showing the availability of loss runs, press releases, litigation summaries, other loss data, and underwriting files).  Accordingly, there are no grounds for the protective order Zurich seeks via its motion.

Although an order compelling Zurich to produce a 30(b)(6) witness is justified under the facts here, such witness testimony ought not to become the tail wagging the dog.  It is not essential at this point to obtain testimony confirming that Zurich has not reasonably searched for responsive evidence here.  That is obvious already.  Zurich's pursuit of a protective order is merely contextual proof of how far it is willing to go to hide the facts.

What is most important here is that Zurich be compelled to produce the discovery sought in this Motion To Compel.  Accordingly, Harvard does not at this time request an order compelling Zurich to produce a witness in response to the 30(b)(6) deposition notice.  Rather,

Harvard reserves its right to proceed with the noticed deposition if Zurich continues to improperly withhold documents.

## **CONCLUSION**

For all of the foregoing reasons, Harvard respectfully requests that the Court grant Harvard's Motion to Compel and deny Zurich's motion for protective order.

Dated:  August 23, 2022

By:   /s/ Marshall Gilinsky

Marshall Gilinsky, Esq. (BBO # 569181)
Ethan W. Middlebrooks, Esq. (*Pro Hac Vice*)
Jade W. Sobh, Esq. (*Pro Hac Vice*)
**ANDERSON KILL P.C.**
1251 Avenues of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
E-mail: mgilinsky@andersonkill.com
E-mail: emiddlebrooks@anersonkill.com
E-mail: jsobh@andersonkill.com

*Attorneys for Plaintiff President and Fellows of Harvard College*

## ADDENDUM[5]

### Interrogatory Requests and Responses

**INTERROGATORY NO. 3:**

Identify all of your officers, representatives and employees involved with the underwriting, marketing or sale of excess Directors & Officers insurance to Harvard from 2010 to present. For each such person, State the Basis of the area of their knowledge and their involvement in the handling, evaluation, or determination of the SFFA Claim.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the foregoing General Objections, Zurich objects to this Interrogatory to the extent it is overly broad, beyond the scope of permissible discovery, seeks information without proper limit to its subject matter, or is otherwise not proportional to the needs of the case.

Subject to and without waiving the foregoing General and Specific Objections, Zurich states that no employees involved with the underwriting, marketing or sale of excess Directors & Officers insurance to Harvard from 2010 to present were involved in the handling, evaluation, or determination of the SFFA Claim.

**INTERROGATORY NO. 4:**

Identify all of Your officers, representatives and employees with knowledge of or involvement in any way with Zurich's account with Harvard from 2010 to present. For each such person, State the Basis of the area of their knowledge and their involvement in the handling, evaluation, or determination of the SFFA Claim.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the foregoing General Objections, Zurich objects to this Interrogatory to the extent it is overly broad, vague, ambiguous, beyond the scope of permissible discovery, seeks information without proper limit to its subject matter, or is otherwise not proportional to the needs of the case.

Subject to and without waiving the foregoing General and Specific Objections, Zurich states as follows: see responses to Interrogatories 2 and 3.

**INTERROGATORY NO. 5:**

State the Basis for everything You did and Identify everyone You talked to, inside and outside Zurich, in response to the March 21, 2021 Letter.

---

[5]   The entirety of Zurich's responses to Harvard's Interrogatory and Document Requests are available at Exhibits A and B of the Middlebrooks Declaration.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the foregoing General Objections, Zurich further objects to this Interrogatory because it utilizes undefined terms, such as the "March 21, 2021 Letter," that create confusion as to the specific answer sought. Zurich further objects to this Interrogatory because it is overly broad insofar as it requests that Zurich list every action it has taken, and everyone Zurich had talked to inside and outside Zurich, in response to the "March 21, 2021 Letter." Zurich further objects to this Interrogatory on the grounds that it seeks information subject to the attorney-client and/or work product privileges, and seeks information not relevant to the subject matter of this litigation.

