# EXHIBIT E



750 Third Avenue
25th Floor
New York, NY  10017

Andrew L. Margulis
d  646.454.3242
andrew.margulis@ropers.com

o  212.668.5927
f  212.668.5929
ropers.com

July 7, 2022

<u>VIA E-MAIL ONLY</u>

Ethan W. Middlebrooks, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY 10020
emiddlebrooks@andersonkill.com

Re:     President & Fellows of Harvard College v. Zurich American Ins. Co.
        21-cv-11530-ADB

Dear Ethan:

We write in response to your June 29, 2022 letter.

Before turning to the specific requests and interrogatories discussed in your letter, we take this opportunity to correct a misstatement in the introductory sections of your letter. Your letter attributes to me a statement purportedly made during our call of June 14, 2022 that "Zurich will not be searching beyond the claim file for responsive emails that might be outside the claim file." I never made such statement. To the contrary, I specifically advised you that we would discuss with Zurich your request for emails to or from Susan Fortin relating to the claim in issue. I advised you that such emails may not be in the claim file since Ms. Fortin is not part of the claim department and was not directly involved in the handling of the claim so would not be in a position to put anything, including her emails, in the claim file. I advised that Zurich was looking into what would be involved from a technical aspect to conduct a search for any of Ms. Fortin's emails that would be responsive to the specific request set forth in your June 3, 2022 letter, and we would advise when we had more information regarding that process. Moreover, you stated your disagreement that limiting Zurich's search for responsive documents to the claim file was appropriate. Again, not only did I not advise you that Zurich's search would be limited to the claim file, but the documents already produced by Zurich include documents that were not part of the claim file but were specifically obtained through targeted e-discovery searches through its electronic files.

As to the specific Requests and Responses:

As to Interrogatory No. 1, as I advised during our call, the only person consulted in connection with the responses to interrogatories was in-house counsel for Zurich. That person was acting in his capacity as an attorney and was in no way involved in the underlying claim at issue. Any such communications with such counsel are clearly privileged and that person would



not have any discoverable information. As such, disclosure of that person's identity is unnecessary.

As to  Interrogatory No. 2, not only are such individuals identified in Zurich's initial disclosures, but the information may be determined by examining Zurich's business records, which have already been produced. This is sufficient pursuant to Fed.R.Civ.P. 33(d), and Zurich refers you to its recent production for the responsive information.

As to Document Request 20, as I advised during our call, any documents reviewed in connection with responding to the interrogatories are included in Zurich's initial production recently made. As I also advised, it is improper to request that we specifically identify the documents relied on in drafting the responses as such information is protected by the work product privilege, and we will not identify the specific documents contained in that production on which we relied.

As to Interrogatory No. 3, persons involved in the underwriting, sale or marketing of D&O insurance to Harvard starting in 2010 is exceedingly broad and does not seek information that is relevant or proportional to the needs of the case. This action involves coverage for a claim that was initiated against Harvard in approximately 2014 and noticed to Zurich in 2017. The underwriting of policies dating back to 2010 has no relevance whatsoever, and searching through underwriting documents dating back more than 12 years presents an undue burden on Zurich when that information has no bearing on the issues in this case. Nevertheless, to the extent that any underwriting information is in any way relevant to the claim at issue, Zurich has already produced certain underwriting information as part of its initial production, and those documents identify the persons involved in underwriting the policies for the relevant time frame and satisfy Zurich's obligations pursuant to Rule 33(d).

As to Interrogatory No. 4, the request that Zurich identify all individuals with "knowledge of or involvement in Zurich's account with Harvard from 2010 to present" is fatally overbroad and again seeks information not relevant or proportional to the needs of the case. Indeed, the Harvard account is a potentially prominent account at Zurich about which hundreds of employees might be aware, including senior officers of the company. It is clearly burdensome for Zurich to try to determine which of its thousands of employees have knowledge of that account and such information has absolutely no bearing on the issue in this case, which is simply whether Harvard gave timely notice of the SFFA Claim to Zurich. Any individual with knowledge relevant to that underlying claim is identified in the documents already produced by Zurich and Zurich has thus satisfied its obligations under Rule 33(d).

