UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. |

Civil Action No. 21-CV-11530-ADB

**DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF PRESIDENT AND FELLOWS OF
HARVARD COLLEGE'S MOTION TO COMPEL DISCOVERY**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.   PRELIMINARY STATEMENT AND SUMMARY OF OPPOSITION ............................... 1

II.   BACKGROUND RELEVANT TO DISCOVERY DISPUTE ................................................ 2

   A.  Scope of This Action ....................................................................................................... 2

   B.  Discovery Produced by Zurich ....................................................................................... 3

   C.  The Additional Discovery Sought by Harvard ............................................................... 4

III.   ARGUMENT ............................................................................................................................ 4

   A.  Standard for Discovery .................................................................................................... 4

   B.  Harvard Has Not Demonstrated the Relevance of the Discovery it Seeks ........................ 5

   C.  The Specific Discovery Sought by Harvard is Both Irrelevant and Not Proportional to the
      Needs of the Case ............................................................................................................ 8

      1.   Personnel With Substantive Knowledge Related to the Harvard Account Since
         November 2014 ....................................................................................................... 8

      2.   A Targeted Search For, And Produce Copies Of, Documents And Communications
         From November 17, 2014 To January 30, 2016 ..................................................... 9

      3.   Copies of Zurich Underwriting Files for Policy Years 2014-2018 ............................ 12

      4.   Response to Harvard's Interrogatory No. 5, Asking Zurich to Describe What it did in
         Response to Harvard's March 10, 2021 letter ...................................................... 14

IV.   CONCLUSION ....................................................................................................................... 15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aronstein v. Massachusetts Mut. Life Ins. Co.*,
   No. CV 15-12864-MGM, 2017 WL 2818993 (D. Mass. June 29, 2017)..................................5

*Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*,
   406 Mass. 862 (1990) ...................................................................................................................6

*Close v. Account Resolution Services*,
   557 F. Supp. 3d 247 (D. Mass. 2021) .........................................................................................4

*Commonwealth v. Olivo*,
   369 Mass. 62 (1975) .....................................................................................................................7

*Flynn v. New England Ins. Co., Inc.*,
   96–1193D, 1998 WL 150384 (Mass. Super. 1998).......................................................................6

*Gargano v. Liberty Int'l Underwriters, Inc.*,
   572 F.3d 45 (1st Cir. 2009)...........................................................................................................6

*In re John J. Sullivan, Inc.*,
   128 B.R. 7 (D. Mass. 1990) ..........................................................................................................7

*National Union Fire Ins. Co. v. Talcott*,
   931 F.2d 166 (1st Cir. 1991).........................................................................................................6

*Northbrook Excess & Surplus Ins. Co. v. Medical Malpractice Joint Underwriting Ass'n*,
   1988 U.S. Dist. LEXIS 17954 (D. Mass. March 9, 1988).........................................................7

*Tenovsky v. Alliance Syndicate, Inc.*,
   424 Mass. 678 (1997) ...................................................................................................................6

OTHER AUTHORITIES

Fed.R.Civ.P. 26(b)(1)......................................................................................................................4

Defendant Zurich American Insurance Company ("Zurich") respectfully submits this Opposition to Plaintiff President and Fellows of Harvard College's ("Harvard") Motion to Compel Discovery (Dkt. 31-33). Zurich's Opposition is based upon this Memorandum of Law, the records and pleadings on file in this matter, and any subsequent pleading or oral argument which may be allowed by the Court in connection with this Motion.

## I.   PRELIMINARY STATEMENT AND SUMMARY OF OPPOSITION

This insurance coverage action presents a single legal issue based on facts that are not in dispute. Harvard seeks coverage for an underlying lawsuit under a claims-made and reported insurance policy issued by Zurich (the "Zurich Policy"). The Zurich Policy required Harvard to report all claims made during the policy period no later than ninety (90) days after the policy expired. The underlying suit at issue in this matter (the SFFA Action) was filed in November 2014, the Zurich Policy expired on November 1, 2015, and Harvard, by its own admission, first gave notice to Zurich of the SFFA Action on May 23, 2017. Again, none of those facts are in dispute, and, with these facts, the Court can dispose of this litigation as a matter of law for the reasons set forth in Zurich's pending Motion for Summary Judgment (Dkt. 28-30).

