UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>           Plaintiff,<br><br>   v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>           Defendant. | Civil Action No. 21-CV-11530-ADB |

# DECLARATION OF JULYE FRANKLAND IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND MOTION PURSUANT TO RULE 56(d)

I, Julye Frankland, hereby declare as follows:

1. I am employed by Zurich American Insurance Company ("Zurich") as a paralegal in the Claims Legal Group. I am familiar with the nature and scope of the general files maintained by Zurich. I am also familiar with the manner in which Zurich maintains and stores claims and underwriting information, including emails.

2. The information contained in this declaration is based on my personal knowledge as well as information I have obtained during my course of work on behalf of Zurich over the years.

3. I submit this declaration in opposition to Plaintiff's motion to compel and Plaintiff's motion pursuant to Rule 56(d), in which Plaintiff seeks additional discovery from Zurich.

4. In its motions, Plaintiff seeks certain discovery from Zurich, including requiring Zurich to:

> run a targeted search for, and produce copies of, documents and communications from November 17, 2014 to January 30, 2016 regarding Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), No. 1:14-cv-14176-ADB (the "SFFA Action") in accordance with Harvard's Document Request Nos. 6, 15, 17, 18 and 19.

(Dkt. 31 at 2.)

5. Zurich does not maintain a single, centralized filing system that would permit Zurich to simply run searches across documents in general.

6. Zurich maintains claim files with respect to claims submitted by its insureds for coverage. When a claim is submitted, Zurich assigns a claim number to that claim and documents relating to that claim are then filed under or associated to that claim number. Here, since Harvard reported the SFFA Action to Zurich on May 23, 2017, the claim number assigned to the SFFA Action was created on or about that date. Thus, documents created after that date relating to the SFFA Action would be filed under or associated to that claim number.

7. Plaintiff seems to suggest that it is seeking to have Zurich run a search across emails sent or received during the referenced time period, November 17, 2014 through January 30, 2016. Plaintiff states that it "does not expect a targeted electronic search of the emails of certain to-be-identified individuals, as requested in the Motion to Compel, to be time extensive." (Dkt. 36 ¶ 29.) Plaintiff's statement is not correct, and Plaintiff's request presents multiple challenges.

8. First, Plaintiff does not identify the specific custodians whose emails it believes should be searched. This is problematic because again there is no central repository in which Zurich stores all email communications for the dates in question. Such information would have to be located on a custodian by custodian basis. Thus, each individual's emails would have to be separately obtained and then searched (as discussed in greater detail below). Zurich currently has

over 7,450 full-time employees in the United States. Without knowing the specific identity or number of custodians involved, it is impossible for Zurich to estimate with any accuracy the time or expense involved in such an undertaking. However, an enterprise-wide search of emails would be both extraordinary and virtually impossible.

9. Second, even if specific custodians are identified, additional challenges are involved. During the time period sought by Plaintiff, November 17, 2014 to January 30, 2016, emails were sent and received through Zurich's legacy email system, which is no longer in use. None of those emails would have been sent or received on Zurich's current email system, which went into use only after January 2016.

10. Electronic versions of emails from that time period are stored on monthly disaster recovery tapes, if they are available at all. As a general matter, in order to obtain emails from this period, Zurich would have to restore separate monthly disaster recovery tapes for each custodian to a server. For one custodian, if available, it would be expected that there would be approximately twelve (12) tapes for a single year of emails. Zurich would have to use a specialized contractor to restore these monthly legacy disaster recovery tapes for each custodian's emails. Based on my experience, this is a multi-step process that could take several months to complete.

11. Zurich would then have to send the emails restored from these disaster recovery tapes to another specialized third party eDiscovery vendor to process, index, de-duplicate, and apply search terms across each custodian's emails in an attempt to narrow the emails to those that may relate to the underlying lawsuit at issue in this case. Zurich would then have to incur hourly attorney fees to manually review those emails to identify and isolate potentially relevant and non-privileged emails.

4873-8508-1394.7

12. While Plaintiff referred to "certain to-be-identified individuals," Plaintiff did mention one possible custodian by name—Amauri Taveras. I am aware that due to a previous litigation hold, a "snapshot" of the emails of Mr. Taveras was obtained in approximately February 2016. While those emails could be searched, it is not possible to ascertain whether such email "snapshot" is complete without undertaking the restoration and review of information on disaster recovery tapes detailed above. It is not possible to ascertain whether all emails from the November 17, 2014 to January 30, 2016 time period were captured as part of the transition from the legacy system to the current system. For that reason, while certain emails from that time period may be available from the "snapshot," there is no way to determine whether emails relating to the subject of this lawsuit were included in the transition from the legacy system and are accessible on the current system. Thus, the only way to ensure that all emails were being searched would be to go through the restoration of the disaster recovery tapes as discussed above.

13. It would be burdensome to begin the process to obtain enough information to calculate the exact cost of searching for and producing the emails sent or received by numerous custodians over the course of the fifteen months sought by Plaintiff because the cost varies depending on the specific custodian, the specific time period, size of the mailbox and volume of data, the availability of data, and the utility of search terms. However, it would not be unusual in a case involving a single-digit number of custodians and more than one year of emails for the combined cost of restoring the emails, processing the emails into a searchable format, filtering the emails, hosting them in a review platform, and then having attorneys review the emails for relevance to exceed $50,000, and the cost could be substantially higher.

I declare the foregoing is true under penalty of perjury.

4

4873-8508-1394.7

Executed this 15th day of September, 2022.

                                                   _/s/ Julye Frankland_
                                                 JULYE FRANKLAND

## Certificate of Service

      I hereby certify that the foregoing document will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 16, 2022, and courtesy electronic copies will be sent to counsel for parties who have not yet appeared in this action.

                                                  /s/ *Andrew Margulis*

4873-8508-1394.7