UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>               Plaintiff,<br><br>    v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>               Defendant. | Civil Action No. 21-CV-11530-ADB |

**PLAINTIFF PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S
COUNTERSTATEMENT OF UNDISPUTED AND/OR DISPUTED MATERIAL FACTS
IN RESPONSE TO DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States

District Court for the District of Massachusetts, Plaintiff President and Fellows of Harvard

College ("Harvard") respectfully submits this Counterstatement of Undisputed and/or Disputed

Material Facts in Response to Defendant Zurich American Insurance Company's ("Zurich")

Separate Statement of Undisputed Material Facts, and states as follows:

**A.**     **The SFFA Action[1]**

1.     On November 17, 2014, an action was commenced entitled *Students for Fair*

*Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), et al.*, Case

No. 1:14-cv-14176 in the United States District Court for the District of Massachusetts (the "SFFA

Action"). Complaint, Dkt. 1 ¶ 2; Declaration of Andrew L. Margulis in support of Zurich's motion

for summary judgment (the "Margulis Dec."), Ex. A.

---

[1] For ease of reference Harvard keeps the headings used by Zurich in its filed Separate Statement of Undisputed Material Facts, however by using those headings Harvard does not indicate an agreement with their wording or description of the statements contained therein.

**Response to Statement No. 1:** Undisputed.

**B.      The AIG Policy**

2.      National Union Fire Insurance Company of Pittsburgh, Pa. ("AIG") issued a primary Educational Institution Risk Protector policy to Harvard bearing policy number 01-817-25-28 for the Policy Period of November 1, 2014 to November 1, 2015 (the "AIG Policy"). Dkt. 1 at ¶ 32; Dkt. 1-2.

**Response to Statement No. 2:** Disputed as to the use of the term "issued," but undisputed that AIG sold Harvard an Educational Institution Risk Protector policy and that the terms and conditions of that policy speak for themselves.

3.      Section 3, Notice, of the AIG Policy states in part:

> Notice hereunder shall be given in writing to the addressee by email at the following email address: c-claim@aig.com or by postal mail at the address identified in Item 6(b) of the Declarations. Notice shall include and reference this policy number as indicated in the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. If emailed, such email must reference the policy number for this policy. If emailed, the date of emailing shall constitute the date of notice and proof of emailing shall be sufficient proof of notice.

> a)      The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured, a Crisis Management Event or Privacy Event or Security Failure or Security Threat as soon as practicable after: (i) the Named Entity's Risk Manager or General Counsel (or equivalent position) first receives notice of the Claim; (ii) the Crisis Management Event commences, or (iii) solely for the purposes of the Event Management Insuring Agreement and Cyber Extortion Insuring Agreement, the Privacy Event, Security Failure or Security Threat commences.

> Notwithstanding the foregoing, the Insured shall not be required to give written notice of a Claim until the earliest occurrence of the following:

2

(i)      the Claim is or is sought to be certified as a class action; or

(ii)     total Loss (including Defense Costs) of the Claim is reasonably estimated by the Organization's General Counsel or Risk Manager (or equivalent position) to exceed 50% of the applicable retention amount for such Claim;

*provided, however*, that in all events, all Claims, including Claims described in (i) - (ii) above, must be reported to the Insurer no later than ninety (90) days after the end of the Policy Period or the Discovery Period (if applicable).

Dkt. 1-2 at p. 68 of 149 (italics in original).

**Response to Statement No. 3:** Undisputed that the AIG Policy contains the quoted language, and that the AIG Policy's terms and conditions of speak for themselves.

**C.      The Zurich Policy**

4.      Zurich issued to Harvard a Zurich Excess Select Insurance Policy bearing policy number IPR 3792308-03 for the Policy Period of November 1, 2014 to November 1, 2015 (the "Zurich Policy"). Dkt. 1 at ¶ 29; Dkt. 1-1.

**Response to Statement No. 4:** Disputed as to the use of the term "issued," but undisputed that Zurich sold to Harvard a Zurich Excess Select Insurance Policy bearing policy number IPR 3792308-03 for the Policy Period of November 1, 2014 to November 1, 2015, and that the Zurich Policy's terms and conditions speak for themselves.

5.      The Zurich Policy was a "follow form" policy and, except as otherwise specifically stated to the contrary in the Zurich Policy, incorporated the terms, conditions and limitations of the AIG Policy, including the notice provision. Dkt. 1-1 at p. 8, 10 of 15.

