UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

                  Plaintiff,

      v.

ZURICH AMERICAN INSURANCE
COMPANY,

                  Defendant.

Civil Action No. 21-CV-11530-ADB

**<u>DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT</u>**

# <u>TABLE OF CONTENTS</u>

**<u>Page(s)</u>**

I. Preliminary Statement ................................................................................................ 1

II. Argument.................................................................................................................... 2

    A.   The Zurich Policy's Reporting Requirement Must be Strictly Enforced ............................ 2

        1.   The Zurich Policy is Unambiguous and Must be Applied as Written ............................ 3

        2.   Because the Zurich Policy is a Claims-Made and Reported Policy, the Notice Provision Must be Strictly Enforced .................................................................................... 4

        3.   Harvard's Failure to Comply With a Valid Condition Precedent Vitiates Coverage ...... 6

    B.   Both Historical Purposes of Claims Made Policies' Notice Requirements Would be Frustrated if Harvard's Non-Compliance is Excused .............................................. 9

    C.   Any Knowledge of Zurich Underwriters of the SFFA Action is Irrelevant .................... 13

III. Conclusion ............................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aletheia Rsrch. & Mgmt., Inc. v. Houston Cas. Co.*,
    831 F. Supp. 2d 1210 (C.D. Cal. 2011) ...............................................................14

*Arch Ins. Co. v. Graphic Builders LLC*,
    36 F.4th 12 (1st Cir. 2022)......................................................................................3

*Atlantic Health Sys., Inc. v. National Union Fire Ins. Co. of Pittsburgh*,
    463 Fed. App'x 162 (3d Cir. 2012).......................................................................14

*Blais v. Hartford Fire Ins. Co.*,
    Civil Action No. 08-40221-FDS, 2011 WL 1303135 (D. Mass. March 30,
    2011) .......................................................................................................................3

*Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*,
    406 Mass. 862 (1990) ..................................................................................... passim

*Cody v. Connecticut Gen. Life Ins. Co.*,
    387 Mass. 142 (1982) ..............................................................................................2

*Dufficy Enters., Inc. v. Berarducci*,
    No. 1784-CV-03292 BLS, 2020 WL 12309011 (Mass. Super. Ct. June 7,
    2020) .......................................................................................................................6

*EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*,
    2018 WL 4859948 (C.D. Cal. June 19, 2018) .......................................................13

*EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*,
    Case No. 8:17-cv-01661-JVS-DFM (C.D. Cal. Mar 19, 2018), ECF No. 36..........14

*EventMonitor, Inc. v. Leness*,
    473 Mass. 540 (2016) ..............................................................................................6

*Fernando v. Federal Ins. Co.*,
    No. CV 18-10504-MBB, 2019 WL 2267168 (D. Mass. May 28, 2019) ..................3

*Financial Res. Network, Inc. v. Brown & Brown, Inc.*,
    867 F. Supp. 2d 153 (D. Mass. 2012) ...............................................................7, 12

*Flynn v. New England Ins. Co., Inc.*,
    96–1193D, 1998 WL 150384 (Mass. Super. 1998)..................................................4

*Fortress Re, Inc. v. Jefferson Insurance Company of New York*,
    465 F. Supp. 333 (E.D.N.C. 1978).........................................................................8

*Gargano v. Liberty Int'l Underwriters, Inc.*,
  575 F. Supp. 2d 300 (D. Mass. 2008), *aff'd*, 572 F.3d 45 (1st Cir. 2009) ............................4, 5

*Helfand v. Nat'l Union Fire Ins. Co.*,
  10 Cal. App. 4th 869 (Ct. App. 1992) .....................................................................................14

*Heritage Bank of Commerce v. Zurich American Insurance Company*,
  2022 WL 3563784 (N.D. Ca. August 17, 2022) .....................................................................14

*Howe v. National Life Insurance Company*,
  321 Mass. 283, 72 N.E.2d 425 (1947) ......................................................................................7

*In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage
  Litigation*,
  870 F. Supp. 1293 (E.D.Pa.1992) .............................................................................................8

*Insurance Company of the State of Pennsylvania v. City of San Diego*,
  No. 02-CV-0693, 2008 WL 11338593 (S.D. Cal. Mar. 14, 2008) .........................................14

*Kobico, Inc. v. Pipe*,
  44 Mass.App.Ct. 103 (1997)......................................................................................................8

*LaForge v. American Cas. Co. of Reading, Pa.*,
  37 F.3d 580 (10th Cir. 1994) ..................................................................................................15

*Lamson Consolidated Store–Service Company v. Prudential Fire Insurance
  Company*,
  171 Mass. 433, 50 N.E. 943 (1898) ..........................................................................................7

