# ADDENDUM TO REPLY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. | | |

Present: The Honorable     James V. Selna

| Terry Guerrero | Sharon Seffens |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Steven Brower | Tae Sang Um |

**Proceedings:**    **Defendant's Motion to Dismiss**

      Cause called and counsel make their appearances. The Court's tentative ruling is issued. Counsel make their arguments. The Court GRANTS IN PART and DENIES IN PART the defendant's motion, ruling in accordance with the tentative ruling attached hereto.

      Plaintiff may file an amended complaint within 30 days, but may not add new claims for relief. Defendant shall have 30 days thereafter to file a response.

| | : | 13 |
|---|---|---|
| Initials of Preparer | kjt | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|---|---|---|---|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|---|---|

EurAuPair International, Inc. v. Ironshore Specialty Ins. Co.
SACV 17-1661 JVS(DFM)

**<u>Order Regarding Motion to Dismiss First Amended Complaint</u>**

Defendant Ironshore Specialty Insurance Company ("Ironshore") filed a motion to dismiss Plaintiff EurAuPair International, Inc.'s ("EurAuPair") First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot., Docket No. 29.) EurAuPair opposed the motion. (Opp'n, Docket No. 33.) Ironshore replied. (Reply, Docket No. 34.)

For the following reasons, the Court **grants in part and denies in part** Ironshore's motion to dismiss.

## I. BACKGROUND

This case arises from an insurance coverage dispute involving the insured EurAuPair and insurer Ironshore. EurAuPair purchased from Ironshore a "Not-For-Profit Entity and Directors, Offices Liability Insurance Policy" with the policy number 002171600 for the policy period October 1, 2014 to October 1, 2015 ("Policy No. 1"). (FAC, Docket No. 25 ¶ 4; Declaration of Tae Um "Um Decl.", Docket No. 29-2, Ex. 1.) Subsequently, EurAuPair purchased a virtually identical insurance policy with the policy number 002171601 for the policy period October 1, 2015 to October 1, 2016 ("Policy No. 2"). (FAC, Docket No. 1 ¶ 8; Um Decl., Docket No. 29-3, Ex. 2.)

Policy No. 1 contains a Declarations page on which the following statement appears in bold: "This is a Claims Made and Reported Policy, please read it carefully." (Um Decl., Docket No. 29-2, Ex. 1 at 4 (pagination per docket).) Additionally, preceding the section in Policy No. 1 that sets forth what the insured and insurer are agreeing to, the following statement appears in bold: "THIS IS A CLAIMS MADE AND REPORTED POLICY WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY PLEASE READ THE ENTIRE POLICY CAREFULLY." (Id. at 8.) On this same page, under the heading "INSURING AGREEMENTS," the Policy states the following:

The Insurer shall pay on behalf of the Not-For-Profit Entity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|---|---|---|---|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|---|---|

> all Loss which the Not-For-Profit Entity shall be legally
> obligated to pay as a result of a Claim (including an
> Employment Practices Claim) first made against the
> Not-For-Profit Entity during the Policy Period or the
> Discovery Period for a Wrongful Act, and reported to the
> Insurer pursuant to [the notice requirements of the Policy].

(<u>Id.</u>) The Policy defines "Claim" as "a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading . . . ." (<u>Id.</u> at 9.) Additionally, the section regarding the requirements for notice of a claim states:

> The Insured shall, as a condition precedent to their rights
> under this Policy, give the Insurer notice in writing of any
> Claim which is made during the Policy Period. Such notice
> shall be given as soon as practicable but in no event later
> than thirty (30) days after the end of the Policy Period or
> Discovery Period, if applicable.
> . . .
> Notice to the Insurer . . . shall be given to the Insurer
> identified in, and at the address set forth in, Item 8 of the
> Declarations[.]

(<u>Id.</u> at 17.)