Subject to and without waiving the foregoing General and Specific Objections, pursuant to Rule 33(d), Zurich refers to its claim file which will be produced in response to Plaintiff's Request for Production in response to this Interrogatory.

## Document Requests and Responses

**REQUEST NO. 5:**

The entire Underwriting File for each year from 2010 to 2015.

**RESPONSE TO REQUEST NO. 5:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference as if more fully set forth at length herein, Zurich objects to this Request for the following reasons: the Request is unduly vague, overbroad, unduly burdensome, indefinite, and lacking in reasonable particularity, particularly its use of the word "entire" and the term "Underwriting File," which are vague, overbroad, lack specificity, and seek to impose obligations on Zurich to seek discovery that is neither relevant nor proportional to the needs of this case. Zurich also objects to this Request insofar as it seeks information that is both confidential and proprietary in nature. In addition, Zurich objects to this Request insofar as it seeks information that is exempt from discovery and protected from disclosure by, without limitation, the attorney-client privilege, the work-product doctrine, the Federal Rules of Civil Procedure, and relevant case law. Based on the foregoing objections, Zurich will not produce documents in response to this Request.

**REQUEST NO. 6:**

All Communications between You and any insurance broker, agent, intermediary, consultant, or representative, concerning the SFFA Action, including but not limited to internal discussions regarding the SFFA Action or discussions with AIG or any reinsurer regarding the SFFA Action or the SFFA Claim.

**RESPONSE TO REQUEST NO. 6:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference as if more fully set forth at length herein, Zurich objects to this Request for the following reasons: this Request is unduly vague, overbroad, over-burdensome, indefinite, and

lacking in reasonable particularity, especially as to the individual and collective phrases "All Communications," and "between You and any insurance broker, agent, intermediary, consultant, or representative." Zurich also objects to the use of "You" and "AIG" in the Request as the meaning assigned by Plaintiff to the defined terms are vague, overbroad, lacks specificity, and seeks to impose obligations on Zurich to seek discovery from persons and/or entities over whom Zurich has neither knowledge nor control. Likewise, the lack of timeframe for the Request adds to the previously noted undue vagueness, over-breadth, over-burdensomeness, indefiniteness, and lack of reasonable particularity. Zurich further objects to the Request insofar as the discovery sought is unreasonably cumulative or duplicative, and can be obtained from some other source that is more convenient, less burdensome, or less expensive. Zurich also objects to this Request insofar as it calls for documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, Zurich objects to this Request insofar as it calls for the production of documents covered by any applicable privilege, including, but not limited to, attorney-client communications, or attorney work product. Zurich objects to the Request insofar as it calls for the production of documents already in Plaintiff's possession.

Based on the foregoing, Zurich objects to a wholesale production of documents responsive to the Request, given the unduly vague, overbroad, over-burdensome, and indefinite nature of the Request. Subject to and without waiving the foregoing general or specific objections, Zurich states that all responsive documents would be contained within the claim file maintained by Zurich, and Zurich will produce non-privileged documents contained in the claim file as defined and maintained by Zurich in the regular course of its business.

**REQUEST NO. 7:**

All Documents and Communications concerning the underwriting, marketing, or sale of excess Directors & Officers insurance by Zurich to Harvard from 2010 through present.

**RESPONSE TO REQUEST NO. 7:**

See response to Interrogatory 5.

**REQUEST NO. 15:**

To the extent not included in Your responses to any other Requests, any other Documents and Communications concerning the SFFA Action.

**RESPONSE TO REQUEST NO. 15:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference as if more fully set forth at length herein, Zurich objects to this Request for the following reasons: the Request is unduly vague, overbroad, unduly burdensome, indefinite, and lacking in reasonable particularity, particularly its use of the phrase "any other Documents and Communications," which is vague, overbroad, lack specificity, and seek to impose obligations on

Zurich to seek discovery that is neither relevant nor proportional to the needs of this case. Zurich also objects to this Request insofar as it seeks information that is both confidential and proprietary in nature. In addition, Zurich objects to this Request insofar as it seeks information

that is exempt from discovery and protected from disclosure by, without limitation, the attorney client privilege, the work-product doctrine, the Federal Rules of Civil Procedure, and relevant case law.