As to Interrogatory Nos. 5 and 7, Harvard asked that Zurich "State the Basis" for "everything You did" in response to two letters sent by Harvard. As we discussed during our call, these interrogatories are fatally overbroad. Asking Zurich to state "everything it did" would



require it to respond by saying things such as Zurich received the letter, Zurich read the letter, and so on. As Harvard is well aware, Zurich responded to the letter by sending a letter of its own. Moreover, what Zurich did in response to the letters is made clear by the documents already produced by Zurich and Zurich refers Harvard to those documents pursuant to Rule 33(d). Finally, Harvard's reference in its definition of "State the Basis" to Local Rule 26.5(c)(8) makes clear that Harvard's use of this phrase is improper in these interrogatories. That rule provides that an interrogatory may ask a party to "'state the basis' of or for a particular **claim, assertion, allegation, or contention**," not for "everything it did". These interrogatories are thus clearly impermissibly overbroad.

As to Interrogatories 6 and 8, Zurich stated objections in its responses but nevertheless responded to the interrogatories subject to those objections. No information was withheld as was discussed during our call and there is nothing to supplement. Zurich also refers Harvard to the documents produced by Zurich pursuant to Rule 33(d).

As to Interrogatory No. 9, as we stated during our call Zurich believes such information is irrelevant to the issues in dispute. Contrary to the description of our call set forth in your letter, I did not advise that the documents that would be produced "might" show the date on which a reserve was set, but I advised definitively that the documents "would" show such date. Now that Zurich has produced the documents, it is clear that such documents do indicate these dates, and Zurich refers Harvard to those documents pursuant to Rule 33(d).

Document Request No. 2. Harvard requested production of Zurich's entire "Claim File." Harvard defined the term "Claim File" in its requests as "the collection of materials or other Documents assembled, examined, or referred to by You in the handling or adjustment of the SFFA Claim, including but not limited to any electronic logs of updates, news, or activity concerning the SFFA Claim." While Zurich stated various objections to the request, including to the extent that Harvard's definition was overly broad, Zurich nevertheless agreed to produce its entire claim file and has now produced its claim file. Your letter discusses things that might or might not have made it into the claim file and whether Zurich searched beyond the claim file, again regardless of how that is defined. If something did not make it into the claim file, then it is not part of that file and is not responsive. Nevertheless, using Harvard's own definition, Zurich has produced its entire collection of documents assembled in connection with Zurich's handling of the SFFA Claim.

Document Request No. 3. The request seeks all documents and communications concerning Zurich's decision to deny insurance coverage. All non-privileged, responsive documents have been produced. As discussed above and as mentioned during our call, Zurich is looking into any emails with Ms. Fortin and whether any such emails exist, but since Ms. Fortin is not part of the claims department and was not involved in any way in handling the claim, those



emails would not be in connection with Zurich's denial of coverage, but again such search is being conducted.

Document Request No. 4. As mentioned during our call, Zurich does not maintain any "claim manuals," regardless of any title or name, that includes any substantive information about any coverage defenses or how to interpret and apply any provisions in its policies. Nevertheless, while it does not include any substantive information regarding claim decisions, attached is the only document potentially responsive to the request, Bates stamped Z 002209-34.[1]

Document Request Nos. 5 and 7. As stated in Zurich's responses and during our call, underwriting information and marketing information has no bearing on the sole issue in this case—whether Harvard provided proper notice to Zurich of the SFFA Claim. Even if any underwriting materials were relevant, such information dating back to 2010 in connection with a claim made against Harvard in 2014 and reported to Zurich in 2017 would have no bearing on the issues and would be burdensome for Zurich to locate, review and produce and would not be proportional to the needs of the case. In any event, and as discussed above, various underwriting materials from the relevant time period, even if such documents have no relevance, have been produced as part of Zurich's initial production.