Despite the simplicity of the issue and well-settled Massachusetts law that reporting requirements in claims-made and reported insurance policies must be strictly complied with, Harvard, in a blatant fishing expedition, seeks extensive discovery concerning matters that have no bearing on the sole legal issue presented. Specifically, Harvard alleges that some unnamed employee(s) at Zurich must have had knowledge of the SFFA Action before Harvard reported it to Zurich because the lawsuit was widely reported in the news media. Harvard contends that these independent news reports about the SFFA Action and Zurich employees' purported knowledge of these reports relieved Harvard of its obligation to provide the required notice to Zurich. Harvard thus seeks broad discovery from Zurich concerning information as to whether

1

anyone at Zurich read such news reports and thus knew of the SFFA Action, excusing Harvard from its admitted failure to comply with its reporting obligations. Harvard also seeks discovery concerning the underwriting of numerous policies issued by Zurich to Harvard, purportedly on the theory that if Zurich took the unreported SFFA Action into consideration in setting premiums for those policies, then that would establish that Zurich was aware of the lawsuit, again excusing Harvard from its admitted failure to comply with its reporting obligations.

Massachusetts law is clear, as the Massachusetts Supreme Judicial Court, First Circuit and this Court have all held, that any such knowledge by Zurich is entirely irrelevant to Harvard's claim for coverage. In order to trigger coverage under the Zurich Policy, which is a claims-made and reported policy, Harvard was required to report the SFFA Action to Zurich and specifically request coverage for that lawsuit no later than ninety (90) days after the policy expired, or by January 30, 2016. Since Harvard first gave notice to Zurich of the SFFA Action on May 23, 2017, no coverage is available, even if Zurich was aware of the lawsuit from the purported media reports.[1] The extensive and intrusive discovery sought by Harvard has no bearing on the sole legal issue—Harvard's admitted failure to timely report the underlying SFFA Action to Zurich. For this reason, the discovery is neither relevant nor proportional to the needs of the case, so Harvard's motion to compel should be denied in its entirety.

## II.     BACKGROUND RELEVANT TO DISCOVERY DISPUTE

### A.     Scope of This Action

Harvard was sued in an underlying lawsuit in this Court entitled *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), et al.*, Case No. 1:14-cv-14176 (the "SFFA Action"), filed on November 17, 2014. (Dkt. 1 ¶ 2.) When

---

[1] This issue is already the subject of Zurich's pending motion for summary judgment (Dkt. 28-30.)

the SFFA Action was filed, Harvard held a claims-made-and-reported insurance policy issued by Zurich for the policy period November 1, 2014 to November 1, 2015 (the "Zurich Policy"). (Dkt. 1 ¶ 9; Dkt. 1-1 at page 8 of 15.)

The Zurich Policy required Harvard, as a condition precedent to coverage, to give notice to Zurich of any claim made during the policy period no later than ninety (90) days after the expiration of the Zurich Policy. (Dkt. 1-2 at p. 68 of 149; Dkt. 1-1 at p. 8, 10 of 15.) Harvard was thus required to provide notice to Zurich of the SFFA Action no later than January 30, 2016.

Harvard first provided notice to Zurich of the SFFA Action on May 23, 2017. (Dkt. 1 at ¶ 44; Dkt. 28-4; Dkt. 28-5; Dkt. 28-7, Response to Interrogatory No. 4 at p. 6.) By letter dated October 25, 2017, Zurich advised Harvard that no coverage was available under the Zurich Policy for the SFFA Action as a result of Harvard's failure to comply with the reporting requirements of the Zurich Policy. (Dkt. 1 at ¶ 46; Dkt. 28-6.)

### B.    Discovery Produced by Zurich

In response to Harvard's extensive discovery requests, Zurich has already produced the entire non-privileged contents of its claim file relating to the SFFA Action, consisting of more than 2,100 pages. (Declaration of Andrew L. Margulis dated September 16, 2022 (the "Margulis Dec.") ¶ 4.) Zurich also provided Harvard with its Rule 26 Initial Disclosures. (Margulis Dec. ¶ 3 and Ex. A.)