**Response to Statement No. 5:** Disputed that the Zurich Policy uses the words "follow form," and disputed that p. 15 of the referenced exhibit contains any such reference.

3

Undisputed that the Zurich Policy states that it "follows to the terms, conditions, and limitations of the Followed Policy."  Dkt. 1-1 (Zurich Policy) at p. 8.  The Zurich Policy also states in its Insuring Clause that

> Coverage under this policy shall then apply in conformance with and subject to the warranties, if permitted, limitations, conditions, provisions, and other terms of the Followed Policy, together with the warranties, if permitted, and limitations of any other Underlying Insurance. In no event shall coverage under this policy be broader than the coverage under any Underlying Insurance.

Dkt. 1-1 at p. 10.  Undisputed that this type of excess insurance language signifies what is known as "follow form" insurance.

6.     The term Followed Policy was defined in the Zurich Policy as the AIG Policy. Dkt. 1-1 at p. 8 of 15.

**Response to Statement No. 6:** Disputed that the Zurich Policy defines the term "Followed Policy."  Undisputed that the Zurich Policy contains a schedule under Item 3 of the Declarations that lists the "Followed Policy" as the AIG Policy.  Dkt. 1-1 (Zurich Policy) at p. 8 of 15.

7.     Section III.A of the Zurich Policy states:

> A.     Reporting and Notice – As a condition precedent to exercising any rights under this policy, the Policyholder shall give the Underwriter written notice of any claim or any potential claim under this policy or any Underlying Insurance in the same manner required by the terms and conditions of the Followed Policy. Notwithstanding the foregoing, notice to the insurer(s) of the Followed Policy or other Underlying Insurance does not constitute notice to the Underwriter. Written notice of any claim or potential claim shall be provided to the Underwriter at the address set forth in Item 5.A. of the Declarations.
>
> The Underwriter shall be given notice in writing to the address set forth in Item 5.B. of the Declarations as soon as practicable in the event of (1) termination of any Underlying Insurance, (2) any additional or return premiums charged or allowed in connection

with any Underlying Insurance, or (3) any change to any of the Underlying Insurance.

Dkt. 1-1 at p. 11-12 of 15.

**Response to Statement No. 7:** Disputed that the pages referenced in the Zurich Policy contain the quoted language above, but undisputed that the Zurich Policy contains the quoted language and that the Zurich Policy's terms and conditions of speak for themselves.

8.    The term "Underwriter" is defined in the Zurich Policy to mean Zurich. Dkt. 1-1 at p. 8 of 15.

**Response to Statement No. 8:** Undisputed the Declarations page of the Zurich Policy uses the term "Underwriter" as shorthand for Zurich.

9.    The address set forth in Item 5.A. of the Declarations of the Zurich Policy is:

A.    Address for Notice of Claim or Potential Claim Attn: Zurich North America
Management Solutions Claims
P.O. Box 968041
Schaumburg, Illinois 60196-8041
Fax #: (866) 255-2962
Email: msgclms@zurichna.com

Dkt. 1-1 at p. 8 of 15.

**Response to Statement No. 9:** Undisputed that the quoted language is contained in Item 5.A of the Declarations of the Zurich Policy, and that the Zurich Policy's terms and conditions of speak for themselves.

**D.    Harvard's Notice to AIG of the SFFA Action**

10.    On November 19, 2014, Harvard gave notice to AIG of the SFFA Action. Dkt. 1 at ¶ 41; Margulis Dec. Ex. B at Z 002055; Margulis Dec. Ex. F, Response to Interrogatory No. 4 at p. 6.

docs-100516145.4

**Response to Statement No. 10: U**ndisputed that Harvard gave formal notice to AIG of the SFFA Action on November 19, 2014, but disputed as to whether Zurich had actual notice of the SFFA Action prior to January 30, 2016.

11.    AIG sent Harvard a coverage position letter in connection with the SFFA Action dated August 4, 2015. Margulis Dec. Ex. B.

**Response to Statement No. 11:** Undisputed that AIG sent a letter dated August 4, 2015, to Harvard wherein AIG agreed the SFFA Action is a covered claim under the AIG Policy.

**E.    Harvard's Notice to Zurich of the SFFA Action**

12.    On May 23, 2017, Harvard first provided notice to Zurich of the SFFA Action. Dkt. 1 at ¶ 44; Margulis Dec. Exs. C; Margulis Dec. Ex. F, Response to Interrogatory No. 4 at p. 6.