*Lexington Ins. Co. v. Newell Health Care Sys., Inc.*,
  10 Mass. ....................................................................................................................................16

*Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*,
  411 Mass. 39 (1991) ..................................................................................................................7

*National Union Fire Ins. Co. v. Talcott*,
  931 F.2d 166 (1st Cir. 1991)......................................................................................................4

*New England Env't Techs. v. American Safety Risk Retention Grp., Inc.*,
  738 F. Supp. 2d 249 (D. Mass. 2010) .......................................................................................5

*Shaw v. Commercial Ins. Co.*,
  359 Mass. 601, 270 N.E.2d 817 (1971) .....................................................................................8

*Superior Mechanical Plumbing & Heating, Inc. v. Insurance Co. of West*,
  81 Mass.App.Ct. 584, 965 N.E.2d 890 (2012) .........................................................................6

iii

*Tenovsky v. Alliance Syndicate, Inc.*,
    424 Mass. 678 (1997) ...................................................................................................1, 4, 6

*UnitedHealth Group Inc. v. Columbia Casualty Co.*,
    941 F. Supp. 2d 1029 (D. Minn. 2013)................................................................................15

*Zurich American Ins. Co. v. Watts Regulator Co.*,
    2013 WL 2367855 (D. Mass. March 21, 2013).......................................................................7

4868-9997-8038.8

Defendant Zurich American Insurance Company ("Zurich") respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment.

## I.
## PRELIMINARY STATEMENT

The Zurich Policy is a "claims-made and reported" policy which requires "*as a condition precedent to exercising any rights*" under the policy that written notice of a Claim made during the policy period be given by the Insureds "as soon as practicable" but in all events must be reported "no later than ninety (90) days after the end of the Policy Period." Dkt. 1-1 at p. 8 of 15; Dkt. 1-2 at p. 68 of 149 (emphasis added). Massachusetts law requires that an insured strictly comply with the notice provision of a claims made policy to obtain coverage. *Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678, 681 (1997); *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 864–65 (1990). Here, Harvard did not provide notice to Zurich of the SFFA Action within ninety days after the Zurich Policy expired. These facts are undisputed.

Faced with its admitted non-compliance to a condition precedent to coverage, Harvard asks this Court to ignore decades of Massachusetts jurisprudence and create new law by holding that Zurich's purported knowledge of the SFFA Action satisfies Harvard's obligation to provide notice of the Claim. Harvard does not cite a single insurance coverage case to support its request that this Court ignore the Policy's unambiguous notice provision. *See* Dkt. 47 at 10. Instead, Harvard makes what is essentially a public policy argument, arguing that since Zurich purportedly knew of the SFFA Action before its Policy expired, it had the ability to raise the rates for later issued policies and it would thus be inequitable for Zurich to deny coverage for a Claim that would otherwise be covered.

This Court's analysis of coverage cannot be guided by Harvard's self-serving statements as to the supposed purpose of claims made policies' notice provisions. Instead, Massachusetts

1

law requires that the Zurich's claims-made and reported policy be enforced in accordance with its express terms. *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). Here, the Zurich Policy requires that Harvard provide notice of a Claim made during the policy period within ninety days after the policy expires. There is no ambiguity. Because Harvard did not provide timely notice of the SFFA Action, Harvard cannot exercise any rights under the Zurich Policy with respect to this Claim.

For the reasons discussed herein and in Zurich's moving papers, Harvard's failure to satisfy a valid condition precedent precludes coverage under the Zurich Policy. Accordingly, Zurich's motion for summary judgment should be granted, and Harvard's complaint dismissed.

## II.
## ARGUMENT

**A.**   **The Zurich Policy's Reporting Requirement Must be Strictly Enforced**

Harvard asks this Court to excuse its noncompliance with the Zurich Policy's notice provision on purported equitable grounds because: (1) Zurich issued a series of claims-made policies to Harvard for which Zurich earned premiums; (2) claims-made policies require that notice of the claim be given during the policy period or shortly thereafter so that insurers can appropriately adjust their rates to reflect risk; (3) Zurich purportedly knew about the SFFA Action before the Zurich Policy expired and could adjust its rates for the subsequent policy accordingly; and (4) but for Harvard's failure to comply with the notice provision, the SFFA Action would be covered under the Zurich Policy.

While Harvard casts this as a matter of "fairness," excusing Harvard's non-compliance with the Zurich Policy's reporting requirements would undermine the most basic tenets of Massachusetts contract law: an unambiguous policy must be applied as written; notice provisions

2

in claims-made policies must be strictly construed; and the failure to satisfy a condition precedent vitiates coverage.