On or about November 13, 2014, a class action lawsuit was filed against EurAuPair in the United States District Court for the District of Colorado, <u>Beltran v. Interexchange, Inc.</u>, Case No. 14-cv-03074 (the "Beltran Suit"). (FAC, Docket No. 25 ¶¶ 7, 12.) In or about January 2015, the Beltran Suit was served on EurAuPair. (<u>Id.</u> ¶ 14.) In or about April 2016, EurAuPair tendered or reported the Beltran Suit to Ironshore. (<u>Id.</u> ¶ 23.) On or about May 17, 2016, Ironshore informed EurAuPair that it was denying coverage for the Beltran Suit. (<u>Id.</u> ¶ 30.) Thereafter, on September 24, 2017, EurAuPair filed an action against Ironshore in this Court. (Compl., Docket No. 1.) The FAC alleges claims for: (1) declaratory judgment; (2) breach of contract

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|---|---|---|---|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|---|---|

relating to Ironshore's denial of coverage for the Beltran Suit; (3) breach of contract for failure to mediate in good faith in violation of the Policy's Dispute Resolution provision; and (4) tortious breach of the covenant of good faith and fair dealing. (See generally FAC, Docket No. 25.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, a court must follow a two-step approach. Id. at 679. First, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Furthermore, a court must not "accept as true a legal conclusion couched as a factual allegation." Id. at 678 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring a court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. DISCUSSION

### A. Breach of Contract Claim Relating to Denial of Coverage and Breach of the Covenant of Good Faith and Fair Dealing Claim

There can be no breach of contract or breach of the implied covenant of good faith and fair dealing absent a contractual duty to defend. Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 36 (1995); Rosen v. Nations Title Ins. Co., 56 Cal. App. 4th 1489,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|---|---|---|---|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|---|---|

1496 (1997) (citations omitted); see also Bell Gardens Bicycle Casino v. Great Am. Ins. Co., 124 Fed. App'x 551, 553 (9th Cir. 2005) ("[A]n action for bad faith may not be maintained where no policy benefits are due."). There is "a duty to defend whenever an insurer ascertains facts which give rise to the possibility or the *potential* of liability to indemnify." Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448, 454 (1996) (emphasis in original). There is no duty to defend if the insurer "can demonstrate, by reference to undisputed facts, that the claim *cannot* be covered" at all. Id. at 455 (emphasis in original). This determination is made by looking at facts in the underlying complaint and extrinsic facts known by the insurer during the pendency of the underlying third party action against the insured. Friemdan Prof'l Mgmt. Co. v. Norcal Mut. Ins. Co., 120 Cal. App. 4th 17, 34 (2004). "[W]here there is any doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured and against the insurer." Borg, 47 Cal. App. 4th at 455 (citations omitted).

By its plain and unambiguous terms, Policy No. 1 was a "Claims Made and Reported Policy." (Um Decl., Docket No. 29-2, Ex. 1 at 4, 8 (pagination per docket).) Thus, it only covers claims first made against the insured and reported to Ironshore during the policy period of Policy No. 1. See Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 955-56 (9th Cir. 2002) (explaining that "claims-made-and-reported" policies cover claims made and reported within the policy period); Pac. Employers Ins. Co. v. Superior Court, 221 Cal. App. 3d 1348, 1356-57 (1990) (explaining that for claims made policies, there is coverage "as long as a claim is made during the policy period"). According to the FAC, the Beltran Suit was filed on or about November 13, 2014, it was served on EurAuPair in or about January 2015, and EurAuPair tendered or reported the Beltran Suit to Ironshore on or about April 2016. (FAC, Docket No. 25 ¶¶ 7, 12.) Under the terms of Policy No. 1, a condition precedent to EurAuPair's rights under the Policy was that it give Ironshore notice in writing of any claim made during the policy period no later than thirty days after the end of the policy period. (Um Decl., Docket No. 29-2, Ex. 1 at 17.) Thus, in order for a claim to be covered by the Policy, EurAuPair had to have reported it to Ironshore by October 31, 2015—thirty days after the policy period of October 1, 2014 to October 1, 2015 ended. Because the claim was not reported until April 2016, six months after the time to report the claim had expired and sixteen months after EurAuPair was served with notice of the Beltran Suit, Ironshore had no duty to reimburse EurAuPair and coverage cannot attach.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |

| | |
|---|---|
| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |

EurAuPair argues that the Court should not enforce the condition precedent and that it is entitled to equitable relief. (Opp'n, Docket No. 33 at 2-3.) EurAuPair argues that this is an exceptional case "involving ambiguity in the policy, ambiguity in the nature of the claim, and other equitable factors." (Id. at 10.) Specifically, EurAuPair argues that its failure to timely report the claim should be excused for the following reasons: (1) it made the decision to immediately defend the Beltran Suit and to tender it to Ironshore only when it became clear that it was not a nuisance suit which could be defended for nominal expense; (2) Ironshore purportedly had actual or constructive notice of the Beltran Suit within Policy No. 1's policy period; and (3) Ironshore has not been prejudiced by the late notification. (Id. at 5-17; FAC, Docket No. 25 ¶¶ 16-19, 23-27, 47.)

With regards to EurAuPair's first argument, that it initially thought the Beltran Suit was a nuisance suit that it could defend against for a nominal expense, EurAuPair argues that its belief is consistent with the language in the Policy that states that the insured and not the insurer has the duty to defend all claims. (Opp'n, Docket No. 33 at 6-8; Um Decl., Docket No. 29-2, Ex. 1 at 16 (pagination per docket).) Specifically, this provision states:

> The Insured, and not the Insurer, have the duty to defend all Claims, provided that the Insured shall only retain counsel as is mutually agreed upon with the Insurer. The Not-For-Profit Entity may at its option tender to the Insurer the defense of a Claim. Such a tender of the defense of a Claim shall not be made more than 90 days following notice of the Claim pursuant to [the notice requirements]. Upon such a tender of the defense of a Claim, the Insurer shall assume the duty to defend.

(Um Decl., Docket No. 29-2, Ex. 1 at 16 (pagination per docket).) EurAuPair argues that this language made the Policy ambiguous and that it was reasonable for it to delay reporting the claim. (Opp'n, Docket No. 33 at 6-8.) The Court is not persuaded. As stated above, by its plain and unambiguous terms, Policy No. 1 was a "Claims Made and Reported Policy." Thus, there was no ambiguity in the Policy that could reasonably lead an insured to believe that it was acceptable to report a claim more than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-1661 JVS(DFMx)                    Date   March 19, 2018

Title      EurAuPair International, Inc. v. Ironshore Specialty Ins. Co.

thirty days after the expiration of the policy period.  Just because under the terms of the Policy the insured was responsible for defending the claim unless the insured tendered the defense to the insurer, does not mean that the insured was not also bound by the Policy's claim notice requirements.

With regards to EurAuPair's second argument, that Ironshore purportedly had actual or constructive notice of the Beltran Suit, EurAuPair alleges the following:

> In contemplation of the pending expiration of [Policy No. 1], on August 20, 2015, the Chief Financial Officer of EurAuPair signed an Application for a renewal policy . . . ., which was more than a month before [Policy No. 1] was set to expired [sic].
>
> . . .
>
> Pursuant to the express terms of the Ironshore Policy "The Declarations, the signed and completed Application and the Policy, with endorsements, will constitute the contract between the Insured and the Insurer . . ." The term Application is defined in the Ironshore Policy as follows:
>
>> "Application" shall mean each and every signed application submitted to the Insurer for consideration of insurance together with any attachments to such applications, other materials submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this Policy.
>>
>> "Application" shall also mean any public documents filed by the Not-For-Profit Entity within the past 36 months with any federal, state, local or foreign governmental entity.
>
> . . .
>
> Therefore, by the express terms of the Ironshore Policy, the signed Application which was submitted to Ironshore on or about August 20, 2015, included any public documents filed by EurAuPair with the United States District Court, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|---|---|---|---|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|---|---|

> federal governmental entity. As relevant to this matter on February 23, 2015, EurAuPair filed a Motion to Supplement (Docket #84), which was subsequently converted to a Joinder (Docket #99) in a Motion to Dismiss in [the Beltran Suit] in the US District Court for the District of Colorado. Thereafter, in or about May and June, 2015, EurAuPair had also filed documents requesting that the stay on discovery remain in place pending resolution of the Motion to Dismiss.