Subject to and without waiving the foregoing general or specific objections, Zurich states that all responsive documents would be contained within the claim file maintained by Zurich, and Zurich will produce non-privileged documents contained in the claim file as defined and maintained by Zurich in the regular course of its business.

**REQUEST NO. 17:**

Any Documents and Communications sent or received from anyone working in Zurich's Client Relationship Department or Customer Relationship Management Department regarding the SFFA Action, the SFFA Claim, or the Zurich Policy.

**RESPONSE TO REQUEST NO. 17:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference as if more fully set forth at length herein, Zurich objects to this Request for the following reasons: the Request is unduly vague, overbroad, unduly burdensome, indefinite, and lacking in reasonable particularity, particularly its use of the phrase "Any Documents and Communications" and "anyone" which are vague, overbroad, lack specificity, and seek to impose obligations on Zurich to seek discovery that is neither relevant nor proportional to the needs of this case. Zurich also objects to this Request insofar as it seeks information that is both confidential and proprietary in nature. In addition, Zurich objects to this Request insofar as it seeks information that is exempt from discovery and protected from disclosure by, without limitation, the attorney-client privilege, the work-product doctrine, the Federal Rules of Civil Procedure, and relevant case law.

Subject to and without waiving the foregoing general or specific objections, Zurich will produce non-privileged documents to the extent they are contained in the claim file as defined and maintained by Zurich in the regular course of its business.

**REQUEST NO. 18:**

All Documents and Communications from 2014, 2015, and 2016 making any mention of, acknowledging, or otherwise concerning the SFFA Action.

**RESPONSE TO REQUEST NO. 18:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference as if more fully set forth at length herein, Zurich objects to this Request for the following reasons: the Request is unduly vague, overbroad, unduly burdensome, indefinite, and lacking in reasonable particularity, particularly its use of the phrase "All Documents and Communications" and "making any mention of, acknowledging, or otherwise" which are vague, overbroad, lack specificity, and seek to impose obligations on Zurich to seek discovery that is neither relevant nor proportional to the needs of this case. Zurich also objects to this Request insofar as it seeks information that is both confidential and proprietary in nature. In addition,

A-4

Zurich objects to this Request insofar as it seeks information that is exempt from discovery and protected from disclosure by, without limitation, the attorney-client privilege, the work-product doctrine, the Federal Rules of Civil Procedure, and relevant case law.

Subject to and without waiving the foregoing general or specific objections, Zurich states that all responsive documents would be contained within the claim file maintained by Zurich, and Zurich will produce non-privileged documents contained in the claim file as defined and maintained by Zurich in the regular course of its business.

**REQUEST NO. 19:**

All Documents and Communications received via newsletters or newspapers, in paper form or via email, by any Zurich employee involved with the account for Harvard or the Zurich Policy containing information regarding the SFFA Action.

**RESPONSE TO REQUEST NO. 19:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference as if more fully set forth at length herein, Zurich objects to this Request for the following reasons: the Request is unduly vague, overbroad, unduly burdensome, indefinite, and lacking in reasonable particularity, particularly its use of the phrase "All Documents and Communications received" and "via newsletters or newspapers, in paper form or via email, by any Zurich employee" which are vague, overbroad, lack specificity, and seek to impose obligations on Zurich to seek discovery that is neither relevant nor proportional to the needs of this case. Zurich also objects to this Request insofar as it seeks information that is both confidential and proprietary in nature. In addition, Zurich objects to this Request insofar as it seeks information that is exempt from discovery and protected from disclosure by, without limitation, the attorney-client privilege, the work-product doctrine, the Federal Rules of Civil Procedure, and relevant case law.

Based on the foregoing objections, Zurich will not produce documents in response to this Request.