Document Request No. 6. This request seeks production of communications between Zurich and "any insurance broker, agent, intermediary, consultant, or representative," and then states "including but not limited to internal discussions regarding the SFFA Action or discussions with AIG or any reinsurer" regarding the SFFA matter. Any communications with AIG or any reinsurer would not be within the scope of "any insurance broker, agent, intermediary, consultant, or representative" and it is not clear how such information would be responsive. Nevertheless, any communications with brokers are included in the documents already produced. The only possible exception is any emails between Ms. Fortin and any broker concerning the SFFA matter and as already noted, Zurich is looking into conducting a search for such emails. Zurich is not aware of any communication with AIG or any reinsurers concerning the SFFA matter.

Document Request No. 8. This request seeks all documents regarding claims made under policies issued by Zurich to Harvard from 2010 through the present having nothing to do with the SFFA Claim. As an initial matter, to correct certain misstatements in your letter, I did not advise during our call that Zurich "switched servers." I merely advised that the computer system/software that Zurich used for certain functions, most notably its email, had changed, and

---

[1] This document is marked "CONFIDENTIAL" pursuant to the protective order agreed to by the parties. While that order has not yet been entered by the Court, we are producing this document on the condition that Plaintiff agree to treat the document as CONFIDENTIAL pursuant to the protective order pending entry of that order. If Plaintiff is not willing to do so, please return that document to us. If you fail to do so, we will take that as Plaintiff's agreement to this condition.



that was relevant as to the process by which Zurich would search for the emails of Ms. Fortin. As to the substance of the request, any other claims submitted by Harvard under policies issued by Zurich have no bearing on the sole issue in this case—whether Harvard properly provided notice of the SFFA matter to Zurich. Moreover, as we discussed, the request to have Zurich review and produce documents in connection with claims submitted by Harvard going back 12 years is clearly burdensome and not proportional to the needs of the case. As I advised during our call, Zurich was in the process of determining the number of claims submitted by Harvard during that time period, and it appears that there were at least 30 claims, in addition to the SFFA matter, submitted by Harvard since 2010. Again, those claims have nothing to do with the issues in this case, other than to demonstrate that Harvard was not only aware of the requirement that it provide notice and was aware of how to give notice of a claim to Zurich. Any request that Zurich review and produce documents related to at least 30 separate, unrelated claims is improper.

Document Request Nos. 9-12, 14-18. Many of these requests are duplicative and seek the same information relating to the handling of the SFFA matter. All such non-privileged documents have been produced. As to communications with Ms. Fortin, again Zurich is looking into a search for responsive emails. As to your comment that Zurich's discovery obligations are not limited to producing the claim file, as previously discussed, Zurich has never made that contention and has not limited its production in that fashion.

Document Request No. 19. As you acknowledged during our June 14 call, the request for "Documents and Communications received via newsletters or newspapers" is unintelligible and poorly written. Nevertheless, it is impossible for Zurich to conduct any search for information concerning the SFFA matter contained in any newspaper or newsletter seen or read by any Zurich employee. Until Harvard provided notice to Zurich in May 2017 of the SFFA matter, no Zurich employee was assigned to handle the claim since no "claim" existed. This request would thus essentially obligate Zurich to search the files of every one of its potentially thousands of employees to see if it could determine what newspapers or newsletters they may have seen dating back to 2014 and whether there were any stories or information concerning the SFFA matter in such news accounts. That is simply not possible. And even if it was possible, it is irrelevant and not proportional to the needs of the case.

Finally, this will also confirm that since Zurich is a paperless environment, there are no paper documents to search and produce.

Very truly yours,

Andrew L. Margulis

4870-6534-6087.2