Further, Zurich searched the email files of two Zurich employees for potentially responsive documents—Henry Chun, who was primarily responsible for Zurich's handling of Harvard's claim as respects the SFFA Action; and Susan Fortin, the Global Relationship Leader for Zurich with respect to Harvard (as specifically identified and requested by Harvard—Dkt. 33-1 at 17 of 25; Dkt. 33-3 at 8 of 9). These emails were for the period from May 2017 (the date of Harvard's notice to Zurich of the SFFA Action) through March 2021. (Margulis Dec. ¶ 6.) These

documents have now also been produced and consist of more than 2,500 pages. (Margulis Dec. ¶¶ 7-8.)

### C.   The Additional Discovery Sought by Harvard

In its motion to compel, Harvard seeks to require Zurich to:

> (1)   identify Zurich personnel with substantive knowledge related to the Harvard account since November 2014, and their direct and indirect supervisors in accordance with Harvard's Interrogatory Nos. 3 and 4;

> (2)   run a targeted search for, and produce copies of, documents and communications from November 17, 2014 to January 30, 2016 regarding Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), No. 1:14-cv-14176-ADB (the "SFFA Action") in accordance with Harvard's Document Request Nos. 6, 15, 17, 18 and 19;

> (3)   produce copies of Zurich underwriting files for policy years 2014-2018 in accordance with Harvard's Document Request Nos. 5 and 7; and

> (4)   provide a response to Harvard's Interrogatory No. 5, asking Zurich to describe what it did in response to Harvard's March 10, 2021 letter, including whether Zurich instituted a litigation hold as requested in that letter.

## III.   ARGUMENT

### A.   Standard for Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and *whether the burden or expense of the proposed discovery outweighs its likely benefit*." Fed.R.Civ.P. 26(b)(1) (emphasis added); *see Close v. Account Resolution Services*, 557 F. Supp. 3d 247, 250 (D. Mass. 2021).

"The party seeking discovery over the opposing party's objection has the initial burden of demonstrating the relevance of the requested information." *Aronstein v. Massachusetts Mut. Life Ins. Co.*, No. CV 15-12864-MGM, 2017 WL 2818993 at *2 (D. Mass. June 29, 2017).

Because Harvard cannot show either that the discovery it seeks is relevant or proportional to the needs of the case, Harvard's motion to compel must be denied.

### B.    Harvard Has Not Demonstrated the Relevance of the Discovery it Seeks

All of the discovery sought by Harvard in its motion to compel relates to whether Zurich was aware of the SFFA Action through news reports or sources other than the actual reporting of the case to Zurich. Indeed, Harvard admits in its motion that none of the information relates to when Harvard actually reported the SFFA Action to Zurich, which occurred on May 23, 2017 and is not in dispute in this case. Instead, Harvard posits that the discovery it seeks will show: (1) that Zurich knew about the SFFA Action between November 2014 and January 2016; and (2) what Zurich did with that purported knowledge when it set the rates and premiums for Harvard's insurance thereafter.

Again, all of this information relates to the period before May 23, 2017, the date on which Harvard reported the SFFA Action to Zurich under the Zurich Policy. Under clear Massachusetts law, such information is in no way relevant to whether Harvard is entitled to coverage for the SFFA Action.

The Zurich Policy, which is a claims-made-and-reported policy, unambiguously requires, as a condition precedent to coverage, that Harvard report a claim made during the policy period to Zurich no later than ninety (90) days after the policy expires. Harvard admittedly failed to comply, as it reported the SFFA Action to Zurich on May 23, 2017, more than eighteen (18) months after the Zurich Policy expired. (Dkt. 1 at ¶ 44; Dkt. 28-4; Dkt. 28-5; Dkt. 28-7, Response to Interrogatory No. 4 at p. 6.)