**Response to Statement No. 12:** Disputed.  Undisputed that Harvard provided formal notice to Zurich of the SFFA Action via letter May 23, 2017, but disputed insofar as Zurich already had notice of the SFFA Action prior to receiving that letter and prior to January 30, 2016.  Declaration of Ethan W. Middlebrooks ("Middlebrooks Dec."), Ex. A, Response to Request for Admission No. 5; Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter); Middlebrooks Dec. at Ex. K (News Articles); Dkt. 1-3 (Complaint, Ex. C); Margulis Dec. Ex. F., Response to Interrogatory No. 6, 8 & 9; Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001175, Zurich-E-0001204, Zurich-E-0001221, Zurich-E-0001223, Zurich-E-0001233, Zurich-E-0001263, Zurich-E-0001278, Zurich-E-0001292, Zurich-E-0001309, Zurich-E-0001311; Middlebrooks Dec. at Ex. M (Zurich October 2, 2018 Emails), at Z001546. *See* ¶¶ 37-56, *infra*.

13.     At the time Harvard provided its first notice to Zurich, Harvard also provided Zurich with a copy of AIG's letter dated August 4, 2015 (attached as Margulis Dec. Ex. B). Margulis Dec. Ex. C.

**Response to Statement No. 13:** Disputed that Zurich first received notice of the SFFA Action via Harvard's May 23, 2017 letter, but undisputed that Harvard's May 23, 2017 letter also included a copy of AIG's letter dated August 4, 2015.  Middlebrooks Dec. at Ex. A, Response to Request for Admission Nos. 4 & 5; Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter); Middlebrooks Dec. at Ex. K (News Articles); Dkt. 1-3 (Complaint, Ex. C); Margulis Dec. Ex. F., Response to Interrogatory No. 6, 8 & 9; Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001175, Zurich-E-0001204, Zurich-E-0001221, Zurich-E-0001223, Zurich-E-0001233, Zurich-E-0001263, Zurich-E-0001278, Zurich-E-0001292, Zurich-E-0001309, Zurich-E-0001311; Middlebrooks Dec. at Ex. M (Zurich October 2, 2018 Emails), at Z001546.  *See* ¶¶ 37-56, *infra*.

14.     In response to Harvard's notice, Zurich asked Harvard to confirm that Harvard's May 23, 2017 notice letter was Harvard's first notice to Zurich. Margulis Dec. Ex. D.

**Response to Statement No. 14:** Disputed. The August 30, 2017 email communication contained as Margulis Dec. Ex. D is between Henry Chun of Zurich and Douglas J. Willis of Marsh.

15.     Harvard confirmed that its first notice to Zurich was in fact the May 23, 2017 letter and there had been no prior notification sent to Zurich. Margulis Dec. Ex. D.

**Response to Statement No. 15:** Disputed. The August 30, 2017 email communication contained as Margulis Dec. Ex. D is between Henry Chun of Zurich and Douglas J.

Willis of Marsh, wherein Mr. Willis wrote "You are correct that our notice to Zurich was first sent in May 2017."

16.     By letter dated October 25, 2017, Zurich advised Harvard that no coverage was available under the Zurich Policy for the SFFA Action as a result of Harvard's failure to comply with the notice requirements of the Zurich Policy. Dkt. 1 at ¶ 46; Margulis Dec. Ex. E.

**Response to Statement No. 16:** Undisputed that by letter dated October 25, 2017, Zurich wrote that "it appears there is no coverage" available under the Zurich Policy for the SFFA Action on the alleged basis that "it appears Harvard failed to provide timely notice of" the SFFA Action "in the manner required under the terms and conditions of" the Zurich Policy, and Zurich wrote "we must at this time deny coverage" without raising any other coverage defenses.  The characterization of events in that letter are disputed, as Zurich had actual notice of the SFFA Action prior to January 30, 2016.  Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter); Middlebrooks Dec. at Ex. K (News Articles); Dkt. 1-3 (Complaint, Ex. C); Margulis Dec. Ex. F., Response to Interrogatory No. 6, 8 & 9; Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001175, Zurich-E-0001204, Zurich-E-0001221, Zurich-E-0001223, Zurich-E-0001233, Zurich-E-0001263,  Zurich-E-0001278,  Zurich-E-0001292,  Zurich-E-0001309,  Zurich-E-0001311; Middlebrooks Dec. at Ex. M (Zurich October 2, 2018 Emails), at Z001546; Middlebrooks Dec., Ex. A, Response to Request for Admission No. 5.  *See* ¶¶ 37-56, *infra*.