1.      **The Zurich Policy is Unambiguous and Must be Applied as Written**

When there are no ambiguities in the policy provisions at issue, the court's task is to interpret the policy according to its plain terms. *Arch Ins. Co. v. Graphic Builders LLC*, 36 F.4th 12, 17 (1st Cir. 2022). "[E]xtrinsic evidence may not be admitted to contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists." *Fernando v. Federal Ins. Co.*, No. CV 18-10504-MBB, 2019 WL 2267168, at *6 (D. Mass. May 28, 2019); *Blais v. Hartford Fire Ins. Co.*, Civil Action No. 08-40221-FDS, 2011 WL 1303135, at *8 (D. Mass. March 30, 2011). "Extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter." *American Home Assurance Co. v. Fore River Dock & Dredge*, Inc., 321 F. Supp. 2d 209, 216 (D. Mass. 2004), *quoting USM Corp. v. Arthur D. Little Sys., Inc.*, 28 Mass.App.Ct. 108, 116, 546 N.E.2d 888 (1989).

Here, Harvard does not contend that the notice provision is in any way ambiguous. Nor can it make such an argument given that the Zurich Policy specifies who must give notice, to whom it must be sent, and the timing and form of such notice – written notice by an Insured sent to the Zurich claims department at the specific address designated in the Zurich Policy for notices of claims "as soon as practicable" but in no event more than ninety days after the policy's expiration. Dkt. 1-1 at pp. 10 of 15, 8 of 15.[1]

---

[1] Indeed, Harvard had no difficulty understanding its obligations to comply with the notice provision given that it provided proper notice to AIG under the AIG policy only two days after the SFFA Action

2.     **Because the Zurich Policy is a Claims-Made and Reported Policy, the Notice Provision Must be Strictly Enforced**

Nor are there any uncertainties in applying the notice provision to the undisputed facts of this case. To the contrary, it is black letter law in Massachusetts law that "[i]n the context of a 'claims made and reported' policy, an insured's failure to report the claim during the policy term is sufficient, standing alone, to permit the insurer to deny coverage." *Gargano v. Liberty Int'l Underwriters, Inc.*, 575 F. Supp. 2d 300, 310 (D. Mass. 2008), *aff'd*, 572 F.3d 45 (1st Cir. 2009); *see also National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168 (1st Cir. 1991) (to deny coverage under a "claims made" policy, an insurer "must only show that the insured did not report the claim within the same policy year in which he received notice of it"). Consequently, Harvard's entire discussion of the "purpose" of notice provisions in claims made policies is entirely misplaced and nothing more than a diversionary tactic, as Harvard seeks to justify reading the Zurich Policy's unambiguous notice provision out of the policy.

Harvard does not cite to a single case to support its outlandish theory that an insured is somehow excused from its obligation to comply with a notice provision in a claims-made policy if the insurer learns about a claim against its insured from another source. To the contrary, state and federal courts in Massachusetts have repeatedly and consistently held that the notice provisions in claims-made policies are of the essence of coverage and must be strictly complied with. *See, e.g., Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678, 681 (1997); *Chas. T. Main.*, 406 Mass. at 864–65; *Catlin Specialty Ins. Co. v. American Superconductor Corp.*, 32 Mass.L.Rptr. 93 (Mass. Super. 2014); *Flynn v. New England Ins. Co., Inc.*, 96–1193D, 1998 WL 150384 at *9 (Mass. Super. 1998). Put simply, the courts leave no "wiggle room" to excuse an Insured's noncompliance with the notice provisions of a clams made policy. The insured has an

---

was filed. Dkt. 44 ¶ 10 at p. 5. Harvard thus knew of the importance of providing notice and requesting coverage and assistance from its other insurer, AIG.

obligation to report claims made during the applicable policy period as required by the policy, and its failure to do so eliminates its entitlement to coverage.

Critically, in *Fanaras Enterprises Inc. v. Law Offices of Roger Allen Doane*, 1 Mass.L.Rptr. 145 (Mass. Super. 1993), the court specifically held that knowledge of the claim by the insurer was not sufficient. Instead, there had to be notice by the insured as required by the policy "coupled with knowledge that the insurer's assistance is desired." 1 Mass.L.Rptr. 145 at *3. At no time did Harvard provide notice to Zurich and advise Zurich that it was submitting the SFFA Action as a claim for coverage and requesting Zurich's assistance, and Harvard does not contend otherwise.[2]

Harvard's citation of *New England Env't Techs. v. American Safety Risk Retention Grp., Inc.*, 738 F. Supp. 2d 249, 255-56 (D. Mass. 2010) is likewise misplaced. There, the policy required that a claim be made and reported during the policy period. The policy also had an Automatic Extended Reporting Period providing that upon termination of the policy, a claim reported to the insurer within thirty days of the end of the policy period would be deemed to be made on the last day of the policy period. A claim was made against the insured, and the insured reported that claim four days after the policy period had expired. This Court, relying on *Gargano* and *Chas. T. Main* for the well-settled principle that the reporting of a claim under a claims-made policy went to the very essence of coverage, simply held that since the claim was reported during the thirty-day extended period permitted by the policy, the notice was timely. 738 F. Supp. 2d at 255-56.