(FAC, Docket No. 25 ¶¶ 5-7.) Additionally, EurAuPair alleges the following:

> EurAuPair is informed and believes that one or more of the other 15 sponsors [sued in the Beltran Suit] was also insured by Ironshore and tendered the Beltran Suit to Ironshore prior to the time when EurAuPair made its formal tender. EurAuPair is informed and believes that discovery will show that Ironshore had actual knowledge that EurAuPair was also a named defendant in that suit and will even show whether Ironshore posted a reserve to cover anticipated expenses in the Beltran Suit.

(Id. ¶ 26.)

Under the express terms of Policy No. 1, in order for EurAuPair to satisfy its condition precedent to coverage it had to give Ironshore written notice of the claim at a specific address set forth in the terms of the Policy. (Um Decl., Docket No. 29-2, Ex. 1 at 17 (pagination per docket).) The means of notice described in the above allegations do not comply with the express notice requirements set forth in Policy No. 1. Moreover, to the extent EurAuPair is claiming that Ironshore had some duty to investigate the claim based on constructive notice, the Court notes that "the duty to investigate applies only to performance of contractual duties under the insurance policy." KPFF, Inc. v. Cal. Union Ins. Co, 56 Cal. App. 4th 963, 977 (1997) ("An insurer . . . has no duty to investigate matters which are not relevant to the performance of its contractual obligation to properly handle the insured's claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |

| | |
|---|---|
| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |

according to the terms of the policy."). Therefore, Ironshore was under no duty to investigate EuAuPair's involvement in the Beltran Suit unless it received the written notice that the Policy required.

With regards to EurAuPair's third argument, that Ironshore has not been prejudiced by the late notification, EurAuPair argues that the notice-prejudice rule should apply. (Opp'n, Docket No. 33 at 9, 12.) The notice-prejudice rule "provides that an insurer cannot assert lack of timely notice as a defense unless the insurer was actually prejudiced by such delay." World Health & Educ. Found. v. Carolina Cas. Ins. Co., 612 F. Supp. 2d 1089, 1096 (N.D. Cal. 2009). However, the notice-prejudice rule has been plainly rejected by California courts in cases involving "claims made and reported" policies because "to apply the notice-prejudice rule to a claims made and reported policy would [be] to convert that policy into a pure claims made policy, and therefore give the insured a better policy than he paid for." Root v. Am. Equity Speciality Ins. Co., 130 Cal. App. 4th 926, 947 (2005); see also Slater v. Lawyers' Mutual Ins. Co., 227 Cal. App. 3d 1415, 1422-23 (1991); Pac. Employers, 221 Cal. App. 3d at 1357-60. EurAuPair argues that the Court should stray from this line of precedent because it is not in line with California law on forfeiture. (Opp'n, Docket No. 33 at 12-13.) However, the Court declines to reject well-established California precedent, which establishes that the notice-prejudice rule does not apply in this case.

EurAuPair further argues that the Court should find that EurAuPair is entitled to equitable relief from the condition precedent as was found by the court in Root. (Opp'n, Docket No. 33 at 12.) For "claims made and reported" policies, a court may excuse the nonperformance of a condition that results in a forfeiture where it is equitable to do so. Root, 130 Cal. App. 4th at 947-48. The application of this rule varies with the facts of each case and "[s]ometimes—indeed most of the time—it will not be equitable to excuse the non-occurrence of the condition." Id. at 948. In Root, the plaintiff had a claims made and reported legal malpractice insurance policy, and the court found that equity required the excuse of the policy period reporting requirement. Id. at 930, 948-49. Three days before the policy period expired, a malpractice lawsuit was filed against the plaintiff. Id. at 930. The plaintiff was not served with notice of the suit until after the policy period expired. Id. However, on the day the suit was filed, the plaintiff "received a phone call from a person who identified herself as an employee of a 'legal journal,'" who was seeking the plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|---|---|---|---|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|---|---|