As is already the subject of Zurich's pending motion for summary judgment (Dkt. 28-30), Massachusetts law is clear that such reporting requirements in claims-made-and-reported policies are enforceable and must be strictly complied with, and the insurer is not required to demonstrate that it was prejudiced by the insured's failure to comply. *See, e.g.*, *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 49 (1st Cir. 2009); *National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168 (1st Cir. 1991); *Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678, 681 (1997); *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 864–65 (1990); *Catlin Specialty Ins. Co. v. American Superconductor Corp.*, 32 Mass.L.Rptr. 93 (Mass. Super. 2014); *Flynn v. New England Ins. Co., Inc.*, 96–1193D, 1998 WL 150384 at *9 (Mass. Super. 1998) ("In the case of a claims made policy, an insured's failure to comply with notice and reporting provisions bars coverage, regardless of any prejudice to the insurer.").[2]  Harvard, having conceded it failed to strictly comply with the reporting requirement, nevertheless asks the Court to allow Harvard to proceed with its discovery fishing expedition.  The Court should decline Harvard's request because none of the discovery sought is relevant to whether Harvard timely reported the SFFA Action as it is undisputed the SFFA Action was untimely reported.

Moreover, while Harvard attempts to justify seeking the discovery on the basis that it would show that Zurich was aware of the SFFA Action from "widespread media attention" (Dkt. 32 at 1), this argument has likewise been rejected by Massachusetts courts. *See, e.g.*, *Fanaras Enterprises Inc. v. Law Offices of Roger Allen Doane*, 1 Mass.L.Rptr. 145 (Mass. Super. 1993); *Flynn*, 1998 WL 150384 at *11, citing *Hartford Accident and Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir.1985); *Boyle v. Zurich American Ins. Co.*, 32 Mass.L.Rptr. 352 (Mass.

---

[2] Zurich respectfully refers the Court to its Memorandum of Law in support of its Motion for Summary Judgment (Dkt. 30 at pp. 5-9) for a full discussion of this issue.

Super. 2014), vacated on other grounds, 472 Mass. 649 (2015); *Northbrook Excess & Surplus Ins. Co. v. Medical Malpractice Joint Underwriting Ass'n*, 1988 U.S. Dist. LEXIS 17954 (D. Mass. March 9, 1988), citing *City of Harrisburg v. International Surplus Lines Insurance Company*, 596 F. Supp., 954 (M.D. Pa. 1984), *aff'd* 770 F.2d 1067 (3rd Cir. 1985).[3]

The cases relied on by Harvard, *In re John J. Sullivan, Inc.*, 128 B.R. 7 (D. Mass. 1990) and *Commonwealth v. Olivo*, 369 Mass. 62 (1975), are inapposite and easily distinguishable.

In *Sullivan*, the issue before the court was whether a notice of cancellation sent by the insurer was effective given that it failed to comply with the statutory requirement (that was included in the policy) that such notices of cancellation provide at least thirty days' written notice of termination. The *Sullivan* court rejected a constructive notice argument and found that strict compliance with the statutory cancellation procedure was required. 128 B.R. at 12. In *Olivo*, a constitutional law case, the court simply addressed the adequacy of English-only notice to persons not literate in English. 369 Mass. at 70.  Neither case in any way addressed an insured's obligation to timely report claims under a claims-made-and-reported insurance policy as is at issue here.

While Harvard purports to rely on these cases to suggest that Zurich had some kind of duty to inquire of Harvard about the SFFA Action before Harvard ever reported that lawsuit to Zurich, this argument is contrary to clear Massachusetts law. Indeed, as the court held in *Fanaras*, "[m]ere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired ... <u>An insurance company is not required to</u>

---

[3] Again, Zurich respectfully refers the Court to its Memorandum of Law in support of its Motion for Summary Judgment (Dkt. 30 at pp. 9-13) for a full discussion of this issue.

intermeddle officiously where its services have not been requested." 1993 WL 818902, at \*3 (emphasis added).

In short, the material facts regarding Harvard's late notice are undisputed, so Harvard's efforts to obtain broad discovery on matters irrelevant to the reporting issue should be rejected.

C.   **The Specific Discovery Sought by Harvard is Both Irrelevant and Not Proportional to the Needs of the Case**

Again, Harvard seeks four categories of discovery, all of which are directed to Zurich's knowledge of the SFFA Action <u>before</u> Harvard reported that Claim to Zurich on May 23, 2017. Not only is all of this discovery irrelevant to the only issue in this case, but it is extensive, would create an undue burden on Zurich, and is not proportional to the needs of the case.