## COUNTERSTATEMENT OF MATERIAL FACTS

**The SFFA Action**

17.　　The SFFA Action generally alleges that Harvard administers its undergraduate student admissions process in violation of Title VI of the Civil Rights Act of 1964.  Margulis Dec. Ex. A (SFFA Action Complaint); Middlebrooks Dec. at Ex. B (SFFA Action Findings of Fact and Conclusions of Law, with Judgment), at Z000514.

18.　　The SFFA Action entailed and progressed through extensive pre-trial discovery and motion practice.  *See* Docket, *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation), et al.*, Case No. 1:14-cv-14176-ADB (D. Mass.).

19.　　The SFFA Action underwent a three-week trial.  Middlebrooks Dec. at Ex. B (SFFA Action Findings of Fact and Conclusions of Law, with Judgment), at Z000515-16.

20.　　Judgment was entered by the United States District Court for the District of Massachusetts in favor of Harvard on all counts.  Middlebrooks Dec. at Ex. B (SFFA Action Findings of Fact and Conclusions of Law, with Judgment), at Z000640-41.

21.　　SFFA appealed to the United States Court of Appeals for the First Circuit.  Middlebrooks Dec. at Ex. C (First Circuit Decision) at Z000058.

22.　　On November 12, 2020, the First Circuit affirmed the District Court's judgment in favor of Harvard.  Middlebrooks Dec. at Ex. C (First Circuit Decision).

23.　　SFFA subsequently filed a petition for *certiorari* to the Supreme Court of the United States.  Middlebrooks Dec. at Ex. D (SFFA Petition for Writ of Certiorari).

24.　　 The Supreme Court granted *certiorari*, and that appeal is now pending before the Supreme Court.  *See* Supreme Court Docket, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199.

25.    The United States Department of Justice ("DOJ") opened an investigation into Harvard's admissions practices in September 2017.    Middlebrooks Dec. at Ex. E (DOJ September 20, 2017 Letter); Middlebrooks Dec. at Ex. F (AIG October 27, 2017 Letter) at Z001689.

26.    Harvard has incurred defense costs in connection with the DOJ investigation, including for the collection and production of thousands of business records.  *See* Middlebrooks Dec. at Ex. E, Z001721-22 (DOJ September 20, 2017 Letter).

**The Insurance Claim**

27.    AIG has treated the SFFA Action and the DOJ investigation as part of a single claim under the AIG Policy.  Middlebrooks Dec. at Ex. F (AIG October 27, 2017 Letter) at Z001690; Frazier Aff. at ⁋ 8.

28.    The AIG Policy has a $25,000,000 aggregate limit of liability, with a $2,500,000 self-insured-retention.  Dkt. 1-2 (AIG Policy); Margulis Dec. Ex. B at Z002056; Middlebrooks Dec. at Ex. F (AIG October 27, 2017 Letter) at Z001689.

29.    As AIG treated the SFFA Action and the DOJ investigation as part of a single claim under the AIG Policy, it subjected the claim to one retention and limit of liability.  *See* Middlebrooks Dec. at Ex. F (AIG October 27, 2017 Letter).

30.    The defense costs Harvard has incurred exceed the AIG Policy's aggregate limits and are within the limits of the Zurich Policy.  Margulis Dec. Ex. F, Response to Interrogatory No. 13.

**Zurich's Denial**

31.    Harvard provided formal notice to Zurich on May 23, 2017 when it appeared possible that the cost of defending the SFFA Action might grow significantly. Middlebrooks

Dec. at Ex. G (Marsh November 17, 2017 letter); Margulis Dec. Ex. C (Marsh May 23, 2017 Formal Notice Letter).

32.    Zurich acknowledged that the SFFA Action would be a covered claim but for the purported late notice, and asserted no defenses to coverage other than for late notice. Middlebrooks Dec. at Ex. H (Zurich August 30, 2017 Letter), at Z001734; Middlebrooks Dec. at Ex. G (Marsh November 17, 2017 letter).