---

[2] Again, Harvard knew of the importance of doing so by giving immediate notice to AIG and requesting coverage. Dkt. 44 ¶ 10 at p. 5. Harvard thus obviously made a conscious decision not to report the claim to Zurich and seek Zurich's assistance. While that was certainly its prerogative, Harvard must now face the consequences of that decision.

Furthermore, although Harvard may not use the word prejudice when asking this Court to excuse its non-compliance with the notice provision, Harvard is in fact making just such an argument – that because Zurich was not harmed by Harvard's failure to give proper notice of the SFFA Action, Harvard should be entitled to obtain coverage for that Claim. Dkt. 47 at 10 (permitting Zurich to deny coverage "delivers a windfall to the insurance company, which charged premiums based on its assessment of the risk in light of the known claim to a profitable advantage, yet deprives the policyholder coverage for that claim"). This position is antithetical to Massachusetts law, which dictates that notice provisions in claims-made policies must be strictly enforced without any consideration of other factors, including prejudice. *Chas. T. Main*, 406 Mass. at 865; *Tenovsky*, 424 Mass. at 681.

### 3.     Harvard's Failure to Comply With a Valid Condition Precedent Vitiates Coverage

Harvard's attempt to equate its failure to comply with the reporting requirement as a mere "technical non-compliance" with the Zurich Policy must be rejected out of hand. Not surprisingly, none of the cases Harvard cites has anything to do with insurance coverage, let alone the reporting of a claim under a claims-made policy. *See EventMonitor, Inc. v. Leness*, 473 Mass. 540, 547 (2016) (involving the alleged breach of an employment contract); *Dufficy Enters., Inc. v. Berarducci*, No. 1784-CV-03292 BLS, 2020 WL 12309011 at *29 (Mass. Super. Ct. June 7, 2020) (involving a dispute under a commercial lease). Neither case addressed the strict compliance with a reporting obligation under a claims-made policy, let alone a "condition precedent" to coverage like the reporting requirement in the Zurich Policy.

 "A condition precedent is an act which must occur before performance by the other party is due." *Superior Mechanical Plumbing & Heating, Inc. v. Insurance Co. of West*, 81 Mass.App.Ct. 584, 590, 965 N.E.2d 890 (2012) (*quoting Wood v. Roy Lapidus, Inc.*, 10

6

Mass.App.Ct. 761, 763 n.5, 413 N.E.2d 345 (1980)). As the Supreme Judicial Court explained in

*Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39 (1991):

> A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract. . . . <u>If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced</u>.

411 Mass. at 45 (internal citations omitted) (emphasis added). The Court further recognized that

"[p]arties to a contract, of course, are free to create whatever conditions precedent they choose."

*Id.* In determining whether a contract provision is a condition precedent, "a court looks to the

parties' intent to determine whether they have created a condition precedent. . . . To ascertain

intent, a court considers the words used by the parties, the agreement taken as a whole, and

surrounding facts and circumstances. *Id.* (internal citations omitted).

These principles are equally applicable to insurance policies. *See, e.g.*, *Zurich American

Ins. Co. v. Watts Regulator Co.*, 2013 WL 2367855 (D. Mass. March 21, 2013). As this Court

has held, "[u]se of the language 'condition precedent' and the language of the paragraph as a

whole establish that the insured plaintiff bears the burden to establish compliance with these

notice requirements. *Financial Res. Network, Inc. v. Brown & Brown, Inc*., 867 F. Supp. 2d 153,

179 (D. Mass. 2012), *citing Cooper v. Prudential Insurance Company of America*, 329 Mass.

301, 107 N.E.2d 805, 806 (1952) (accidental death policy where receipt of "'due proof'" is a

condition precedent to liability for the accidental death benefit and burden therefore rests on "the

plaintiff to show that such due proof was supplied"); *Howe v. National Life Insurance Company*,

321 Mass. 283, 72 N.E.2d 425, 426 (1947) (furnishing due proof was condition precedent to the

defendant's liability and obligation to pay with the burden on "the plaintiff to show that she had

given such proof"); *Lamson Consolidated Store–Service Company v. Prudential Fire Insurance*

7

*Company*, 171 Mass. 433, 50 N.E. 943, 943 (1898) (finding use of words "condition precedent" in clause requiring referral to three disinterested parties thereby placed burden on the insured to show compliance or waiver by the insurer); *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation*, 870 F. Supp. 1293, 1356 (E.D.Pa.1992) (notice requirement was condition precedent and "burden is on the insured to show that it has fulfilled all conditions precedent contained in the policies"); *Fortress Re, Inc. v. Jefferson Insurance Company of New York*, 465 F. Supp. 333, 336–337 (E.D.N.C. 1978) (notice provisions "are conditions precedent and the insured bears the burden of proof on showing he has complied with this express contractual condition").