reaction to the filing of the lawsuit. Id. The plaintiff thought that the call was a "prank" and did not take any immediate action. Id. When the plaintiff discovered that it was not a prank, he immediately notified the defendant. Id. at 931. The defendant denied the claim because the plaintiff did not report it during the policy period. Id. The court found that under the particular circumstances of the case, it was appropriate to equitably excuse the plaintiff's failure to report the claim before the end of the policy period. Id. 948-49. The court "emphasize[d] the narrowness" of its decision, stating: "We will take great pains to show that by no means do we blanketly apply a blunderbuss 'notice-prejudice' rule to this, or any other claims made and reported malpractice policy." Id. at 929.

Here, EurAuPair has not alleged sufficient facts to indicate that the present case is in any way analogous to the circumstances warranting equitable relief in Root. In contrast to Root, in which the plaintiff was arguably unaware of the existence of a claim during the policy period and reported the claim immediately upon confirmation of its existence, here, EurAuPair had notice of the Beltran Suit sixteen months before it reported the claim to Ironshore and reported it six months after the time to report the claim had expired. The Court finds that dismissal is appropriate here because, although EurAuPair's argument that it is entitled to equitable relief involves a factual inquiry, Root "makes clear that such relief is reserved for unusual cases." World Health, 612 F. Supp. 2d at 1098.

Accordingly, the Court grants Ironshore's motion to dismiss the breach of contract claim related to Ironshore's denial of coverage and claim for breach of the covenant of good faith and fair dealing with leave to amend.

## B. Breach of Contract Claim For Failure to Mediate in Good Faith

EurAuPair brings a second claim for breach of contract relating to the Dispute Resolution provision in Policy No. 1. (FAC, Docket No. 25 ¶¶ 31-41, 65-68.) The Policy's Dispute Resolution provision states:

> In the event any dispute arises in connection with this Policy that cannot be resolved, the Insurer and the Insured shall participate in a non-binding mediation in which the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|----------|------------------------|------|----------------|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|-------|-------------------------------------------------------------|

Insurer and the Insured shall attempt in *good faith* to resolve such dispute. Either the Insured or the Insurer shall have the right to commence a judicial proceeding or, if the parties agree, a binding arbitration, to resolve such dispute. However, no judicial proceeding or arbitration shall be commenced until termination of the mediation and until at least 90 days has passed from the termination of the mediation. Each party will bear its own legal fees and expenses. The costs and expenses of a mediation, or an arbitration, shall be split equally by the parties.

(Um Decl., Docket No. 29-2, Ex. 1 at 20 (emphasis added) (pagination per docket).) EurAuPair alleges that Ironshore breached the Dispute Resolution provision by:

a) failing in good faith to timely schedule the mediation; b) failing to have a representative personally attend, contrary to the good faith obligation in the Ironshore Policy and contrary to the contract which was signed by the parties with the mediation service; c) failing to have a representative present at the mediation with the authority to resolve the matter; d) thereafter asserting that Ironshore had not breached the contract and asserting that EurAuPair should be further delayed from obtaining a determination in this court.

. . .

The monetary damages incurred by EurAuPair for such breach of contract are separate and apart and independent of whether Ironshore owes coverage to EurAuPair in that the entire purpose of the Dispute Resolution provision, as specified in the Ironshore Policy, is to give the parties the benefit of a good faith effort to utilize the services of a private mediator to resolve the dispute, or to determine the parameters of the dispute which cannot be resolved, neither of which benefit was obtained by EurAuPair in this circumstance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |

| | |
|---|---|
| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |

> . . .
> EurAuPair has been damaged by its payment of one-half of the mediation fees plus its payment to its counsel to for legal services attempting to arrange the mediation over the delays and hindrance of Ironshore, and to prepare a detailed mediation brief, and to attend the mediation, and thereafter to litigate the asserted right of Ironshore to delay this action. EurAuPair is informed and believes, and therefore alleges, that it has been damages in an amount in excess of $15,000.