1.   **Personnel With Substantive Knowledge Related to the Harvard Account Since November 2014**

Harvard seeks to compel Zurich to identify **all** Zurich personnel with substantive knowledge "**related** to the Harvard account" after November 2014 in response to Interrogatory Nos. 3 and 4. This has absolutely no bearing on whether Harvard timely reported the SFFA Action to Zurich and is extremely broad and goes far afield. First, Harvard puts no limitation on the number of Zurich employees it asks Zurich to identify, asking for all personnel. Second, Harvard includes in its request Zurich employees with "substantive knowledge of the Harvard account," again with no explanation of limitation. This would necessarily include, only by way of example, employees involved with insurance policies issued to Harvard other than the Zurich Policy at issue in this case, as Harvard merely refers to the "Harvard account." It would also include such employees as accounting personnel who might have knowledge concerning Harvard's payment of premiums for its insurance policies, along with myriad other issues that might arise over the course of a nearly decade-long period as sought by Harvard. And again, none of this information has anything to do with the issue presented—the date on which Harvard

reported the SFFA Action to Zurich, which by Harvard's own admission was May 23, 2017.

Furthermore, Zurich has already identified, pursuant to Rule 26(a), "each individual likely to have discoverable information—along with the subjects of that information—that [Zurich] may use to support . . . defenses." Zurich provided this information in its initial Rule 26(a) disclosures on March 11, 2022. (Margulis Dec. Ex. A.) Moreover, in response to Interrogatory Nos. 3 and 4, Zurich referred Harvard, pursuant to Rule 33(d), to Zurich's claim file produced in this case. That file, consisting of more than 2,100 pages, clearly identifies all individuals who may arguably have knowledge of any information relevant to this case. Zurich's responses were thus complete and proper.

<b>2.      <u>A Targeted Search For, And Produce Copies Of, Documents And Communications From November 17, 2014 To January 30, 2016</u></b>

Again, this request is admittedly limited to the period before May 23, 2017 when Harvard actually reported the SFFA Action to Zurich. Indeed, the request in and of itself acknowledges that Harvard was required to report any Claim made during the Zurich Policy period by January 30, 2016 as that is the end date of the period for which Harvard seeks this information. As previously discussed, any knowledge by Zurich before May 23, 2017, when Harvard actually reported the SFFA Action to Zurich, is irrelevant to Harvard's claim for coverage and to Zurich's defense.

Moreover, the requested search is so overly broad as to be impossible to conduct. Harvard seeks to require Zurich to search "documents and communications," with no further specification of custodians and for a period dating back to more than six years ago. Harvard seems to believe that Zurich can simply run a search across all documents in Zurich's possession in one "targeted search." However, there is no single, centrally located document repository within Zurich that Zurich can simply search. (*See* Declaration of Julye Frankland ("Frankland

9

Dec.") Frankland Dec. ¶ 5.)

Zurich maintains claim files with respect to claims submitted by its insureds for coverage. When a claim is submitted, Zurich assigns a claim number to that claim and all documents relating to that claim are then filed under or associated to that claim number. Here, since Harvard reported the SFFA Action to Zurich on May 23, 2017, the claim number assigned to the SFFA Action was created on that date. Thus, documents created after that date relating to the SFFA Action would be filed under or associated to that claim number. (Frankland Dec. ¶ 6.)

What Harvard fails to recognize, however, is that since no "Claim" existed at Zurich for the SFFA Action before May 23, 2017, there is nowhere to search for any documents that might mention that lawsuit. For example, Harvard believes that a Zurich employee's reading of a newspaper account discussing the SFFA Action would constitute sufficient notice to Zurich. (See, e.g. Dkt. 33-1 at 19 of 25, in which Harvard seeks "documents and communications received via newsletters or newspapers.") If some Zurich employee did read or receive a newspaper article relating to the SFFA Action before May 23, 2017, there would have been no claim file within which to file such document as that file did not exist until May 23, 2017.

Harvard ignores the reality of the situation and believes that Zurich can simply run a search across any document that any Zurich employee may have read between November 17, 2014 and January 30, 2016 and produce that information. This is just not possible. Zurich previously advised Harvard of this situation during the parties' meet and confer communications (*see* Dkt. 33-5 at 6).