33.    Harvard also provided Zurich formal notice of the DOJ investigation. Middlebrooks Dec. at Ex. I (Marsh September 28, 2017 Formal Notice Letter); Middlebrooks Dec. at Ex. E (DOJ September 20, 2017 Letter).

34.    Harvard disputed Zurich's denial of coverage, and stated that Zurich surely had notice of the SFFA Action through media reports and its own underwriting efforts. (Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter).

35.    By letter dated March 10, 2021, Harvard advised Zurich to preserve all documents regarding its actual knowledge of the SFFA Action from November 2014 through at least January 30, 2016.  Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter).

36.    Harvard initiated this coverage action on September 17, 2021.   Dkt. 1 (Complaint).

**Zurich's Knowledge of the SFFA Action**

37.    The SFFA Action was widely reported in national news coverage.  Middlebrooks Dec. at Ex. K (News Articles); Dkt. 1-3 (Complaint, Ex. C) (Additional News Articles); Margulis Dec. Ex. F., Response to Interrogatory Nos. 6-7.

11

38.     In connection with Zurich's underwriting of Harvard's insurance it created annual Deal Memos, including for 2012, 2014, 2015, and 2017.  *See* Middlebrooks Dec. at Ex. L (Deal Memos).

39.     The Deal Memos refer to various types of monitoring activities by Zurich in connection with underwriting Harvard's insurance policies.  *See generally id.*

40.     The 2014 Deal Memo includes a section entitled "Recent Developments / Articles" that refers to "attached articles and recent press," none of which are attached to the versions produced to Harvard.  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001221.

41.     Similarly, the 2015 Deal Memo includes a section entitled "Recent Developments / Articles" that refers to "attached articles and recent press," none of which are attached to the versions produced to Harvard. Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001309.

42.     The 2017 Deal memo also includes a section entitled "Recent Developments / Articles" that refers to "attached articles and recent press," none of which are attached to the versions produced to Harvard. Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001278.

43.     Zurich also monitored litigation activity as part of its underwriting process and included reference to that monitoring in its 2014 and 2015 Deal Memos. Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001221, Zurich-E-0001309.

44.     Zurich's 2014 and 2015 Deal Memos stated "[w]e continue monitoring the litigation summaries periodically provided."  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001223, Zurich-E-0001311.

45.     Each of the Deal Memos also refer to loss runs that were reviewed by the Zurich underwriter each year.  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001175, Zurich-E-0001204, Zurich-E-0001233, Zurich-E-0001263, Zurich-E-0001292.

46.     The Deal Memos also note that Zurich was "monitoring" "notable" litigation and "activity" in 2014 and 2015.  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001223, Zurich-E-0001311.

47.     The 2014 and 2015 Deal Memos similarly refer to "loss data in eFile," but Zurich has not produced such loss data during discovery.  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001223, Zurich-E-0001311; Dkt. 31-33 (Harvard Motion To Compel).

48.     The Deal Memos also show that during the 2014-2016 timeframe, Zurich was engaged in an ongoing effort to replace AIG as the underwriter of the primary layer of Harvard's insurance program.  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001204, Zurich-E-0001292; Margulis Dec. Ex. F., Response to Interrogatory Nos. 8 & 9.

49.     The Deal Memos refer to "litigation summaries" used by Zurich in the underwriting of Harvard's insurance but no such materials have been produced by Zurich in discovery.  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001223, Zurich-E-0001280, Zurich-E-0001311; Dkt. 31-33 (Harvard Motion To Compel).

50.     Zurich's claims handler Henry Chun and Zurich underwriter Russell Creighton sent emails dated October 2, 2018, in which Henry Chun asked for copies of the "litigations summaries."  Middlebrooks Dec. at Ex. M (Zurich October 2, 2018 Emails), at Z001546.

51.     That same email series also discusses loss runs used by the underwriters. Middlebrooks Dec. at Ex. M (Zurich October 2, 2018 Emails), at Z001546.

52.     Those loss runs have not been produced in discovery.  *See* Dkt. 31-33 (Harvard Motion To Compel).

53.     In Harvard's experience, Zurich employees working on Harvard's account consistently were knowledgeable about and up to date on such newsworthy developments.

Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter); Margulis Dec. Ex. F., Response to Interrogatory Nos. 8 & 9.

54.     For example, personnel including Client Relationship Leader Susan Fortin often discussed reports about current events concerning Harvard without prompting from Harvard at annual meetings, renewal meetings and on phone calls.  Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter); Margulis Dec. Ex. F., Response to Interrogatory Nos. 8 & 9.