Moreover, whether the words of a policy create a condition precedent is a question of law and thus suitable for determination on summary judgment. *See, e.g.*, *Shaw v. Commercial Ins. Co.*, 359 Mass. 601, 605, 270 N.E.2d 817 (1971); *Kobico, Inc. v. Pipe*, 44 Mass.App.Ct. 103, 106 (1997).

Here, using the most basic tenets of contract interpretation, there can be no dispute that Harvard's obligation to give written notice to the claims department at Zurich at address specified in the policy was a condition precedent, as the reporting provision specifically states that Harvard must give the required notice "<u>as a condition precedent to the obligations of the Insurer under this policy</u>." Dkt. 1-2 at p. 68 of 149 (emphasis added). And the Zurich Policy specified "to whom" the notice must be given, stating that notice of a claim must be given to Zurich at the address set forth in Item 5.A. of the Declarations (Dkt. 1-1 at p. 10 of 15), which in turn provides:

| A. Address for Notice of Claim or Potential Claim | B. Address for All Other Notices: |
|---|---|
| Attn:  Zurich North America | Attn: Zurich American |

8

| | |
|---|---|
| Management Solutions Claims<br>P.O. Box 968041<br>Schaumburg, Illinois 60196-8041<br>Fax #: (866) 255-2962<br>Email: msgclms@zurichna.com | Insurance Company<br>Strategic Risk Solutions<br>Group<br>1 Liberty Plaza, 32nd<br>Floor<br>New York, NY 10006 |

Dkt. 1-1 at p. 8 of 15.

A "technical" failure to comply might have been if Harvard had attempted to send notice of the SFFA Action to Zurich's Management Solutions Claims group but inadvertently used an incorrect address or zip code. If Zurich had received the notice despite such "technical" error in addressing the notice, then perhaps Harvard may have been able to argue that it did comply but simply made a technical error in its compliance. But here, Harvard made no attempt whatsoever to comply with its reporting obligation. Thus, even if technical failure could excuse lack of compliance with a claims-made policy's notice condition, there was no "technical" failure here by Harvard; instead, there was a complete disregard and material breach of Harvard's contractual obligation with no attempt whatsoever to comply.

**B.    Both Historical Purposes of Claims Made Policies' Notice Requirements Would be Frustrated if Harvard's Non-Compliance is Excused**

As noted above, this Court cannot consider Harvard's statements as to the purpose of Zurich's notice provision because that provision is unambiguous and no uncertainty exists as to its application to the undisputed facts. Rather than looking behind this unambiguous policy provision to determine its purpose, the Court instead must only determine whether the reporting condition was satisfied by Harvard. However, even if this Court were to consider the historical context and purpose behind the notice provision contained in the Zurich Policy, Harvard's argument would still fail for several reasons.

First, Harvard completely ignores one of the two purposes behind the Zurich Policy's reporting requirement. In *Chas. T. Main, Inc.*, the Supreme Judicial Court discussed the

9

historical context and purpose of two different notice provisions – the requirement that a Claim be reported "as soon as practicable" and the requirement that a Claim be reported during or shortly after the policy's expiration:

> There are, in general, two types of notice requirements found in policies. One is a requirement that notice of the claim be given to the insurer "as soon as practicable" after the event which gives rise to coverage. This type of notice requirement is almost always found in occurrence policies and frequently is found in claims-made policies. The other type of notice provision requires reporting of the claim during the term of the policy or within a short period of time (thirty or sixty days) following the expiration of the policy. This type of notice is always found in claims-made policies and is never found in occurrence policies.
>
> The purposes of the two types of reporting requirements differ sharply. The purpose of a notice requirement, "as soon as practicable," is to permit an insurer to make an investigation of the facts and occurrence relating to liability. See *Bayer & Mingolla Constr. Co. v. Deschenes*, 348 Mass. 594, 600, 205 N.E.2d 208 (1965). However, fairness in rate setting is the purpose of a requirement that notice of a claim be given within the policy period or shortly thereafter, as we explain below.
>
>                       \*\*\*
>
> The closer in time that the insured event and the insurer's payoff are, the more predictable the amount of the payment will be, and the more likely it is that rates will fairly reflect the risks taken by the insurer. The purpose of a claims-made policy is to minimize the time between the insured event and the payment. For that reason, the insured event is the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period or a slightly extended, and specified, period. If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated.