(FAC, Docket No. 25 ¶¶ 66-68.)

Ironshore argues that the claim for breach of the Dispute Resolution provision should be dismissed because the provision does not proscribe any of the conduct alleged by EurAuPair and only requires that the parties attempt to resolve the dispute in good faith. (Mot., Docket No. 29 at 15.) Ironshore points out that the parties did attend a mediation session on September 12, 2017 in Santa Ana, California. (Reply, Docket No. 34 at 9; FAC, Docket No. 25 ¶¶ 37-38.) Ironshore argues that just because EurAuPair was not satisfied with the results of the mediation and upset that Ironshore would not agree to provide coverage for the Beltran Suit, this does not mean that Ironshore did not participate in good faith. (Mot., Docket No. 29 at 15; Reply, Docket No. 34 at 9.)

Whether Ironshore made a good faith attempt to resolve the coverage dispute in mediation is a factual dispute, and not properly decided on a motion to dismiss. Accordingly, the Court denies Ironshore's motion to dismiss the claim for breach of the Dispute Resolution provision.

**C. Declaratory Judgment Claim**

"Where subject matter jurisdiction is solely based on diversity, federal law determines whether there is a controversy before the Court within the purview of the Declaratory Judgment Act, 28 U.S.C. § 2201 . . . ." Compass Bank v. Petersen, 886 F. Supp. 2d 1186, 1195-96 (C.D. Cal. 2012). Under the Declaratory Judgment Act, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |
|---|---|---|---|

| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |
|---|---|

Court "may declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy." 28 U.S.C. § 2201(a); see also U.S. Const. art. III, § 2, cl. 1 (limiting the federal judicial power to actual cases and controversies). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citation omitted). In order for a dispute to qualify as an "actual controversy," courts require that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 549 U.S. at 127 (citation and alteration omitted).

　　Here, Ironshore's only argument regarding the dismissal of the declaratory judgment claim is that because the Court should dismiss EurAuPair's other claims for relief, this would resolve all existing substantive controversy raised by EurAuPair in its declaratory relief claim. (Mot., Docket No. 29 at 16-17.) Given that the Court dismissed EurAuPair's breach of contract claim relating to the denial of coverage and breach of the covenant of good faith and fair dealing claim, the Court agrees that this resolves any existing controversy related to Ironshore's duty to reimburse EurAuPair for the costs of defense in the Beltran Suit. See Cove Partners, LLC v. XL Specialty Ins. Co., No. CV 15-07635 SJO (GJSx), 2016 WL 461918, at *11 (C.D. Cal. Feb. 2, 2016). However, EurAuPair is also seeking a declaratory judgment finding that Ironshore's Dispute Resolution provisions are null and void for all insureds who are similarly situated. (FAC, Docket No. 25 ¶ 59.) Given that the Court did not dismiss EurAuPair's claim for breach of the Dispute Resolution provision, an actual controversy still exists regarding whether Ironshore failed to mediate with EurAuPair in good faith.

　　Accordingly, the Court grants in part and denies Ironshore's motion to dismiss the request for a declaratory judgment with leave to amend.

**IV. CONCLUSION**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1661 JVS(DFMx) | Date | March 19, 2018 |

| | |
|---|---|
| Title | EurAuPair International, Inc. v. Ironshore Specialty Ins. Co. |

     For the foregoing reasons, the Court **grants in part and denies in part** Ironshore's motion to dismiss. EurAuPair has 30 days to file an amended complaint, but it may not add new claims for relief. Ironshore has 30 days to file a response.


      **IT IS SO ORDERED.**