Perhaps in recognition of this reality, Harvard now seeks to have Zurich:

> run a targeted search for, and produce copies of, documents and communications from November 17, 2014 to January 30, 2016 regarding Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), No. 1:14-cv-

          14176-ADB (the "SFFA Action") in accordance with Harvard's
          Document Request Nos. 6, 15, 17, 18 and 19.

Dkt. 36 ¶ 26. Harvard has specifically stated that this request seeks to have Zurich conduct a

"search of the emails of all individuals at Zurich who worked on Harvard's account, including

their direct and indirect supervisors, for the time period from November 17, 2014 to January 30,

2016." (Dkt. 32 at 16).

       But that request also presents significant problems and places undue burdens on Zurich.

Harvard does not identify the specific custodians whose emails it believes should be searched.

Given that there is no central repository in which Zurich stores all email communications, such

information would have to be located on a custodian by custodian basis. Thus, each individual's

emails would have to be separately obtained and then searched. (Frankland Dec. ¶ 8.)

       Once the specific custodians are identified (which identification is in itself a difficult task

because of the breadth of the categories of individuals referenced by Harvard), additional

challenges are involved. During the time period for the search identified by Harvard, November

17, 2014 to January 30, 2016, emails were sent and received through Zurich's legacy email

system, which is no longer in use. None of those emails would have been sent or received on

Zurich's current email system, which went into use only after January 2016. (Frankland Dec. ¶

9.)

       Such emails would instead be stored on monthly disaster recovery tapes, if they are

available at all. In order to obtain emails from this period, Zurich would have to restore separate

monthly disaster recovery tapes for each custodian. For one custodian, if available, it would be

expected that there would be approximately twelve (12) tapes for a single year of emails. Zurich

would have to use a specialized contractor to restore monthly legacy disaster recovery tapes for

each custodian's emails, which is a multi-step process that could take several months to

complete. (Frankland Dec. ¶ 10.)

Zurich would then have to send the emails restored from those disaster recovery tapes to another specialized third party eDiscovery vendor to process, index, de-duplicate, and apply search terms across each custodian's emails in an attempt to narrow the emails to those that may relate to the underlying lawsuit at issue in this case. Zurich would then have to incur hourly attorney fees to manually review those emails to identify and isolate potentially relevant and non-privileged emails. (Frankland Dec. ¶ 11.)

It would be extremely burdensome on Zurich to even begin the process to obtain sufficient information to calculate an accurate cost of searching for and producing the emails sent or received by numerous custodians over the course of the fifteen months sought by Harvard. (Frankland Dec. ¶ 13.) However, in a case involving a single digit multiple of custodians and more than one year of emails, it is likely that this entire process could cost at least $50,000, and potentially substantially more. (Frankland Dec. ¶ 13.)

Given that the information sought by Harvard in such a search is in no way relevant to the issues presented in this case, such request is clearly not proportional to the needs of the case and is unduly burdensome on Zurich.

### 3.    Copies of Zurich Underwriting Files for Policy Years 2014-2018

Again, Harvard seeks underwriting information in support of its meritless argument that if Zurich somehow knew of the SFFA Action before it was formally reported by Harvard on May 23, 2017, then Harvard is somehow excused from its failure to comply with the condition precedent to coverage. As previously discussed, reporting requirements in claims-made-and-reported policies are strictly construed and must be adhered to.  Information about underwriting of the Zurich Policy and any subsequent policies is wholly irrelevant to the only issue in this case – late notice.  Moreover, any information relating to underwriting has no bearing on Zurich's

claim-handling function, or Harvard's obligation to report claims to the Zurich claim department.

Indeed, in this regard, the Zurich Policy clearly distinguishes between notices of claim

information and any other types of notices required under the Zurich Policy and provides

separate and distinct notice addresses for both. The Zurich Policy states:

> Item 5. Notice to Underwriter[4]:

|                                          |                                       |
| ---------------------------------------- | ------------------------------------- |
| A. Address for Notice of Claim or Potential Claim | B. Address for All Other Notices: |
| Attn:   Zurich North America Management Solutions Claims P.O. Box 968041 Schaumburg, Illinois 60196-8041 Fax #: (866) 255-2962 Email: msgclms@zurichna.com | Attn: Zurich American Insurance Company Strategic Risk Solutions Group 1 Liberty Plaza, 32nd Floor New York, NY 10006 |

Dkt. 1-1 at page 8 of 15.