55.     This was consistent with Zurich's ongoing effort during the 2014-2016 timeframe to assume the primary insurance position from AIG.  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001204, Zurich-E-0001292; Margulis Dec. Ex. F., Response to Interrogatory Nos. 8 & 9.

56.     Based on the litigation summaries, loss runs, and loss data used in Zurich's underwriting of Harvard's insurance, as well as the widespread coverage of the SFFA Action in the news media and Zurich's diligence in seeking to take over as the underwriter of the primary layer of Harvard's insurance program, Zurich had actual notice of the SFFA Action during the notice period from November 17, 2014 to January 30, 2016.  Middlebrooks Dec. at Ex. J (Harvard March 10, 2021 Letter); Middlebrooks Dec. at Ex. K (News Articles); Dkt. 1-3 (Complaint, Ex. C) (Additional News Articles); Margulis Dec. Ex. F., Response to Interrogatory No. 6, 8 & 9; Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001175, Zurich-E-0001204, Zurich-E-0001221, Zurich-E-0001223, Zurich-E-0001233, Zurich-E-0001263, Zurich-E-0001278, Zurich-E-0001292, Zurich-E-0001309, Zurich-E-0001311; Middlebrooks Dec. at Ex. M (Zurich October 2, 2018 Emails), at Z001546.

**Zurich's Setting of Rates and Premiums**

57.   At the point of the November 2016 renewal, the defense costs incurred for the SFFA Action were well below the $27.5 million attachment point of Zurich's excess policy. Frazier Aff. at ¶ 10; Dkt. 1-1 (Zurich Policy).

58.   At the November 2016 renewal, Zurich actually decreased the premiums charged that year.  Frazier Aff. at ¶ 9.

59.   Zurich did not increase premiums in connection with the 2017 policy renewal. Middlebrooks Dec. at Ex. L (Deal Memo), at Zurich-E-0001263; Frazier Aff. at ¶ 9.

60.   Zurich sold Harvard a renewal insurance policy in November 2017 without an increase in premiums even after it had received "formal" notice of the SFFA Action in May 2017. Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001263; Frazier Aff. at ¶ 9; Margulis Dec. Ex. C (Marsh May 23, 2017 Formal Notice Letter).

61.   The "Deal Memo" summarizing the November 2017 renewal acknowledges that the SFFA Action remained tens of millions of dollars away from reaching Zurich's excess layer. Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001263.

62.   That 2017 Deal Memo, prepared several months after Zurich received formal notice of the SFFA Action, reported that "no material changes have occurred in program exposures."  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001263.

63.   By the time of the November 2018 renewal, AIG effectively increased premiums by reducing the amount of its limits.  Middlebrooks Dec. at Ex. N (Harvard Nov. 9, 2018 email).

64.   By that time, AIG had paid out approximately $9.5 million in defense of the SFFA Action.  Frazier Aff. at ¶ 11.

65.     During the November 2018 renewal period, Zurich sought to increase the premiums charged for Harvard's excess coverage.  Middlebrooks Dec. at Ex. N (Harvard Nov. 9, 2018 email).

66.     From 2011 to 2018, Harvard's account was "a 100% profitable account to [Zurich] since 2010 with a broader profitable relationship across the firm."  Middlebrooks Dec. at Ex. L (Deal Memos), at Zurich-E-0001262, Zurich-E-0001289, Zurich-E-0001320; Middlebrooks Dec. at Ex. O (Zurich August 16, 2018 Email).


Dated:  September 19, 2022              **ANDERSON KILL P.C.**

                                        By: /s/ Marshall Gilinsky
                                            Marshall Gilinsky, Esq. (BBO # 569181)
                                            Ethan W. Middlebrooks, Esq. (*Pro Hac Vice*)
                                            Jade W. Sobh, Esq. (*Pro Hac Vice*)
                                            1251 Avenue of the Americas
                                            New York, New York 10020
                                            Telephone: (212) 278-1000
                                                        (617) 221-5445
                                            E-mail:  mgilinsky@andersonkill.com
                                            E-mail:  emiddlebrooks@andersonkill.com
                                            E-mail:  jsobh@andersonkill.com

                                            *Attorneys for Plaintiff President and Fellows of Harvard College*

docs-100516145.4