406 Mass. 862, 864–65 (1990).

The Supreme Judicial Court thus recognized that claims-made policies often have both types of notice provisions, implicating both purposes. And indeed the Zurich Policy here

contains both notice requirements, which Harvard completely ignores. The Zurich Policy requires that Claims made during the policy period be reported by the Insureds "as soon as practicable" but in all events no later than ninety days after expiration of the Zurich Policy. Dkt. 1-2 at p. 68 of 149. The inclusion of both types of notice requirements indicates that the reporting provision serves dual purposes: it enables Zurich to make expedient investigations of noticed Claims <u>and</u> to set its rates appropriately in light of those noticed Claims. Thus, while the Court should find that Harvard failed to comply with the notice provision in the Zurich Policy because it is undisputed that Harvard reported the SFFA Action to Zurich outside the reporting period, Harvard's discussion of only one purpose of the notice provision and that one purpose purportedly being satisfied is incomplete as it overlooks the dual purposes of the Zurich Policy's notice provision.

Second, Harvard's singular focus on Zurich's supposed knowledge of the SFFA Action in the context of Zurich's ability to set its rates ignores the fact that all of Zurich's obligations under the Zurich Policy are predicated upon an Insured first providing written notice of a Claim ("The Insureds shall, <u>as a condition precedent to the obligations of the Insurer</u> under this policy, give written notice to the Insurer of any Claim …" Dkt. 1-2 at p. 68 of 149 (emphasis added)). This reporting provision places both the onus and the choice of whether to report a Claim for coverage squarely on the insured. Necessarily, Harvard is not required to report every Claim made against it to Zurich, but it must provide written notice to Zurich of every Claim for which it may ultimately seek coverage. And, just as it is written notice by an insured that triggers Zurich's obligations under the Zurich Policy, it is this same written notice that triggers Zurich's ability to effectively associate in the defense of said Claim and to obtain information and cooperation regarding the Claim from Harvard. Dkt. 1-2 at p. 70 of 149. So too, without this triggering event

11

it would be inappropriate for Zurich to raise its rates since Zurich would face no potential exposure for a Claim that was never noticed and for which coverage under its policy was never requested.

Thus, it is both presumptuous and incorrect for Harvard to argue that requiring written notice of a Claim by an insured "exalts form over substance" when the decision of an insured to provide notice of a claim is unquestionably a substantive choice of whether or not to avail itself of the benefits of its contract and any consequences that follow from that choice. Indeed, the Supreme Judicial Court's discussion of the notice provisions of claims-made policies confirms that they are not just substantive but "essen[tial] in determining whether coverage exists." *Chas. T. Main*, 406 Mass.  at 865 (finding excess carriers had no coverage obligations because, while the insured timely reported the claim to the primary carrier, the insured failed to timely report the claim to the excess carriers) (*quoting Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678, 680-81 (1997)); *see also Financial Res.*, 867 F. Supp. 2d at 179. Put differently, it is not knowledge of a Claim made during the policy period that triggers Zurich's obligations under the Zurich Policy, but rather Harvard's notice of such a Claim to Zurich together with a request for coverage that is the triggering event. *Id.* ("[u]se of the language 'condition precedent' and the language of the paragraph as a whole establish that the insured plaintiff bears the burden to establish compliance with these notice requirements"); *Fanaras*, 1 Mass.L.Rptr. 145 at *3 (to trigger coverage, there must be notice by the insured as required by the policy "coupled with knowledge that the insurer's assistance is desired.")

Third, permitting courts to excuse an insured's noncompliance with the reporting provisions of a claims-made policy under certain circumstances would make it impossible for insurers to draft policies with a clearly defined set of obligations for both parties. It would also

lead to uncertainty surrounding an insured's obligation to comply with notice requirements by inserting subjective factors such as how much "knowledge" by an insurer is sufficient to constitute "actual knowledge" and whether the insurer was harmed by the insured's non-compliance.

**C.    <u>Any Knowledge of Zurich Underwriters of the SFFA Action is Irrelevant</u>**

Harvard's discussion of what Zurich's underwriters knew about the SFFA Action, if anything, and when they knew it, is a red herring to deflect the Court's attention from the fact that Harvard was obligated to provide written notice of the SFFA Action to Zurich's claims department by January 30, 2016, but did not provide such notice until May 23, 2017.[3] Those are the only material facts, and they are not in dispute.