Thus, any information within any underwriting file would not satisfy Harvard's

obligation to report a claim to the proper location in a timely manner, and again, Harvard has

admitted it did not report the SFFA Action to Zurich until May 23, 2017. Accordingly, any

information in Zurich's underwriting files before that date has no relevance as it would not

satisfy Harvard's reporting obligation. And any information in Zurich's underwriting files after

that date is not relevant because Zurich was already put on notice and had denied coverage for

Harvard's untimely reporting of the SFFA Action.

Nevertheless, what Harvard also ignores is the fact that Zurich has already produced

extensive underwriting information, as that information was reviewed by the claim professional

assessing Harvard's claim for coverage and was thus part of Zurich's claim file. Indeed, it was

---

[4] The Zurich Policy defines "Underwriter" to mean Zurich. (Dkt. 1-1 at 8 of 15.)

from Zurich's production of this information that Harvard obtained the "Deal Memos" referenced in its motion to compel. While even that information has no relevance to the issue in this case, it has already been produced.

For these reasons, this information is neither relevant nor proportional to the needs of the case.

### 4.    Response to Harvard's Interrogatory No. 5, Asking Zurich to Describe What it did in Response to Harvard's March 10, 2021 letter

As previously demonstrated, Harvard reported the SFFA Action to Zurich on May 23, 2017. Zurich denied coverage for the SFFA Action based on Harvard's failure to comply with its reporting obligation by letter dated October 25, 2017. (Dkt. 1 ¶ 46; Dkt. 28-6.)

The March 10, 2021 letter referenced in this request by Harvard was a letter from Walter Pizzano of Harvard to the Chief Claims Officer at Zurich. (Dkt. 33-11.) In that letter, Harvard again noted that it had sought coverage for the SFFA Action from Zurich, and that Zurich had denied coverage for the SFFA Action. Indeed, that denial of coverage was communicated to Harvard in 2017, nearly four (4) years before the March 10, 2021 letter was sent.

Harvard seeks all information relating to what Zurich did in response to the March 10, 2021 letter. As Harvard is well aware, Zurich responded to that letter by its letter dated May 28, 2021, which letter has been produced. (Margulis Dec. ¶ 5 and Ex. B.) Any other information has absolutely no bearing on any issue in this case. Zurich had already denied coverage for the SFFA Action four years earlier. The fact that Harvard sought to capitalize in its relationship with Zurich and its threat of litigation to attempt to get Zurich to change its coverage position again has no bearing on the sole issue in this case – late reporting of the SFFA Action. Moreover, Zurich had denied coverage for the SFFA Action in 2017 and the parties were in an adverse relationship regarding coverage for the SFFA Action, and Harvard's March 10, 2021 letter

directly threatened litigation regarding Zurich's coverage denial. As such, any information relating what Zurich did to respond to Harvard's threat of litigation, other than Zurich's written response to Harvard that has already been produced, is not discoverable as material prepared in anticipation of litigation.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Zurich respectfully requests that the Court deny Harvard's Motion to Compel in its entirety, together with such other and further relief as the Court deems appropriate.

Dated: September 16, 2022

Respectfully submitted,

ROPERS MAJESKI PC

By: /s/ *Andrew L. Margulis*
Andrew L. Margulis *Pro Hac Vice*
Andres Avila *Pro Hac Vice*
750 Third Avenue, Floor 25
New York, New York 10017
Telephone: (212) 668-5297
Facsimile: (212) 668-5929
E-mail: Andrew.Margulis@ropers.com
Andres.avila@ropers.com

Paul T. Muniz (BBO No. 564786)
Donovan Hatem LLP
53 State Street, 8th Floor
Boston, MA 02109
Telephone: (617) 406-4500
Facsimile:  (617) 406-4501
Email:  pmuniz@donovanhatem.com

*Attorneys for Defendant Zurich American
Insurance Company*

15

**<u>Certificate of Service</u>**

I hereby certify that the foregoing document will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) onSeptember 16, 2022, and courtesy electronic copies will be sent to counsel for parties who have not yet appeared in this action.

<u>/s/ *Andrew L. Margulis*</u>
Andrew L. Margulis

4882-2222-0848.9