Harvard's attempt to evade its noncompliance with its reporting obligation is based on information Zurich's underwriters may have learned about the SFFA Action from news reports or other third-party sources. Make no mistake—Harvard does not suggest that it gave notice of the SFFA Action to anyone at Zurich prior to May 23, 2017. Instead, Harvard seeks to absolve itself from its reporting obligations because Zurich could have independently learned that the SFFA Action was pending against Harvard.

While Massachusetts courts have not considered this specific issue, courts in other jurisdictions have outright rejected the argument that notice to or knowledge by underwriters satisfies the insured's reporting obligation. In *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, 2018 WL 4859948 (C.D. Cal. June 19, 2018), the insured argued that the insurer had

---

[3] The fact that Harvard, when it finally got around to providing notice to Zurich three years later, gave such notice in the exact form and to the precise email address specified in the Zurich Policy demonstrates that Harvard was certainly aware of how to give such notice but simply chose not to do so. (*See* Dkt. 28-4, addressing the notice to "Claims Department Zurich North America" using the exact mailing and email address listed in the Zurich Policy—Dkt. 1-1 at p. 8 of 15.)

constructive notice of the underlying claim for which coverage was sought. In rejecting this

argument, the court held:

> the Court rejects this argument for the same reasons set forth in the
> prior Order. (<u>Id.</u> at 7–9.) The Court noted previously that in order
> for EurAuPair to satisfy a condition precedent to coverage it had to
> give Ironshore written notice of the claim at a specific address set
> forth in the terms of the Policy. (<u>Id.</u> at 8–9.) Moreover, the Court
> found that Ironshore was under no duty to investigate EurAuPair's
> involvement in the Beltran Suit unless it received the written notice
> that the Policy required. (<u>Id.</u>)

2018 WL 4859948 at \*3. In its prior order referenced in this decision, the court explained that

the purported "actual or constructive notice" claimed by the insured came from: (i) the insured's

renewal application that incorporated by reference "any public documents filed … within the

past 36 months," which was relevant because the insured had already made filings in the

underlying lawsuit; and (ii) notice of the same underlying lawsuit to the insurer from other

insureds. *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, Case No. 8:17-cv-01661-JVS-

DFM (C.D. Cal. Mar 19, 2018), ECF No. 36, pp. 7-8 (copy attached hereto as an Addendum).

In *Insurance Company of the State of Pennsylvania v. City of San Diego*, No. 02-CV-

0693, 2008 WL 11338593, at \*3-\*4 (S.D. Cal. Mar. 14, 2008), the court held that "loss runs"

submitted to underwriting provided neither actual nor constructive notice of the underlying

claims when "the loss runs were submitted for underwriting purposes, not as notice of a claim"

and the insured's broker "did not request that [the insurer] take any action with respect to the

claims." *City of San Diego*, 2008 WL 11338593, at \*4. *See also Heritage Bank of Commerce v.*

*Zurich American Insurance Company*, 2022 WL 3563784 (N.D. Ca. August 17, 2022) (notice to

underwriter during the renewal process insufficient to satisfy policy's notice requirement).

Similarly, here, Harvard's reliance on public information available to Zurich's

underwriters and loss runs Zurich may have received from AIG do not satisfy Harvard's

14

reporting obligations.[4] Other courts have also concluded that it is "not reasonable for an insured to insist that its insurer's underwriting department sift through a renewal application and decide what should be forwarded to the claims department on the insured's behalf." *Atlantic Health Sys., Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 463 Fed. App'x 162, 168 (3d Cir. 2012). In *Atlantic Health*, the court held under a claims made and reported policy that written notice— which specifically identified the lawsuit in which the insured had been named as a defendant— and which was twice provided to AIG's underwriter, did not satisfy the requirement that notice be provided to AIG's claims department at a specific address.

In those cases, the insured had actually affirmatively provided information regarding the claim to the underwriters, whether by email or through loss runs or other notifications, and the courts still held this was insufficient to be considered notice of claim as required by the policy. Here, Harvard acknowledges it never even gave notice to Zurich's underwriters, but instead merely relies on information that may have been available to the underwriters from other sources, such as news reports and loss runs from another insurer. Even if such information was available to and discovered by Zurich's underwriters, it was insufficient to satisfy Harvard's affirmative obligation to report the specific claim to and request coverage from Zurich.

Likewise, in *UnitedHealth Group Inc. v. Columbia Casualty Co.*, 941 F. Supp. 2d 1029, 1042-1046 (D. Minn. 2013), the court explained that notice being given to underwriting rather than claims raises a "to whom" issue—*i.e.* "a requirement in a policy about to whom notice of a claim must be provided." *UnitedHealth*, 941 F. Supp. 2d at 1042. Granting summary judgment

---

[4] The cited California decisions are particularly instructive because California law, like Massachusetts law, holds that the reporting of a claim and strict compliance with the notice provision under a claims-made policy is an essential element of coverage under the policy and a showing of prejudice by the insurer is not required. *See, e.g.*, *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 888 (Ct. App. 1992); *Aletheia Rsrch. & Mgmt., Inc. v. Houston Cas. Co.*, 831 F. Supp. 2d 1210, 1220 (C.D. Cal. 2011).

for the insurer, the court held that compliance with the "to whom" requirement must at a minimum involve notice to the claims department: "[T]he very purpose of a 'to whom' requirement—its entire reason for existing—is to ensure that notice is provided not just to the insurance company, but to a particular part of the insurance company." *Id.* at 1044; *see also LaForge v. American Cas. Co. of Reading, Pa.*, 37 F.3d 580, 584 (10th Cir. 1994) (information "provided in an application form designed to seek a continuation of coverage from the insurer's underwriters, rather than in a document designed to seek recovery under the policy in effect at the time" did not provide notice of a potential claim).

Even if, as Harvard suggests, Zurich's underwriters were aware of the SFFA Action through sources other than Harvard, this does not save Harvard from its failure to comply with its reporting obligation.[5] Harvard does not cite a single case, from Massachusetts or elsewhere, holding that any such information learned by Zurich's underwriters can be considered proper notice under a claims-made policy that specifically requires that notice be given to the claims department at an address specified in the policy.

Harvard's reliance on *Lexington Ins. Co. v. Newell Health Care Sys., Inc.*, 10 Mass. L. Rptr. 406, 1999 WL 753487, at *3 (Mass. Super. Ct. July 6, 1999) to attempt to create a question of fact misses the mark. In *Lexington*, the excess policy's notice provision was nothing like that in the Zurich Policy and did not require notice within the policy period or a specified time thereafter. Instead, the excess policy required "immediate" notice "of all claims that are reserved at 50% of the self-insured retention or underlying limit of liability and/or verdict potential of 75% of the self-insured retention or underlying limit of liability." 1999 WL 753487, at *3. The

---

[5] Zurich does not concede that its underwriters had such information, but merely argues that even if any such information was known to them, it is still insufficient to create a question of material fact to defeat Zurich's motion for summary judgment because any information known to underwriters is not notice of a claim under a claims-made policy as a matter of law.

court held that there were questions of fact concerning the valuation of the claim for notice purposes. The court then addressed the method of notice, as the insured gave notice by way of loss runs provided to the insurer, which the insurer claimed was insufficient. The insured contended that the method of reporting had been previously discussed with the insurer and the parties had agreed that the submission of loss runs as part of the renewal application would be sufficient notice of any claim. It was the alleged existence of such an agreement that created the question of fact. 1999 WL 753487, at *3  Further undermining Harvard's argument, the court specifically noted that the insured was not arguing that the use of loss runs automatically qualified as valid notice—there were questions of fact only because of the dispute as to whether there had been a specific agreement between the insured and insurer that reporting by loss runs was permitted. 1999 WL 753487, at *3. Here, Harvard makes no suggestion that Zurich ever agreed that the use of loss runs as a reporting mechanism was valid, and indeed, Harvard did not "report" the SFFA Action to Zurich by way of loss run. Instead, when it finally gave notice to Zurich in 2017, it did so in the precise form and to the precise address specified in the Zurich Policy. Dkt. 28-4. Harvard's reliance on "loss runs" it claims may have been provided to Zurich by AIG cannot create a material question of fact sufficient to defeat Zurich's entitlement to summary judgment.

### III.
### CONCLUSION

Based on the foregoing, Zurich respectfully requests that its motion for summary judgment be granted in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: October 3, 2022

4868-9997-8038.8

Respectfully submitted,

ROPERS MAJESKI PC

By: /s/ *Andrew L. Margulis*
Andrew L. Margulis *Pro Hac Vice*
Andres Avila *Pro Hac Vice*
750 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 668-5297
Facsimile: (212) 668-5929
E-mail: Andrew.Margulis@ropers.com
Andres.avila@ropers.com

Paul T. Muniz (BBO No. 564786)
Donovan Hatem LLP
53 State Street, 8th Floor
Boston, MA 02109
Telephone:  (617) 406-4500
Facsimile:  (617) 406-4501
Email:  pmuniz@donovanhatem.com

*Attorneys for Defendant Zurich American Insurance Company*

18

**<u>Certificate of Service</u>**

  I hereby certify that the foregoing document will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 3, 2022, and courtesy electronic copies will be sent to counsel for parties who have not yet appeared in this action.

/s/ *Andrew L. Margulis*
Andrew L. Margulis

19